1  J. OWEN CAMPBELL (State Bar No. 229976)
   joc@severson.com
2  SEVERSON & WERSON
   A Professional Corporation
3  The Atrium
   19100 Von Karman Avenue, Suite 700
4  Irvine, California 92612
   Telephone: (949) 442-7110
5  Facsimile: (949) 442-7118

6  MARY KATE SULLIVAN (State Bar No. 180203)
   SEVERSON & WERSON
7  A Professional Corporation
   One Embarcadero Center, Suite 2600
8  San Francisco, California 94111
   Telephone: (415) 398-3344
9  Facsimile: (415) 956-0439

10 Attorneys for Plaintiffs
   MORTGAGE ELECTRONIC
11 REGISTRATION SYSTEMS, INC. and
   MERSCORP HOLDINGS, INC.

12

13                 UNITED STATES DISTRICT COURT

14      CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

15 MORTGAGE ELECTRONIC                Case No. 2:13-cv-07142 PSG (ASx)
   REGISTRATION SYSTEMS, INC.,        Hon. Philip S. Gutierrez
16 and MERSCORP HOLDINGS, INC.,       Ctrm. 880

17            Plaintiffs,             **OPPOSITION TO MOTION TO
                                      DISMISS**
18      vs.
                                      Date:   January 27, 2014
19 DANIEL W. ROBINSON and             Time:   1:30 p.m.
   DARLA J. ROBINSON,                 Crtrm.: 880
20
             Defendants.             Action Filed:  September 26, 2013
21                                   Trial Date:    None Set

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................. 1

II.     FACTS ................................................................................ 4

    A.      The Deed of Trust ................................................. 4

    B.      Defendants' State Court Judgment ....................... 5

    C.      Background Regarding MERS and the MERS® System ...................... 6

III.    THE COMPLAINT STATES LEGALLY VALID CLAIMS ........................... 8

    A.      California Law Required Notice of the Quiet Title Action To MERS Because As Beneficiary of Record, MERS Claimed an Interest in the Property ................................. 8

    B.      Due Process Required Notice of the State Court Action to MERS ...... 13

    C.      Other Courts Recognize MERS's Right To Notice Of Proceedings That Affect The Security Interest ................... 15

    D.      MERS Has Standing To Bring This Claim ........................... 17

IV.     CONCLUSION ................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arnett v. Kennedy,*
    416 U.S. 134 (1974) (Powell, J., concurring).................................14

*Board of Regents of State College v. Roth,*
    408 U.S. 564 (1972) ...............................................................14

*Calvo v. HSBC Bank USA, N.A.,*
    199 Cal.App.4th 118 (2011)....................................................10

*Carey v. Piphus,*
    435 U.S. 247 (1978) ...............................................................20

*Cervantes v. Countrywide Home Loans, Inc.,*
    656 F.3d 1034 (9th Cir. 2011) ................................................11

*Citimortgage, Inc. v. Barabas,*
    975 N.E.2d 805 (Ind. 2012)........................................15, 16, 19

*Conley v. Gibson,*
    355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) .........................3

*Delo v. GMAC Mortgage, L.L.C.,*
    302 P.3d 658 (Ariz. Ct. App. May 8, 2013) .......................16, 17

*Derakhshan v. Mortgage Elec. Registration Sys., Inc.,*
    No. 8:08-cv-01185, 2009 U.S. Dist. LEXIS 63176
    (C.D. Cal. June 29, 2009) .......................................................12

*Doe v. U.S.,*
    419 F.3d 1058 (9th Cir. 2005) ..................................................3

*Flagstar Bank, FSB v. Lone Pine Capital LLC,*
    No. 04781 EQCV 109513 (Iowa Dist. Ct.
    Pottawattamie County Oct. 14, 2013) .....................................17

*Fontenot v. Wells Fargo Bank, N.A.,*
    198 Cal.App.4th 256 (2011)................................................5, 10

*Fuentes v. Shevin,*
    407 U.S. 67 (1983) .................................................................20

*Gerhard v. Stephens,*
    68 Cal. 2d 864 (1968) ..............................................................9

*Gomes v. Countrywide Home Loans, Inc.,*
    192 Cal.App.4th 1149 (2011)..........................................5, 10, 12

*Hamlin v. Harps,*
    No. 4:07-cv-00066-JBF-FBS (E.D. Va. 2007)..........................17

*Herrera v. Federal National Mortgage Assn.,*
   205 Cal.App.4th 1495 (2012) .................................................................. 5, 10

*Hicks v. Oklahoma,*
   447 U.S. 343 (1980) .................................................................. 14

*Hollins v. ReconTrust, N.A.,*
   2011 WL 1743291 (C.D. Cal. 2011) .................................................. 12

*Jackson v. Mortgage Elec. Registration Sys., Inc.,*
   770 N.W.2d 487 (Minn. 2009) ........................................................ 7

*Labra v. Cal-W. Reconveyance Corp.,*
   No. 09-2537 , 2010 U.S. Dist. LEXIS 23165 (C.D. Cal. 2010) .......................... 12

*Louisville Joint Stock Land Bank v. Radford,*
   295 U.S. 555 (1935) .................................................................. 14

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ................................ 17

*McLaughlin v. Chase Home Finance, LLC,*
   519 Fed.Appx. 904, 2013 WL 1003465 (6th Cir. 2013) ................................. 11

*Mennonite Board of Missions v. Adams,*
   462 U.S. 791 (1983) .......................................................... 13, 14, 20

*Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.,*
   888 F.Supp.2d 691,712-13 (D. Md. 2012) ............................................. 19

*Morgera v. Countrywide Home Loans, Inc.,*
   2010 WL 160348 (E.D. Cal. 2010) .................................................... 10

*Mortgage Elec. Registration Sys., Inc. v. Murphy,*
   No. CGC-08-473479 (Cal. Super. Ct. San Francisco County Aug. 2, 2010) .... 17

*Mortgage Elec. Registration Sys., Inc. v. Bellistri,*
   2010 WL 2720802 (E.D. Mo. July 1, 2010) ................................... passim

*Mullane v. Cent. Hanover Bank & Trust Co.,*
   339 U.S. 306, 313 (1950) ............................................................ 13

*Perry v. Sindermann,*
   408 U.S. 593 (1972) .................................................................. 14

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) .................................................................. 14

*Renkemeyer v. Mortgage Elec. Registration Sys. Inc.,*
   2010 WL 3878582 (D. Kan. 2010) .................................................... 17

*Residential Funding Co. v. Saurman,*
   490 Mich., 805 N.W.2d .............................................................. 11

*Siliga v. Mortgage Electronic Registration Systems, Inc.*,
219 Cal.App.4th 75 (2013) ................................................................. 5, 12

*Sprint Communications Co. v. APCC Services, Inc.*,
554 U.S. 269 (2008) .............................................................................. 18

*Vitek v. Jones*,
445 U.S. 480 (1980) .............................................................................. 14

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir.2004) ................................................................. 3

**STATUTES**

15 U.S.C.
§ 1641(g) ................................................................................................. 8

Code Civ. Proc.
§ 762.010 ................................................................................................. 8
§ 764.045 ................................................................................................. 9

**OTHER AUTHORITIES**

Allen H. Jones, *Setting the Record Straight on MERS*, MORTGAGE BANKING,
May 2011 ................................................................................................ 7

BLACK'S LAW DICTIONARY 1072 (7th Ed. 2002) ...................................... 18

Due Process Clause of the U.S. Constitution ........................................... 13

Fourteenth Amendment .................................................................... 14, 20

Patrick C. Sargent and Mark W. Harris, *The Myths and Merits of MERS*, THE
NATIONAL LAW REVIEW, Sept. 25, 2012,
http://www.natlawreview.com/article/myths-and-merits-mers ................ 7

Restatement (Third) of Property § 5.4 (1997) ......................................... 21

Rule 12(b)(1) ........................................................................................... 2

Rule 12(b)(3) ........................................................................................... 2

Rule 12(b)(6) ........................................................................................... 2

U.S. Constitution ............................................................................... 14, 15

# I.

## INTRODUCTION

Defendants Daniel and Darla Robinson borrowed $999,500.00 and secured repayment of the loan with a deed of trust on their real property. After paying on the loan for several years, Defendants decided to avail themselves of a scheme that promised a mortgage-free house. They hired an attorney to file a "quiet title" lawsuit. As the attorney's website advertises: "your House and or Home becomes forecloseable proof and cannot be touched in order to satisfy any . . . Promissory Note previously secured against it. You would then be free to either sell it, transfer it, re-encumber it or just possess it free and clear of any lien." *See* Compl. ¶ 34, Ex. 2. The secret to this kind of lawsuit: don't give notice to parties with an interest in the lien—such as the record beneficiary. *See* Compl. ¶ 34, Ex. 3 ("Quiet Title by default oh yeah you can.").

In April of 2013, Defendants obtained a default judgment in the state court quiet title action they filed without naming or providing notice to MERS, the record beneficiary of the deed of trust Defendants signed when they borrowed nearly one million dollars. MERS filed this lawsuit to reinstate or reaffirm[1] the lien interest and set aside the default judgment. Instead of cooperating with MERS, Defendants have filed a legally meritless motion to dismiss.

The motion to dismiss does not claim that Defendants gave notice of the lawsuit to MERS, the plainly identified record beneficiary, or anyone else with an interest in the deed of trust or loan at the time the Defendants pursued their quiet title scheme. It does not claim that Defendants paid off the loan. The motion does not explain why Defendants should receive the windfall of a mortgage-free house when they have yet to pay back almost a million dollars borrowed just a few years

[1] Defendants' failure to name MERS as a defendant in their quiet title lawsuit renders any judgment from the action unenforceable against MERS.

1    ago. Instead, the motion rests entirely on the argument that MERS is not the real

2    party in interest with respect to the deed of trust, largely because MERS does not

3    collect payments on the loan. This argument fails because MERS is the named

4    beneficiary of the deed of trust and possesses legally enforceable rights in that

5    security interest, including the right to foreclose.

6          Defendants agreed by contract that MERS and MERS's successors and

7    assigns are the beneficiary of the deed of trust, as nominee for the original lender

8    and its successors and assigns, and that MERS has the right to enforce the deed of

9    trust in that capacity. The language of the deed of trust is explicit and simple.

10   Defendants cannot now deny MERS's status as beneficiary in order to secure the

11   unwarranted windfall of a debt-free million-dollar house.

12         Defendants' position directly contravenes California law, which requires

13   plaintiffs in quiet title actions to name and give notice to all parties who **claim** an

14   interest in the property at issue. As the plainly identified beneficiary of record under

15   a deed of trust, MERS claimed an interest that entitled it to such notice. Defendants,

16   who agreed to MERS's role as beneficiary when they borrowed nearly one million

17   dollars and, in return, signed the deed of trust, are not in a position to deny MERS's

18   status or rights as beneficiary as a reward for their scheme. In addition, Defendants'

19   attempt to deprive MERS of its interest in the deed of trust without notice violates

20   the due process clause of the U.S. Constitution.

21         Defendants bring a facial challenge to the Complaint, submitting no affidavits

22   or other evidence in support of their motion. They move to dismiss the complaint

23   for failure to state a claim under Rule 12(b)(6), lack of standing and subject matter

24   jurisdiction under Rule 12(b)(1), and lack of venue under Rule 12(b)(3). All are

25   premised on the same legal challenge to MERS's role as beneficiary under the deed

26   of trust. When considering a 12(b)(6) motion to dismiss for failure to state a claim

27   or a facial challenge to jurisdiction under 12(b)(1), the court must construe the

28   complaint in the light most favorable to the plaintiffs, taking all allegations as true

1 | and drawing all reasonable inferences from the complaint in plaintiffs' favor. *See,*
2 | *e.g., Doe v. U.S.*, 419 F.3d 1058, 1062 (9th Cir. 2005); *Wolfe v. Strankman*, 392
3 | F.3d 358, 362 (9th Cir.2004). Moreover, "a complaint should not be dismissed for
4 | failure to state a claim unless it appears beyond doubt that the plaintiff can prove no
5 | set of facts in support of his claim which would entitle him to relief." *Conley v.*
6 | *Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
7 |     Defendants' motion purports to assert numerous factual allegations not
8 | contained in the Complaint or supported with any proper evidence. Defendants
9 | primarily cite a one-sided article written by a consumer advocate whose goal was to
10 | denigrate the MERS's relationship to mortgage lenders (and the entire mortgage
11 | industry). Those "facts" are not properly before the Court and must be ignored.
12 | Moreover, Defendants' purported criticism of MERS is simply a ploy to distract the
13 | Court from the real issue—whether the record beneficiary under a deed of trust is
14 | entitled to notice of judicial actions that extinguish the security instrument and the
15 | rights contractually granted to the beneficiary thereunder. The well-pleaded facts in
16 | the complaint establish that MERS was entitled to notice of Defendants' quiet title
17 | action. Plaintiffs encourage this Court not to accept Defendants' invitation to be
18 | distracted by their discussions of California's non-judicial foreclosure statutes, the
19 | foreclosure laws of other states, or even the nature of MERS's contractual
20 | relationship to the current owner and holder of Defendants' (still outstanding)
21 | indebtedness. Plaintiffs' claims concern MERS's constitutional and statutory right
22 | to notice—fulfilling the true purpose of California's recording law—when the
23 | subject Deed of Trust plainly identifies a party as the Deed of Trust beneficiary.
24 |     For these reasons, set forth in more detail below, the complaint states valid
25 | claims for relief and the motion to dismiss should be denied.

## II.

## FACTS

**A.     The Deed of Trust**

Defendants borrowed $999,500.00 in February 2005. *See* Compl. ¶ 28.  They secured repayment of the loan with a deed of trust on their Northridge property ("Deed of Trust").  *Id.*  The Deed of Trust was recorded with the Los Angeles County Recorder on February 15, 2005. *Id.* at ¶ 28, Ex. 1.

On the very first page of the Deed of Trust, Defendants agreed that MERS is the beneficiary of the security instrument.  Defendants executed the Deed of Trust and initialed this first page, as they did every page.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated FEBRUARY 7, 2005
The Note states that Borrower owes LenderNINE HUNDRED NINETY-NINE THOUSAND NINE HUNDRED FIFTY AND 00/100          Dollars (U S $ 999,950.00          ) plus interest.

Borrower Initials ___DWR___  ___dj___  _____  _____  _____  _____

*Id.* at ¶ 28, Ex. 1.  Defendants further agreed in the Deed of Trust that MERS "and the successors and assigns of MERS" may exercise all of the rights of a beneficiary, including the right to foreclose on the security instrument:

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS   This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
                    COUNTY of          LOS ANGELES          :
        [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

Borrower Initials ___DWR___  ___dj___  _____  _____  _____  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      DocMagic *eForms* 800-649-1362
Form 3005 01/01                                    Page 2 of 14                                              www docmagic com

1

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

6   *Id.* at Ex. 1 at p.3.[2]

7   **B.      Defendants' State Court Judgment**

8        Defendants filed a civil action in state court on January 11, 2012. *See* Compl.

9   at ¶ 30. The action sought to quiet title to the Northridge property free and clear of

10  the Deed of Trust, and it sought a judgment expunging the Deed of Trust. *Id.*

11  Defendants did not name MERS as a party or provide any notice of the lawsuit to

12  MERS, though MERS's address was plainly set forth on the first page of the Deed

13  of Trust. *Id.* at ¶ 33 & Ex. 1, p. 1. Defendants obtained a default judgment that

14  purports to expunge the Deed of Trust. *Id.* at ¶ 35, Ex. 4. On April 25, 2013,

15  Defendants recorded the judgment. *Id.* at ¶ 35, Ex. 4.

16       Defendants' failure to give notice of their lawsuit to MERS was intentional—

17  it was part of a scheme advertised by their attorney to obtain quiet title judgments by

18  default to enable secured borrowers to obtain "forecloseable proof" homes, "free

19  and clear of any lien," without having to actually repay the money they borrowed.

20  *Id.* at ¶ 34, Exs. 3-4. Had MERS received notice of the state court action, it would

21  have defended the action and alerted the loan servicing agent or current note owner

22

23  [2] This is a standard MERS security agreement instrument; the relevant MERS language in the Deed
24  of Trust in this case is identical to the language in millions of other MERS deeds of trust recorded
    in California, as noted by the Court of Appeals in numerous recent cases. *Compare* Complaint
25  Ex. 1 *with Siliga v. Mortgage Electronic Registration Systems, Inc.*, 219 Cal.App.4th 75, 78-79
    (2013) (citing same language); *Herrera v. Federal National Mortgage Assn.*, 205 Cal.App.4th
26  1495, 1499 (2012) (citing same language); *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th
    256, 262-263 (2011) (citing same language); *Gomes v. Countrywide Home Loans, Inc.*, 192
27  Cal.App.4th 1149, 1151 (2011) (citing same language). The deed of trust agreement is identified in
    the footer as a "CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM
28  INSTRUMENT – MERS." *See* Compl. Ex. 1.

1  that action needed to be taken to protect the security instrument, as it does routinely

2  throughout California. *Id.* at ¶ 36. It did not have that opportunity.

3        Upon learning of the state court judgment, MERS contacted Defendants'

4  counsel and demanded a stipulation to set the judgment aside, but Defendants'

5  counsel ignored the demand. *Id.* at ¶ 37.

6  **C.    Background Regarding MERS and the MERS® System**

7        Rather than focusing on the role MERS actually plays in the mortgage

8  industry, Defendants attempt to distract and sway the court with biased attacks on

9  MERS, delving into a political discussion regarding the merits of MERS and the

10  securitization of home mortgage loans. This Court need look no further than the

11  Deed of Trust to establish MERS's right to notice of the quiet title action. To the

12  extent the Court seeks additional background regarding MERS and its role in the

13  mortgage industry, it should look to the facts pleaded in the Complaint.

14        MERS, a wholly owned subsidiary of MERSCORP Holdings, Inc., was

15  created for the purpose of serving as record mortgagee in the public land records as

16  nominee for the originating lender and its successors and assigns. *Id.* at ¶¶ 5, 17.

17  The security interest is granted to MERS and MERS has the right, as nominee for

18  the current note owner or holder, to exercise any or all of the lender's interests under

19  the deed of trust. *Id.* at ¶ 18. If the loan and/or the servicing rights are transferred,

20  (which typically happens one or more time in the mortgage industry), MERS will

21  generally remain the beneficiary of record and those transfers will be tracked

22  electronically through the MERS® System. *Id.* at ¶ 19. MERS acts as the record

23  beneficiary for approximately 3.5 million active loans in California. *Id.* at ¶ 21.

24        As record beneficiary, one of MERS's critical functions is to receive service

25  of legal process for proceedings relating to the secured property and to take

26  appropriate action to protect the security interest or collateral on behalf of the

27  current owner(s) and holder of the indebtedness and promissory note respectively.

28  *Id.* at ¶ 25. MERS protects its MERS® System members' interests by receiving

1    legal notices of foreclosure, tax sales, or other proceedings that might affect the note

2    owner's equitable interests in the property.  *Id.* at ¶ 42.

3            Though MERS's role in the mortgage industry or its rights under various

4    states' foreclosure laws are not the issues before this Court, MERS is nonetheless

5    compelled to correct the Defendants' distorted views on this topic.[3]  Prior to the

6    advent of MERS, every time a loan secured by a mortgage was negotiated or

7    otherwise sold, the assignee would need to record an assignment of the mortgage in

8    the land records to either itself of the assignee's agent to ensure that the proper

9    entities received notice of actions impacting the perfected security interest.

10   *Jackson v. Mortgage Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490 (Minn.

11   2009); *Mortgage Elec. Registration Sys., Inc. v. Bellistri*, 2010 WL 2720802, at *6-7

12   (E.D. Mo. July 1, 2010).  These multiple assignments increased the costs of real

13   estate transactions and led to errors and uncertainty in the chain of title because

14   assignments were often missing, incomplete, inaccurate, or subject to delay or

15   misfiling by county land recording offices.  *Id.*  The costs associated with preparing

16   and recording assignments were often passed on to consumers, the buyers and

17   sellers of real estate.  *Id.*  The MERS® System reduces these costs of mortgage

18   transactions (and the cost of credit to consumers) and "streamlines the mortgage

19   process by using electronic commerce to eliminate paper."  About Us,

20   http://www.mersinc.org/about-us/about-us.  *See also Jackson*, 770 N.W.2d at 490.

21   *See also* Compl. at ¶ 24.

22           MERS does not, as Defendants suggest, shield the identity of the holder of the

23   mortgage loan from the public.  As an initial matter, the non-borrower public's

24

25   [3]  Though it is unnecessary for purposes of this motion, the Plaintiffs draw this Court's attention to
     the following publications which effectively refute the analysis and conclusions of Defendants'
26   cited publication: Allen H. Jones, *Setting the Record Straight on MERS*, MORTGAGE BANKING,
     May 2011 and Patrick C. Sargent and Mark W. Harris, *The Myths and Merits of MERS*, THE
27   NATIONAL LAW REVIEW, Sept. 25, 2012, http://www.natlawreview.com/article/myths-and-merits-
     mers.
28

1    primary concern is not *who* owns Defendants' outstanding indebtedness, so much as

2    wanting to know the *existence* of a recorded, perfected lien interest against the

3    subject property, its priority, and who to contact or notify with respect to that

4    interest.  Borrowers, on the other hand, have access to a toll-free number and an

5    internet website (http://www.mers-servicerid.org) that allow the borrower to obtain

6    the identity of the servicer, and in many cases, the beneficial owner of their

7    mortgage loans.  MERS Home Page, http://www.mersinc.org.  *See also* Compl.

8    ¶¶ 22-24.[4]  And Defendants' contention that prior to MERS the land records always

9    disclosed the owner of the loan (Motion, p. 3), is simply not true.  Long before

10   MERS was created, servicers on loans often held the record interest in mortgages on

11   behalf of the beneficial owners of the loans, in much the same way that MERS does.

12   *Bellistri*, 2010 WL 2720802, at *6.

13                                    **III.**

14           **THE COMPLAINT STATES LEGALLY VALID CLAIMS**

15   **A.    California Law Required Notice of the Quiet Title Action To MERS**
16   **       Because As Beneficiary of Record, MERS Claimed an Interest in the**
     **       Property**

17           The California Code of Civil Procedure governing quiet title actions mandates

18   that "plaintiff shall name as defendants in the action the persons having adverse

19   *claims* to the title of the plaintiff against which a determination is sought."  Code

20   Civ. Proc. § 762.010 (emphasis added).  The Code further provides that a judgment

21   in a quiet title action "does not affect a claim in the property or part thereof of any

22   person who was not a party to the action" if (a) the claim was of record at the time

23   the lis pendens for the action was filed, or, if none, at the time of the judgment was

24   entered or (b) if the claim was actually known to the plaintiff in the quiet title action.

25   _____

26   [4]  Defendants' argument is further meritless in light of the fact that federal law guarantees they
     will be provided notice of the note owner's identity.  *See* 15 U.S.C. § 1641(g) ("not later than 30
27   days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third
     party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing
28   of such transfer.").

1   Code Civ. Proc. § 764.045.

2          The California courts strictly enforce these requirements, holding that a party

3   may not deprive known claimants of their interests in property without personal

4   service of the complaint.  *Gerhard v. Stephens*, 68 Cal. 2d 864, 907-09 (1968) (quiet

5   title judgment did not extinguish rights of claimants when plaintiffs failed to

6   exercise reasonable diligence to locate holders of interests that appeared in the

7   public records).

8          Defendants fail to address the clear language of the California Code or

9   explain why it did not require notice to MERS.  Instead they argue that MERS is not

10  the real party in interest under the Deed of Trust.  Even if that were true (which it is

11  not), Defendants' position would not obviate the requirements of the statute.  As the

12  plainly disclosed record beneficiary at the time of the quiet title action,[5] MERS had

13  a "claim" to an interest in the secured property and was entitled to notice of the

14  proceedings for that reason alone.

15         If a plaintiff could avoid joining known claimants to quiet title actions based

16  upon the plaintiff's independent determination that the claim is not valid, then every

17  quiet title action could be decided by default and the purpose of the statutory action

18  entirely defeated.  The point of a quiet title action is for the court to determine the

19  respective interests in property.  Defendants tried to skip the part where the court

20  adjudicates the competing rights, and simply proceeded by default without giving

21  notice to MERS.  Because MERS is the record beneficiary of interest—regardless of

22  Defendants' view of that interest—MERS is entitled to notice of a lawsuit affecting

23  the Deed of Trust so that the competing claims can be adjudicated fully by the state

24  court.

25

26

27  [5] Defendants filed their lis pendens for the quiet title action on May 16, 2012, at which time

28  MERS was of record as the beneficiary under the Deed of Trust.  Compl. ¶¶ 53-56, Ex. 5.

1     Defendants' argument fails for the additional reasons that MERS does have

2 enforceable rights under the Deed of Trust and, as parties to that contract, Defendants

3 are precluded from challenging MERS's rights thereunder.  The California courts

4 have consistently recognized MERS's right (under identical deed of trust language) to

5 initiate foreclosure proceedings itself or assign its interest to others for that purpose.

6 *See, Herrera v. Federal Nat. Mortgage Assn.*, 205 Cal.App.4th 1495, 1506 (2012);

7 *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256 (2011); *Calvo v. HSBC*

8 *Bank USA, N.A.*, 199 Cal.App.4th 118, 125 (2011); *Gomes v. Countrywide Home*

9 *Loans, Inc.*, 192 Cal.App.4th 1149, 1157 (2011).

10     In *Fontenot*, erroneously relied upon by Defendants, the California Court of

11 Appeal specifically held that the fact that MERS was exercising rights under the

12 Deed of Trust as agent for the owner of the note did not diminish its role as

13 beneficiary under that document or its ability to exercise all the rights of the

14 beneficiary.  198 Cal.App.4th at 272 ("Contrary to plaintiff's assertion, the deed of

15 trust did not designate MERS as both beneficiary of the deed of trust and nominee

16 for the beneficiary; *rather, it states that MERS is the beneficiary, acting as a*

17 *nominee for the lender.* . . . The legal implication of the designation is that MERS

18 may exercise the rights and obligations of a beneficiary of the deed of trust, . . . and

19 there is nothing ambiguous or unusual about the legal arrangement)[6] (emphasis

20 added).  *See also Morgera v. Countrywide Home Loans, Inc.*, 2010 WL 160348 at

21 *8 (E.D. Cal. 2010) ("Under the mortgage contract, MERS has the legal right to

22 foreclose on the debtor's property.  The fact that MERS, the mortgagee, lacked a

23 beneficial interest in the note that was secured by the mortgage does not deprive

24 MERS of standing to enforce the note and foreclose the mortgage.")

25

26 [6] The situation is no different than the trustee of a trust who owns land and holds a deed of trust
27 on behalf of the trust beneficiaries—the parties entitled to the proceeds of any foreclosure action.
No one would question the right of the trustee to notice of proceedings that would impair that
28 security instrument.

1    In addition, both federal and California courts have consistently held that a

2  borrower is precluded from disputing the authority specifically granted to MERS

3  under a deed of trust they executed.  Here, Defendants explicitly agreed in the Deed

4  of Trust that MERS was the beneficiary of the security instrument and could

5  exercise any and all of the rights granted to the beneficiary thereunder.  In exchange

6  for these bargained-for contractual rights, Defendants were provided the nearly one

7  million dollar loan.[7]  Now, in order to protect their scheme to get a mortgage-free

8  house, they challenge MERS's status as beneficiary.  This kind of challenge is

9  routinely and soundly rejected in this jurisdiction, and Defendants should be

10  precluded from doing so here.

11    In *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir.

12  2011), borrowers brought various challenges to MERS and the MERS® System in

13  an attempt to avoid foreclosure.  Like Defendants here, the borrowers alleged that

14  MERS was a "sham" beneficiary because it had no financial interest in the loan, and

15  the plaintiffs complained that MERS was used to hide the owner of the loan.

16  *Cervantes*, 656 F.3d at 1042.  Affirming dismissal of the complaint, the Ninth

17  Circuit rejected these arguments because the deeds of trust signed by the plaintiffs

18  constituted plaintiffs' agreement that MERS (and its successors and assigns) was the

19  beneficiary, and the nominee for the lender and lenders' successors and assigns, and

20  that MERS was authorized to exercise all rights granted under the deed of trust to

21  the beneficiary. *Id.*

22    This Court repeatedly has rejected borrowers' challenges to MERS's status as

23  beneficiary based upon the borrowers' agreement to the terms of the deed of trust.

24

25

26  [7] *See McLaughlin v. Chase Home Finance, LLC*, 519 Fed.Appx. 904, 2013 WL 1003465 (6th Cir.
    2013) ("MERS was 'the owner,' [of the Mortgage] and the Mortgage was properly supported by
27  consideration, because MERS's 'contractual obligations as mortgagee were dependent upon
    whether the mortgagor met the obligation to pay the indebtedness which the mortgage secured.'
28  (citing to *Residential Funding Co. v. Saurman*, 490 Mich. At 909, 805 N.W.2d at 183.").

1   *See Hollins v. ReconTrust, N.A.*, 2011 WL 1743291, *3-*4 (C.D. Cal. 2011).[8]  In

2   *Hollins*, this Court rejected the plaintiffs' claims that MERS could not act as

3   beneficiary and that MERS did not have the rights of a beneficiary, such as to assign

4   its beneficiary interest: "this contention cannot be reconciled with the mortgage-

5   related documents that Plaintiffs executed (which clearly demonstrate that MERS

6   was authorized as beneficiary) . . . ." *Id.* at *4.

7       Similarly, in *Siliga v. Mortgage Electronic Registration Systems, Inc.*, 219

8   Cal.App.4th 75 (2013), the California Court of Appeals held that "a trustor who

9   agreed under the terms of the deed of trust that MERS, as the lender's nominee, has

10  the authority to exercise all of the rights and interest of the lender, including the

11  right to foreclose, is precluded from maintaining a cause of action based on the

12  allegation that MERS has no authority to exercise those rights." *Siliga*, 219

13  Cal.App.4th at 83.  The *Siliga* Court held that borrowers' agreement in the deed of

14  trust established that MERS had the authority to exercise all rights and interests of

15  the lender. *Id.* at 83-84.  *See also*, *Gomes*, 192 Cal.App.4th at 1157 ("by entering

16  into the deed of trust, Gomes agreed that MERS had the authority to initiate a

17  foreclosure.").

18      Here, Defendants do not deny the execution or validity of the Deed of Trust,

19  so they cannot now deny the rights granted to MERS as beneficiary thereunder.

20  Those rights additionally entitled MERS to notice of the quiet title action under

21  California law.

22      Defendants' assertion that they named Union Pacific Mortgage in their quiet

23  title action does not cure their failure to name MERS.  Although Union Pacific was

24

25  [8]  *See also Derakhshan v. Mortgage Elec. Registration Sys., Inc.*, No. 8:08-cv-01185, 2009 U.S.

26  Dist. LEXIS 63176 (C.D. Cal. June 29, 2009) ("By signing the Deed of Trust, Plaintiff agreed that
    MERS would be the beneficiary and act as nominee for the lender."); *Labra v. Cal-W.*

27  *Reconveyance Corp.*, No. 09-2537 , 2010 U.S. Dist. LEXIS 23165, at *21(C.D. Cal. 2010)
    ("[D]eeds of trust explicitly state that MERS is the nominal beneficiary under the deeds of trust,

28  and … to take any action required of a lender.").

1 | denominated as the "Lender" when the deed of trust was first issued, it was not the
2 | beneficiary under the Deed of Trust and was not even the "Lender" for whom
3 | MERS held the beneficiary interests, when the tax sale was completed in 2012. At
4 | the time the quiet title action was filed, Union Pacific had transferred ownership of
5 | the loan. *See* Compl. at ¶ 32. The Defendants were aware of this transfer at the
6 | time they filed the quiet title action. *Id.* And this transfer is entirely consistent with
7 | the terms of the Deed of Trust, which expressly anticipates that the underlying loan
8 | may be sold, and that MERS and its assigns will continue to serve as the beneficiary
9 | with the right to enforce the security instrument on behalf of the "Lenders
10 | successors and assigns." *See* Compl. at Ex. 1 at p.3. *See also* Ex. 1 at ¶ 20.

MERS claimed an interest in the subject property by virtue of the deed of
trust's execution by Defendants and recordation in the public land records. The
recorded deed of trust identified MERS as the record beneficiary and provided an
address for notice to MERS. No further evaluation of MERS's interest was
necessary to ascertain its right to notice; its status as record beneficiary begins and
ends the inquiry. The quiet title action violated the California Code and, under that
statute, it did not eliminate MERS's interest in the property.

**B.   Due Process Required Notice of the State Court Action to MERS**

In addition to the requirements of the California Code, MERS had an
independent right to notice of the state court quiet title action under the Due Process
Clause of the U.S. Constitution. The Due Process Clause requires that "deprivation
of life, liberty or property by adjudication be preceded by notice and opportunity for
hearing." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

The U.S. Supreme Court has held that due process requires that mortgage lien
holders be given notice of any legal proceedings that could extinguish their interests.
In *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), notice of a county
tax sale was posted and sent to the property owner, but not to the mortgagee.
*Mennonite Board*, 462 U.S. at 794. The Supreme Court held that this violated due

1  process because a mortgagee possesses "a substantial property interest" and therefore
2  was entitled to notice reasonably calculated to apprise it of the sale. *Id.* at 798.

3      Moreover, as the beneficiary under the Deed of Trust, MERS has the right to
4  file suit to commence foreclosure proceedings or exercise the power of sale via
5  nonjudicial foreclosure. The right to file a lawsuit is a "constitutionally recognized
6  property interest." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807 (1985). So
7  is the right to enforce the lien via a power of sale. *Louisville Joint Stock Land
8  Bank v. Radford*, 295 U.S. 555, 590 (1935) (right to enforce lien constitutes a
9  "substantive right[] in specific property"). MERS's right to enforce the Deed of
10 Trust through foreclosure cannot be extinguished without notice to MERS and an
11 opportunity for MERS to be heard.

12     Finally, the California statutes create an independent constitutional right to
13 notice of the tax sale. The source of most property rights is not the U.S.
14 Constitution but "'existing rules or understandings that stem from an independent
15 source such as state law.'" *Perry v. Sindermann*, 408 U.S. 593, 602 n.7 (1972),
16 quoting *Board of Regents of State College v. Roth*, 408 U.S. 564, 577 (1972). The
17 right to procedural due process:

18         is conferred, not by legislative grace, but by constitutional
19         guarantee. While the legislature may elect not to confer a
20         property interest in federal employment, it may not
21         constitutionally authorize the deprivation of such an interest,
22         once conferred, without appropriate procedural safeguards.

23 *Vitek v. Jones,* 445 U.S. 480, 490 n.6 (1980), *quoting Arnett v. Kennedy*, 416 U.S.
24 134, 167 (1974) (Powell, J., concurring). *Accord, Hicks v. Oklahoma*, 447 U.S. 343,
25 346 (1980) (defendant has a "substantial and legitimate expectation" that State will
26 honor a State-created procedural right, "and that liberty interest is one that the
27 Fourteenth Amendment preserves against arbitrary deprivation").

28     The mandatory provisions of the California Code give MERS a property right

1    in receiving the notices described therein, and an arbitrary deprivation of that right

2    violates due process.  Defendants cannot and should not be allowed to undertake a

3    scheme to arbitrarily divest MERS of that right.

4    **C.    Other Courts Recognize MERS's Right To Notice Of Proceedings That
            Affect The Security Interest**

5

6          Several other courts have addressed situations similar to that before this Court

7    and held that MERS is entitled to notice of proceedings that affect its property

8    interest.  The United States District Court for the Eastern District of Missouri,

9    invalidated a tax sale when notice was not provided to MERS, the beneficiary of

10   record under a deed of trust virtually identical to that before this Court.  The Missouri

11   statute governing tax sales, just like the California Code at issue in this case, required

12   notice to parties who "appeared of record" with a "claim" to an interest or lien.

13   *Bellistri*, 2010 WL 2720802, at *10-*12.  The court held that the plain terms of the

14   statute required "mandatory" notice to MERS.  *Id.* at *12.  It also determined that

15   MERS possessed property interests entitled to due process protection under the U.S.

16   Constitution.  *Id.* at *14.  According to the court, MERS's rights under the deed of

17   trust to file suit to foreclose and to enforce the lien via a power of sale are

18   "substantial" property rights and "[i]t violates due process to deprive MERS of that

19   'protected property interest' without notice and an opportunity to be heard."  *Id.*

20         The Supreme Court of Indiana reached a similar decision, holding that

21   MERS's assignee, standing in MERS's shoes and asserting is rights, was entitled to

22   intervene to seek to set aside a foreclosure undertaken without service on MERS and

23   further held that, due to the lack of service on MERS, the foreclosure did not

24   extinguish the mortgage and the buyer took subject to the mortgage lien.

25   *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 814-818 (Ind. 2012).  While the

26   court noted that MERS was not a "mortgagee" within the meaning of the Indiana

27   foreclosure statute at issue, it held that the rights conferred on MERS under the

28   mortgage – in particular the right to file a foreclosure proceeding – are

1   "constitutionally recognized property interests." *Id.* at 814. The Indiana Supreme

2   Court concluded that absent service of process upon MERS, the trial court lacked

3   jurisdiction to extinguish the mortgage through foreclosure. *Id.* at 816.

4       The Arizona Court of Appeals followed suit in *Delo v. GMAC Mortgage,*

5   *L.L.C.*, 302 P.3d 658 (Ariz. Ct. App. May 8, 2013). Following a county tax sale,

6   Delo purchased the property and foreclosed on the tax lien. He did not name

7   MERS, the beneficiary under a deed of trust as nominee for the lender and its

8   successors and assigns. Nor did he name the then current holder of the promissory

9   note, GMAC. The trial court entered a default judgment and Delo obtained a

10   treasurer's deed to the property. *Id.* at ¶¶ 4-5.

11       In the meantime, MERS and the trustee on the Deed of Trust instituted non-

12   judicial foreclosure due to default under the MERS' deed of trust, and GMAC

13   purchased the property as the highest bidder. Delo filed a quiet title against GMAC

14   and the trial court entered judgment in his favor. *Id.* at ¶ 6. GMAC appealed. The

15   court of appeals allowed MERS to intervene based upon its "unique business model

16   and its contractual obligations with its member-lenders." *Id.* at ¶ 1 n.1. The court

17   then held that Delo's tax lien foreclosure did not extinguish the deed of trust or take

18   priority over those interests because Delo failed to join MERS as a party in the

19   lawsuit. *Id.* at ¶¶ 12-19. "And, because MERS was designated the lender's

20   nominee under the Deed of Trust, the GMAC Parties' interests in the Property were

21   protected by MERS's recorded interests." *Id.* at ¶ 12. The court further stated,

22            [T]he Deed of Trust not only expressly identifies MERS

23            as the nominee for the lender, but also as beneficiary, and

24            the holder of legal title to the Property. And, even if

25            MERS was merely an agent of [the original Lender] and

26            its successors, a diligent search for the true holder of the

27            Note, for purposes of giving proper notice of the tax-lien

28            foreclosure lawsuit, would have included providing notice

1    of the lawsuit to MERS, who then could have forwarded it

2    to the current holder of the note.

3 *Id*. at ¶ 18.

4        The California courts have likewise recognized that MERS, as the record lien

5 holder, is entitled to notice of actions that could affect that interest. *Mortgage Elec.*

6 *Registration Sys., Inc. v. Murphy*, No. CGC-08-473479 (Cal. Super. Ct. San

7 Francisco County Aug. 2, 2010) (overturning a judgment affecting MERS' lien

8 interest that was entered without notice to MERS) (decision attached). *See also*

9 *Renkemeyer v. Mortgage Elec. Registration Sys. Inc.*, 2010 WL 3878582 (D. Kan.

10 2010) (holding that MERS was a necessary party to a quiet title action that sought to

11 eliminate a mortgage held by MERS, as nominee for the lender and its successors

12 and assigns); *Flagstar Bank, FSB v. Lone Pine Capital LLC*, No. 04781 EQCV

13 109513 (Iowa Dist. Ct. Pottawattamie County Oct. 14, 2013) (setting aside a tax sale

14 when notice to redeem was not sent to MERS because MERS was entitled to

15 statutory notice of redemption rights as "mortgagee and a person who had an

16 interest of record" and because due process required notice of the tax sale and

17 redemption rights to MERS) (decision attached); *Hamlin v. Harps*, No. 4:07-cv-

18 00066-JBF-FBS (E.D. Va. 2007) (finding MERS to be a necessary party to an action

19 that seeks to diminish a MERS deed of trust) (decision attached).

20 **D.    MERS Has Standing To Bring This Claim**

21        The same lien interests that entitled MERS to notice of the quiet title action

22 also establish its standing to bring this claim.  Defendants' argument fails as a

23 matter of law.  Constitutional standing has three elements:  (1) An "injury in fact,"

24 i.e., an invasion of a legally protected interest that is concrete and particularized, and

25 is actual or imminent, not conjectural or hypothetical; (2) a "causal connection

26 between the injury and the conduct complained of"; and (3) that a favorable decision

27 is "likely" to remedy the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561,

28 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Mortgage Electronic Registration Systems*

1  *Inc. v Bellistri*, 2010 WL 2720802 at *15 (E.D. Mo.) ("*Bellistri*").

2    Defendants argue that MERS lacks standing because it holds the Deed of Trust

3  as agent, or on behalf of, the note owner. But, as set forth above, the Deed of Trust

4  grants MERS the independent right to enforce the security interest and the California

5  courts have affirmed MERS's ability to do so. All of the rights granted by Defendants

6  in the Deed of Trust are real property rights that can be enforced by MERS.

7    The fact that MERS may enforce those rights on behalf of another does not

8  diminish its right to bring this suit. *Sprint Communications Co. v. APCC Services,*

9  *Inc.*, 554 U.S. 269 (2008), is dispositive on this point.[9] *Sprint Communications*

10  confirms that the holder of legal title to a claim has standing to sue even if it has no

11  equitable or beneficial interest in the claim. In that case, payphone owners assigned

12  their collection claims against long distance carriers to the plaintiff and the plaintiff

13  agreed to remit all proceeds of the litigation back to the assignors. The Supreme

14  Court held that this was sufficient to confer standing on the plaintiff to sue on the

15  claim. "[T]he assignee of a claim has standing to assert the injury in fact suffered

16  by the assignor." *Sprint*, 554 U.S. at 286.

17    MERS holds the Deed of Trust as the beneficiary and nominee for the lender

18  and lender's successors and assigns. A nominee has been defined as a "party who

19  holds bare legal title for the benefit of others." Black's Law Dictionary 1072

20  (7th Ed. 2002). Like the plaintiff in *Sprint*, MERS hold legal title to the Deed of

21  Trust and the right to enforce the Deed of Trust on behalf of the note owner. When

22  the security interest was eliminated, MERS lost that right, and that loss alone gives

23  it standing to sue. Moreover, the current note holder lost the right to enforce

24  payment of the promissory note through the security instrument. Under *Sprint*,

25  MERS can sue based upon its inability to provide its contractual services to the note

26  ───────────────

27  [9] The Eastern District of Missouri relied upon *Sprint* in recognizing that MERS's right to enforce
the security interests on the lenders' behalf is a protected property interest that entitled MERS to

28  notice of the tax sale. *Bellistri*, 2010 WL 2720802, at *10-*12.

1   owner as well as that injury to the note owner.

2        The default judgment resulted in damage and loss of customer good will

3   associated with this particular transaction, and it also threatens MERS's entire

4   business model in California. *See* Compl. at ¶¶ 41-42.  Lenders and investors that

5   appoint MERS to hold security interests on their behalf rely upon statutory notice

6   requirements to ensure that MERS will receive, and forward to them, notice of any

7   proceedings that may affect their equitable property interests held through MERS.

8   *Bellistri*, 2010 WL 2720802, at *8; *Citimortgage, Inc.*, 975 N.E. at 814-15.  If

9   MERS is not entitled to this notice, its business will inevitably be harmed.

10        The District Court for the Eastern District of Missouri reached this exact

11   conclusion when it set aside a tax sale for lack of notice to MERS. *Bellistri*, 2010

12   WL 2720802, at *8.  As that court recognized, a ruling that MERS is not entitled to

13   notice in this type of proceeding "affects MERS' fundamental business model and

14   creates a realistic danger that it will lose customers." 2010 WL 2720802, at *16.

15   *See also Metropolitan Regional Information Systems, Inc. v. American Home Realty*

16   *Network, Inc.*, 888 F.Supp.2d 691,712-13 (D. Md. 2012) (owner of database

17   consisting of compiled property listing established irreparable harm resulting from

18   unauthorized use of its content because owner's business model depended upon

19   subscriptions to its database and thus to the extent its subscribers were harmed, the

20   owner would also suffer harm).

21        Finally, the security interest in a Deed of Trust is a constitutionally protected

22   interest, and the potential elimination of that interest without notice is alone

23   sufficient harm to confer standing on MERS.  Addressing the tax sale process in

24   Indiana, the United States Supreme Court explained:

25             To begin with, a mortgagee possesses a substantial

26             property interest that is significantly affected by a tax sale.

27             . . The tax sale immediately and drastically diminishes the

28             value of this security interest by granting the tax-sale

purchaser a lien with priority over that of all other

creditors. Ultimately, the tax sale may result in the

complete nullification of the mortgagee's interest, since

the purchase acquires title free of all liens and other

encumbrances at the conclusion of the redemption period.

*Mennonite*, 462 U.S. at 791. For this reason, the deed of trust holder is entitled to notice and an opportunity to be heard and to present objections *prior* to the loss of that right. Defendants' violation of this due process right is itself harm that entitles MERS to relief.

This conclusion is consistent with the general rule that violation of a procedural due process right is actionable without proof of any other injury. *Carey v. Piphus*, 435 U.S. 247, 266 (1978). In that case, students sued a school district claiming that they were suspended without procedural due process. The court held that even if the suspensions were justified, and the students did not suffer any injury from the suspension, "[i]t is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake . . ." *Id.* (*quoting Fuentes v. Shevin*, 407 U.S. 67, 87 (1983)). Because the right to due process is "absolute" in that it does not depend upon the merits of a claimant's substantive assertions, "and because of the importance to organized society that procedural due process be observed," the Court determined that the students were entitled to nominal damages without proof of any actual injury. *Id.* at 266. For all these reasons, the Complaint more than sufficiently establishes MERS's right to bring this suit. The default judgment voiding MERS's beneficial interest in the Deed of Trust is an injury it fact. There is a casual connection between the injury and the conduct complained of; if Defendants had given notice to MERS, MERS would have notified the loan servicer and/or the loan's owner and defended the action and taken other appropriate action to protect the security interest. *See* Compl. ¶¶ 25, 36. And there is no doubt that a favorable decision setting aside the quiet title

1  judgment or reinstating the Deed of Trust will redress this injury.

**IV.**

**CONCLUSION**

MERS's members rely upon the protections afforded by the California Code to ensure that MERS receives, and can then take appropriate action on their behalf regarding notices of quiet title actions that threaten the security interest. Defendants' conduct violated the statute and the due process rights it protects. And, if sanctioned, Defendants' scheme could extend well beyond the context of quiet title actions, allowing notifying parties to avoid notices to MERS in connection with foreclosure actions on senior debt, condemnation actions, property code violations, or borrowers' bankruptcy proceedings. That would open the door to widespread elimination or impairment of security interests in California without notice to the beneficial owners of those interests, potentially rendering millions of loans in California unsecured and frustrating the note owners' reasonable expectations of security for their debts.[10] This in turn would have devastating consequences for the mortgage industry and recovering housing economy in the State.

For all the above reasons, the complaint adequately alleges that MERS was entitled to notice of the state court quiet title action and is entitled to the relief sought. Defendants' motion to dismiss should be denied.

DATED:  January 6, 2014

SEVERSON & WERSON
A Professional Corporation


By:  _____*/s/ J. Owen Campbell*_____
        J. Owen Campbell

Attorneys for Plaintiffs
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. and
MERSCORP HOLDINGS, INC.

---

[10] *See* Restatement (Third) of Property § 5.4 cmt. e (1997).

# Exhibit 1

1  PETER K. WOLFF, JR. (SBN 142426)
   100 North Wiget Lane, Suite 150
2  Walnut Creek, CA 94598
   Telephone: (925) 930-9550
3  Facsimile: (925) 930-9588

4
   Attorney for MORTGAGE ELECTRONIC
5  REGISTRATION SYSTEMS, INC.,
   as Nominee for J.P. MORGAN CHASE
6  BANK, as Trustee, and as Nominee for
   LASALLE BANK NATIONAL
7  ASSOCIATION, as Trustee

**F I L E D**

San Francisco County Superior Court

**AUG 0 2 2010**

CLERK OF THE COURT

BY: _____
                    Deputy Clerk

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **COUNTY OF SAN FRANCISCO**

10

11  MORTGAGE ELECTRONIC                )   CASE NO.  CGC-08-473479
    REGISTRATION SYSTEMS, INC.,        )
12  as Nominee for J.P. MORGAN CHASE   )
    BANK, as Trustee, and as Nominee for )  **JUDGMENT IN FAVOR OF MORTGAGE**
13  LASALLE BANK NATIONAL              )   **ELECTRONIC REGISTRATION**
    ASSOCIATION, as Trustee,           )   **SYSTEMS, INC., AS NOMINEE FOR J.P.**
14                                     )   **MORGAN CHASE BANK, AS TRUSTEE,**
               Plaintiff,              )   **AND AS NOMINEE FOR LASALLE BANK**
15                                     )   **NATIONAL ASSOCIATION, AS TRUSTEE**
         vs.                           )   **AND AGAINST THERESA LYNNE**
16                                     )   **MURPHY**
17  THERESA LYNNE MURPHY; CLYDE        )
    NATHAN SMITH; ERIC MCGUIRE; 11     )
18  HIGH STREET CONDOMINIUM            )
    ASSOCIATION, and all persons unknown, )
19  claiming any legal or equitable right, title, )
    estate, lien, or interest, in the Property )
20  adverse to Plaintiff's title, or any cloud on )
    Plaintiff's title; and Does 1-100 Inclusive, )
21                                     )
               Defendants.            )
22                                     )
23                                     )

24          On May 12, 2010, the Court granted the motion of plaintiff Mortgage Electronic

25  Registration Systems, Inc., as Nominee for J.P. Morgan Chase Bank, as Trustee, and as

26  Nominee for LaSalle Bank National Association, as Trustee for summary adjudication

27  judgment pursuant to Code of Civil Procedure 437c on the grounds that there were no triable

28  issues of material fact to be decided and that the Amended Default Judgment

                                    - 1 -

                                                                            Judgment

1   By Court entered on February 11, 2008 in the San Francisco Superior Court Action entitled

2   Theresa Lynne Murphy v. Clyde Nathan Smith, Case No, 07-CGC-07-467109 and recorded

3   in the San Francisco County Recorder's Office on February 11, 2008 as document number

4   2008-I534311-00 is null and void.  In accordance with that order,

5        IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment be and

6   hereby is entered in favor of plaintiff Mortgage Electronic Registration Systems, Inc., as

7   Nominee for J.P. Morgan Chase Bank, as Trustee, and as Nominee for LaSalle Bank National

8   Association, as Trustee on the Second Cause of Action in the Complaint herein and against

9   Theresa Lynne Murphy and that the Amended Default Judgment By Court entered on

10  February 11, 2008 in the San Francisco Superior Court Action entitled Theresa Lynne

11  Murphy v. Clyde Nathan Smith, Case No, 07-CGC-07-467109 and recorded in the San

12  Francisco County Recorder's Office on February 11, 2008 as document number 2008-

13  I534311-00 is null and void as the parties purportedly affected thereby had not been named as

14  defendants or served with the Summons in Action No. 467109 and therefore the Amended

15  Default Judgment by Court shall be and hereby is vacated, *nunc pro tunc*, as of February 11,

16  2008.  Plaintiff Mortgage Electronic Registration Systems, Inc., as Nominee for J.P. Morgan

17  Chase Bank, as Trustee, and as Nominee for LaSalle Bank National Association, as Trustee

18  shall recover from defendant Theresa Lynne Murphy its costs in accordance with law as may be determined by the

19  Court.

20

21

22

23  DATED: July 30, 2002 2010                          _____
                                                        Judge of the Superior Court
24

25

26

27

28  APPROVED AS TO FORM:
    _____

                              - 2 -                                    Judgment

# Exhibit 2

IN THE DISTRICT COURT OF POTTAWATTAMIE COUNTY, IOWA

| | |
|---|---|
| FLAGSTAR BANK, FSB, ) | NO. 04781 EQCV 109513 |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| LONE PINE CAPITAL LLC, ) | ORDER OVERRULING MOTION |
| ) | FOR SUMMARY JUDGMENT |
| Respondent. ) | |

THIS MATTER came on for hearing on the Respondent Lone Pine Capital LLC's

Motion for Summary Judgment on September 9, 2013 at 9:45 a.m. Curtis J. Heithoff

and Robert J. Becker appeared on behalf of Petitioner Flagstar Bank, FSB, and

James E. Nervig appeared on behalf of the Respondent by telephone. The Court having

considered the Respondent's Amended and Corrected Statement of Facts, the

Petitioner's Resistance to the Motion for Summary Judgment and the Affidavit of Mae

Lynn Campbell, finds as follows:

Under Iowa law, a Court examines the facts and the record in the light most

favorable to the non-moving party and draw all legitimate inferences from the evidence

to establish the existence of questions of fact. *Kragnes v. City of Des Moines,* 714

N.W.2d 632 Iowa (2006). Moreover, in order to grant summary judgment, there must be

no genuine issue as to any relevant material fact; and the moving party must be entitled

to judgment as a matter of law. *Mueller v. Wellmark, Inc.,* 818 N.W.2d 244 (2012).

The facts presented on this Motion are as follows: On June 15, 2009, Tax 141

Partnership paid unpaid real estate taxes on the real estate which is the subject matter

of this proceeding, being 30333 175th Street, Honey Creek, Pottawattamie County,

Iowa, at a Tax Sale conducted by the County Treasurer of Pottawattamie County and was issued a Tax Sale Certificate No. 2009-1124.

On August 4, 2009, James Yarbrough, as the owner of the subject real estate, borrowed $55,062.00 from Freedom Lending, LLC (Lender) giving to Lender his Promissory Note (Exhibit A to Respondent's Amended and Corrected Statement of Facts in Support of Motion for Summary Judgment). To secure repayment of the debt, James Yarbrough executed and delivered a Mortgage to Mortgage Electronic Registrations Systems, Inc. (MERS) on the subject real estate (Exhibit B to Respondent's Amended and Corrected Statement of Facts), which Mortgage on Page 1 both identifies MERS as the "Mortgagee" and as the "nominee for Lender and Lender's successors and assigns", and states MERS' address and telephone number.  The Mortgage document also states on page 2 thereof as follows:

> "Borrower understands that "MERS" holds only legal title to the interests granted by Borrower in this Security Instrument, but if necessary to comply with law or custom, MERS (as nominee for lender and Lender's successors and assigns) has the right to exercise any or all those interests, including, but not limited to, releasing and cancelling this Security Instrument".

On August 4, 2009, the Promissory Note was assigned by Freedom Lending LLC to the Petitioner, Flagstar Bank, FSB, which then became the lender and MERS remained the record Mortgagee holding the interests granted under the Mortgage on behalf of Flagstar Bank, FSB (Page 2 of Exhibit B to Affidavit of Mae Lynn Campbell)

On May 15, 2012, Tax 141 Partnership, proceeding under Section 447.9 of the Code of Iowa, sent a "Notice to Redeem From Tax Sale" dated May 12, 2012 (Exhibit C to Respondent's Amended and Corrected Statement of Facts) and on May 16, 2012, filed an Affidavit stating to whom the Notice had been sent (Also Exhibit C –

Respondent's Amended and Corrected Statement of Facts). The Notice to Redeem and Affidavit both show that (for purposes of this action) the Notice to Redem was only sent by Tax 141 Partnership to the original lender, Freedom Lending, LLC and was not sent to MERS as Mortgagee, despite the fact that MERS was at that time the named Mortgagee in the Mortgage, that MERS held "legal title" to the interests under the Mortgage, and that MERS' address is clearly set out in the Mortgage.

Section 447.9, Iowa Code provides in relevant part:

Service of the notice shall be made by both regular mail and certified mail on any mortgagee having a lien upon the parcel, … and any other person who has an interest of record, at the person's last known address.

At the time this Notice of Right to Redeem was sent to the various parties on May 16, 2012, Petitioner, Flagstar Bank was then the owner and holder of the Promissory Note (Lender) and was the beneficial interest holder under the Mortgage. As neither MERS nor Flagstar Bank had received a copy of the Notice of Right to Redeem, they were both unaware of the Notice of Right to Redeem until after the 90 day period to redeem had expired according to the language of the Notice.

Under the MERS' agreement with Flagstar (Exhibit A of Affidavit of Mae Lynn Campbell), MERS was required to notify the lender within 2 business days of its receipt of any "Urgent Mail" on behalf of the lender, which would certainly include the Notice of Right to Redeem. Flagstar relied upon MERS to notify it if any documents such as a Notice of Right to Redeem were received by MERS, and under the express terms of the Mortgage, MERS has the authority to take any and all action required of lender to protect the security interest created by the Mortgage including redeeming the subject real estate from the Tax Sale Certificate. Had MERS received the Notice of Right to Redeem, it would have paid the taxes or taken action to protect the security interest

3

granted in the Mortgage.  (Affidavit of Mae Lynn Campbell, Paragraph 15)  Under

§447.8 of the Code of Iowa a Mortgagee is entitled to redeem property from a tax sale

certificate.  However, because no Notice was sent to MERS, neither MERS nor Flagstar

had the opportunity to redeem the subject real estate from the Tax Certificate within the

90-day period.

On August 29, 2012, MERS assigned the subject Mortgage to the lender Flagstar

Bank, FSB, the Petitioner herein, which Assignment was recorded on October 11, 2012

in Book 2012, Page 15393 of the Records of Pottawattamie County. (Exhibit D to

Respondent's Amended and Corrected Statement of Facts).

On October 12, 2012, Tax141 Partnership filed its assignment of the Tax

Certificate to Lone Pine Capital, LLC, the Respondent herein.  On the same date,

because no party redeemed the Subject Property, a Tax Sale Deed was issued by the

Pottawattamie County Treasurer to the Respondent, Lone Pine Capital, LLC, for the

subject real estate, which was recorded on the same day in Book 2012, Page 15535 of

the Records of Pottawattamie County (Exhibit E to Respondent's Amended and

Corrected Statement of Facts).

Under Section 448.15 and 448.16, Iowa Code, a party who receives a

Tax Sale Deed can prevent anyone from challenging the deed, if they file an affidavit,

giving any person who claims an interest in the property 120 days to file a claim

challenging the deed or in the case of a Mortgagee, challenging that the deed is subject

to the Mortgage.  One ground on which the Mortgagee can challenge the deed being

subject to the Mortgage is a claim of improper or lack of Notice of the Right to Redeem.

On November 26, 2012, proceeding under sections 448.15 and 448.16, Respondent

filed an Affidavit, which stated the Tax Deed had been issued to Respondent and

advising that any party claiming any right title and interest must file a claim within 120 days of the filing of the Affidavit. (Exhibit F to Respondent's Amended and Corrected Statement of Facts).

On March 19, 2013, within 120 days of the filing of the Respondent's Affidavit, Flagstar Bank as assignee of MERS and now Mortgagee filed its claim asserting that the May 12, 2012 Notice of Right to Redeem was not properly sent to all parties in that it was not sent to the then-mortgagee, MERS. (Exhibit G to Respondent's Amended and Corrected Statement of Facts)   §448.15 of the Code of Iowa requires that a lawsuit challenging the deed and the Notice be filed with 60 days of filing the claim.  On May 15, 2013, pursuant to §448.16 of the Code of Iowa (which requires suit be instituted under 447.8 Iowa Code), Flagstar Bank, as assignee of MERS, filed its Petition herein. §447.8 of the Code of Iowa Iowa provides that the action may be maintained by an assignee of the party entitled to notice.   Accordingly, Petitioner, as assignee of MERS, is entitled to bring this action to challenge the Notice of Right to Redeem not being sent to Petitioner's assignor, MERS.

LEGAL ANALYSIS

It is the position of the Respondent in seeking Summary Judgment that it was not required to send the May 12, 2012 Notice of Right to Redeem to the Mortgagee, MERS, and that such notice was only required to be sent to the original lender Freedom Lending, LLC.

It is clear that §447.9 of the Code of Iowa requires that the Notice of the Right to Redeem be sent to "on any mortgagee having a lien upon the parcel and upon any other person who has an interest of record."   Further, Iowa case law is consistent that

5

redemption rights should not easily be denied.   As set forth long ago in *Ashenfelter v. Seling*, 141 Iowa 512, 517, 119 N.W. 984, 985 (1909) the Iowa Supreme Court stated:

> "The right and authority of the State to seize and sell valuable property for the payment of a relatively small tax, while necessary, is often so oppressive in its results that we are bound to construe the right of redemption with all reasonable liberality, and hold the person who seeks to foreclose it to very substantial compliance with all of the provisions which have been enacted for its protection."

There are numerous cases reciting that the right of redemption is liberally construed in favor of the taxpayer. *Adams v. Thorp Credit, Inc.*, 452 N.W.2d 435, 437 (Iowa 1990); *Kilts v. American Legion Okoboji Lakes Post 654*, App.1998, 581 N.W.2d 189. Moreover, as part of the Iowa Court's liberality in according redemption privileges it has also always required that the statutory requirements regarding service of notice of expiration of right to redeem must be strictly complied with. *Grimes v. Ellison*, 1905, 130 Iowa 286, 105 N.W. 418; Fidelity Inv. Co. v. White, 1929, 208 Iowa 519, 223 N.W. 884. It has also established that the statutory requirements toward service of notice of the expiration of the right to redeem from tax sale must be fully met to cut off such right, and that courts will indulge no presumptions with regard thereto, as the requirements are mandatory. *Smith v. Huber*, 1938, 277 N.W. 557, 224 Iowa 817.

Accordingly, it appears to the Court that because MERS was both a "Mortgagee and a person who had an interest of record" under well established Iowa law, the Respondent, and its assignor, were required to send the Notice of the Right to Redeem to MERS in May, 2012 both in its capacity as a named "Mortgagee" and as "a person who had an interest of record."

Nonetheless, Respondent argues that MERS, as a Mortgage, is not required to be served with such notices because it is the "Nominee" of the lender and lender's successors and assigns and not a true Mortgagee.  Respondent cites case law outside

6

the State of Iowa as its authority in this case, as there is no case law in the State of Iowa for its position.  One such case cited by Respondent is *Citimortgage, Inc. v. Barabas, 975 N.E.2d 805* (Indiana 2012).  This case involved a mortgage foreclosure brought by a second mortgagee, who failed to notify the first mortgagee, MERS of the action.   The Second Mortgagee obtained a default judgment and after MERS assigned its mortgage to Citimortgage.  Citimortgage sought to intervene and set aside the default because of a lack of notice to MERS.   The *Citimortgage, Inc. v. Barabas* case actually supports Flagstar's position herein as the Indiana Supreme Court held that Citimortgage was entitled to intervene to seek to set aside the foreclosure undertaken without service on MERS and further held that, due to the lack of service on MERS, the foreclosure did not extinguish the mortgage and the buyer took subject to the mortgage lien.  Similarly, the Missouri and Arizona cases cited by Respondent support MERS' right, as record mortgagee, to notice of proceedings that will impair the security instrument.  See, *Mortgage Electronic Registration Systems, Inc. v Bellestri*, 2010 WL 2720802 (E.D. Mo. July 1, 2010); *Delo v. GMAC Mortgage, L.L.C.*, 302 P.3d 658 (Ariz. Ct. App. May 8, 2013).

The Court is persuaded by the Iowa law, both statutory and case law cited above, and believes MERS was entitled to receive the Notice of Right to Redeem, both as a Mortgagee and as a person having an interest of record.  To limit the notice to simply the original lender, when the recorded mortgage document clearly indicates the lender may assign his interest to another lender, would, as it did here, allow elimination of the security instrument without any notice to the entity holding legal title to the security interest and the current note holder, which would detrimentally affect the note owners' ability to collect the debt from the security.  The Court believes as stated by the

7

Iowa Supreme Court in *Ashenfelter*, supra, that to deprive a party of their interest in real estate through the tax sale procedures, a purchaser of a tax certificate should be required to strictly adhere to the statues and give all parties of record Notice of the Right to Redeem.

The Respondent also contends that the Mortgage document waives MERS' right to receive the Notice of the Right to Redeem. There is no such language in the Mortgage, as the Mortgage only refers to notices between or from the borrower to the Lender. It does not impact notices from third-parties to the Mortgagee or others claiming an interest in the security interest. MERS was identified in the document as the Mortgagee and the Mortgage provided a separate address for MERS. Moreover, there is a serious question whether a party can contractually waive a statutory requirement of notice which a State provides for in its Tax Sale statutes.

While not necessary to the Court's decision here, this Court agrees with Petitioner's further argument that due process also required notice of the tax sale and redemption rights to MERS. The Due Process Clause of the Fourteenth Amendment of the United States Constitution requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Article I, Section 9 of the Iowa Constitution requires the same. The U.S. Supreme Court has squarely held that due process requires that lien holders be given notice of any legal proceedings that could extinguish their interests. In <u>Mennonite Board of Missions v. Adams</u>, 462 U.S. 791 (1983), notice of a county tax sale was posted and sent to the property owner, but not to the mortgagee. <u>Id</u>. at 794. The Court held that this procedure violated due process,

8

because a "mortgagee" possesses a "substantial property interest" and therefore was entitled to notice reasonably calculated to apprise it of the sale. Id. at 798.

Moreover, as the mortgagee, MERS has the right to file suit to commence foreclosure proceedings. The right to file a lawsuit is a "constitutionally recognized property interest." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 807 (1985). So is the right to enforce the lien via a power of sale. *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 590 (1935)(right to enforce lien constitutes a "substantive right in specific property").

Finally, the Iowa statute created an independent constitutional right to notice of the tax sale. The source of most property rights is not the U.S. Constitution but "'existing rules or understandings that stem from an independent source such as state law.'" Perry v. Sindermann, 408 U.S. 593, 602 n.7 (1972), quoting Board of Regents of State College v. Roth, 408 U.S. 564, 577 (1972). Here, the plain terms of §447.9(2) of the Code of Iowa grants MERS the right to notice of tax sales that may deprive MERS of its interest in property. Having given that statutory right to MERS, the State may not deprive MERS of its benefits. Vitek v. Jones, 445 U.S. 480, 490 n.6 (1980). Accord, Hicks v. Oklahoma, 447 U.S. 343, 346 (1980) (defendant has a "substantial and legitimate expectation" that State will honor a State-created procedural right, "and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation").

For this additional reason, the Court finds that the Mortgage could not be extinguished when MERS, the record mortgagee and a party who had an interest of record, did not have notice and an opportunity to be heard prior to any proceedings that purported to eliminate that interest.

9

JUDGMENT

IT IS THERFORE ORDERED, ADJUDGED AND DECREED that the

Respondent's Motion for Summary Judgment is overruled.



State of Iowa Courts

**Type:** OTHER ORDER

**Case Number**
EQCV109513

**Case Title**
FLAGSTAR BANK FSB VS LONE PINE CAPITAL LLC

So Ordered

*James S. Heckerman*

**James S. Heckerman, District Court Judge,**
**Fourth Judicial District of Iowa**

Electronically signed on 2013-10-14 11:23:19     page 11 of 11

# Exhibit 3



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

CLARENCE J. HAMLIN,

        Plaintiff,

v.                                                                    Civil Action No. 4:07cv66

KATHLEEN HARPS,

NEW BEGINNINGS GROUP, LLC,

THE IMAK GROUP, LLC,

EQUIFIRST CORPORATION,

TRANSCONTINENTAL TITLE CO.,
individually and as trustee,

SANDRA KAZEBEER, individually and
as trustee,

LISA THOMAS,

EVERYDAY LENDING MORTGAGE
CORPORATION, INC.,

and

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

        Defendants.

## ORDER

      This matter comes before the court on defendant TransContinental Title Company's

("TransContinental") motion to dismiss for failure to join an indispensable party, brought

pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure. In his response brief, the

plaintiff, Clarence J. Hamlin, moves for leave to amend his complaint in order to join an additional party. After examination of the briefs and record, this court determines that oral argument is unnecessary because the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. The court, for the reasons stated fully herein, **GRANTS** the plaintiff's motion for leave to amend his complaint, and **DENIES** TransContinental's motion to dismiss.

I. Background

The plaintiff filed the instant complaint in this court on July 13, 2007, alleging that the defendants had, in varying degrees, participated in a scheme to divest him of ownership in his house under the guise of allowing him to avoid foreclosure. On August 15, 2007, TransContinental filed the instant motion, arguing that the entity that was named as the beneficiary on the deed of trust that was given by defendant Kathleen Harps, Mortgage Electronic Registration Systems, Inc. ("MERS") was a necessary party under Federal Rule of Civil Procedure 19 but had not been joined in the lawsuit. The plaintiff filed a response brief, contained in which was his motion for leave to amend the complaint, on August 24, 2007. TransContinental's rebuttal brief, filed on August 31, 2007, indicated its agreement with the plaintiff's motion to join MERS as a party.

II. Discussion

Rule 12(b)(7) of the Federal Rules of Civil Procedure permits a party to move for dismissal on the basis of the failure to join a party under Rule 19. Rule 19, in turn, provides that a person who is subject to the court's jurisdiction

shall be joined as a party in the action if (1) in the person's absence complete relief

2

cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been joined, the court shall order that the person be made a party.

In the specific context applicable to this case, the Virginia Supreme Court has held that an entity named as a beneficiary under a deed of trust is considered a necessary party where the lien of a deed of trust may be defeated or diminished. E.g., James T. Bush Constr. Co. v. Patel, 243 Va. 84, 97 (1992); Mendenhall v. Cooper, 239 Va. 71, 76 (1990). Further, the absence of the beneficiary to a case in which the deed of trust is subject to defeat or diminution may provide the basis for the voiding of any order in that case. Atkisson v. Wexford Assocs, 254 Va. 449, 455 (1997).

In the instant case, it is unclear from the face of the complaint whether the plaintiff seeks to diminish or defeat the deed of trust. Although the plaintiff argues in his response brief that MERS is a "legal fiction" in that its function is to serve solely as a nominee for a mortgage lender and the lender's assigns, the fact remains that MERS is the named beneficiary on the deed of trust at issue in this case, and the Virginia Supreme Court has repeatedly emphasized that MERS must be joined in a case in which a plaintiff seeks to defeat or diminish the deed of trust. Although the plaintiff notes that he has joined EquiFirst Corporation, which was the original lender, TransContinental indicates that EquiFirst is no longer the lender on the deed of trust, having sold its right to payment to another party. Thus, to the extent that the plaintiff is attempting to defeat or diminish the deed of trust, MERS is a necessary party.

As the plaintiff has moved in the alternative for leave to amend his complaint, and

3

TransContinental has indicated no objection, it appears that the plaintiff and TransContinental are in agreement on the joinder of MERS as a defendant in this action, and thus the proper remedy is to **GRANT** the plaintiff's motion for leave to amend the complaint and join MERS to the lawsuit. Therefore, the court **ORDERS** that the plaintiff file the amended complaint within five days of the date of this order. In accordance with Rule 15(a) of the Federal Rules of Civil Procedure, the defendants shall have ten days after receiving service of the amended complaint in which to respond.

The joinder of MERS as a party to this action destroys the grounds for TransContinental's motion to dismiss, and therefore that motion is **DENIED** as **MOOT.**

The Clerk is **REQUESTED** to send copies of this Order to counsel for all parties.

**IT IS SO ORDERED.**

/s/

Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 18, 2007

4

## **PROOF OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium, 19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

On January 6, 2014, I served true copies of the following document(s):

### **OPPOSITION TO MOTION TO DISMISS**

on the interested parties in this action as follows:

Susan M. Murphy
Advocate Legal
5455 Wilshire Boulevard, Suite 2119
Los Angeles, CA 90036

Attorney for Defendants Daniel W. Robinson and Darla J. Robinson

Telephone:  (323) 692-7499
Facsimile:   (800) 878 7336
E-Mail:
    susan@susanmurphvlaw.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 6, 2014, at Irvine, California.

_Terri A. Kelly_
Terri A. Keller