J. OWEN CAMPBELL (State Bar No. 229976)
joc@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARY KATE SULLIVAN (State Bar No. 180203)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

JOANN T. SANDIFER(*pro hac vice* pending)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
Telephone: (314)480-1500
Facsimile: (314) 480-1505

Attorneys for Plaintiffs
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. and
MERSCORP HOLDINGS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

| | |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and MERSCORP HOLDINGS, INC., | Case No. 2:13-CV-07142 PSG (ASx)<br>Hon. Philip S. Gutierrez<br>Ctrm. 880 |
| Plaintiffs, | **FIRST AMENDED COMPLAINT:** |
| vs. | **1. DECLARATORY JUDGMENT FOR VIOLATION OF CCP 762 AND TO SET ASIDE VOID QUIET TITLE JUDGMENT.** |
| DANIEL W. ROBINSON and DARLA J. ROBINSON, | **2. DECLARATORY JUDGMENT FOR VIOLATION OF DUE PROCESS AND TO SET ASIDE VOID QUIET TITLE JUDGMENT.** |
| Defendants. | **3. CANCELLATION OF INSTRUMENTS** |
| | **4. SLANDER OF TITLE** |

AMENDED COMPLAINT

3145043.1

Plaintiffs MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") and MERSCORP HOLDINGS, INC. allege as follows:

## **Nature of the Action**

1.      This is an action to set aside a state court judgment in a quiet title action that was entered in violation of the mandatory requirements of Sections 760.010 - 764.045 of the California Code of Civil Procedure ("CCP") governing quiet title actions and in violation of MERS' due process rights under the 5th and 14th Amendments to the United States Constitution and Article I, Section 7 of the California Constitution.

2.      Alternatively, to the extent that this Court determines that the California quiet title statutes, and in particular CCP section 762.010, do not require that MERS receive notice of quiet title actions and an opportunity to be heard, MERS requests this Court to declare the quiet title statute unconstitutional as a clear violation of due process.

3.      Plaintiffs seek declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 declaring that the quiet title judgment is void or declaring that defendants took title subject to the debt secured by the deed of trust on the property held by MERS.

4.      Pursuant to the Rule 8.29 of the California Rules of Court, a true and accurate copy of this Complaint is being served upon the Attorney General of the State of California.

AMENDED COMPLAINT

3145043.1

## Jurisdiction

5.     The Court has jurisdiction over this action under 28 U.S.C. § 1331, which confers original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear the pendent state law claims, in that both claims arise from a common nucleus of operative fact.

6.     The Court also has jurisdiction over this action under 28 U.S.C. § 1332(a), because there is complete diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of fees and costs, in that:

      a.     MERS is a corporation organized under the laws of Delaware with its principal place of business in the Commonwealth of Virginia.  MERSCORP Holdings, Inc. is a corporation organized under the laws of Delaware with its principal place of business in the Commonwealth of Virginia.

      b.     Defendants are citizens of and residents of California; and

      c.     The amount in controversy exceeds $75,000 because the void judgment at issue in this action purported to eliminate a deed of trust on real property securing a loan now valued at over one million dollars.

3

3145043.1

**Venue**

7.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because the defendants reside in this district, because a substantial part of the events giving rise to the claims occurred in this district, and because the real property that is the subject of the action is situated in this district.

**Parties**

8.     Plaintiff MERS is a Delaware corporation that is authorized to do business in the State of California.

9.     Plaintiff MERSCORP Holdings, Inc. is a corporation organized under the laws of Delaware with its principal place of business in the Commonwealth of Virginia.  MERSCORP Holdings, Inc. is the parent company of MERS. MERSCORP Holdings, Inc. is a private stock corporation whose shareholders and members include originating lenders and secondary market investors that use its services.

10.    Defendant Daniel W. Robinson is an individual who resides in Northridge, California.

11.    Defendant Darla J. Robinson is an individual who resides in Northridge, California.

**The Real Property**

12.    The real property that is the subject of this action (the "Property") is located in Los Angeles County, and is commonly known as 19127 Romar Street,

4

3145043.1

Northridge, CA 91324, and has the legal description: "LOT 21 OF TRACT NO.

4324, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE

OF CALIFORNIA.  AS PER MAP RECORDED IN BOOK 1051, PAGES 29 AND

30 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID

COUNTY."

13.    On or about February 15, 2005, Defendants Daniel W. Robinson and

Darla J. Robinson (jointly, the "Robinsons") acquired title to the Property by means

of a deed from the prior owners.

14.    At all times relevant hereto, MERS claimed "a legal or equitable right,

title, estate, lien, or interest in property or cloud upon title," which could not be

extinguished under California's quiet title statutes without notice to MERS.  CCP

§ 760.010.  MERS claimed an interest in the Property as the beneficiary of record on

a deed of trust, which deed of trust was ordered expunged without any notice to

MERS and in violation of California law and plaintiffs' due process rights.

**The California Recording Statutes**.

15.    California allows a party to record the transfer of an interest in real

property to provide notice to third parties.  *See* § 27280, Cal. Gov't Code; CCP

§§ 880.310(a), 880.350(a), 2934, 2935.    The recording statutes limit such recording

to "real property" interests, allowing the recordation of an "instrument or judgment

affecting the title to or possession of real property."  § 27280, Cal. Gov't Code.

Thus, the statute does not authorize the use of the land records to record transfers of

5

negotiable instruments or loan servicing contract rights.

16.     Even with respect to real property interests, California's recording statute expressly states that recording is not mandatory; it is a permissive tool for those seeking to put subsequent purchasers and others on notice of their real property interests.  Cal. Gov't Code § 27280(a) (2010) ("Any instrument or judgment affecting the title to or possession of real property may be recorded pursuant to this chapter.").  Thus, there is no obligation to record a real property interest in California.  Cal. Gov. Code § 14 (2010) ("'Shall' is mandatory and 'may' is permissive.").

17.     The plain language of the statute is consistent with the purpose of California's recording statute.  "Recordation is a device to establish priority, but has nothing to do with conveying title." *Lawler v. Gleason*, 130 Cal.App.2d 390, 279 P.2d 70 (1955).

## Background on MERS and the MERS® System

18.     When a borrower takes out a home loan, the borrower executes two documents in favor of the lender: (1) a promissory note to repay the loan, and (2) a security interest in property offered as collateral for the loan, typically a mortgage or deed of trust.

19.     The security interest is an interest in real property and it is typically recorded in the land records to provide notice of the security interest to purchasers or others dealing with the property.  The promissory note is a negotiable instrument,

AMENDED COMPLAINT

and originating lenders routinely sell their beneficial interests in a loan (i.e., right to repayment of the loan). The promissory note is not an interest in real property and is not recorded in the land records. There is no statutory requirement under California's adoption of the Uniform Commercial Code for the recordation of a negotiable instrument.

20.    The secondary mortgage market—in which a variety of investors purchase real estate loans from those who originate the loans—is critical to the United States credit and housing markets because the ability of lenders to replenish their credit directly impacts the lenders' willingness to extend credit and the interest rates charged for the risk the lenders assume.

21.    Since the investors in the secondary market often consist of institutional entities or securitized trusts, those entities often contract with servicing companies to handle the loan servicing obligations.

22.    Typically, the investor or its designee would hold the note, with the loan servicing company appearing as the mortgagee or beneficiary in the land records for the purposes of that mortgagee or beneficiary directly receiving notice of legal proceedings against the mortgage property or collateral. If the servicing rights in the loan were sold, an assignment of the mortgage or deed of trust from the "old" servicer to the new servicer was typically recorded so that the identity of the new servicer would appear in the land records and it would receive service of process— on behalf of the owner(s) of the corresponding promissory note—in any quiet title

7

action or other proceedings affecting the priority or value of the security interest. Pursuant to its servicing contract with the investor, the servicer would notify the investor of the pendency of the action.

23.   The process of drafting and recording multiple assignments of lien interests was costly and burdensome, creating needless expense in terms of transaction costs, lawyers' fees and filing fees. Simple economics dictates that these costs were ultimately passed to the consumers—buyers and sellers of real estate.

24.   In addition, multiple assignments of lien interests led to errors and uncertainty in the chain of title because assignments were often missing, incomplete, inaccurate, or misfiled.

25.   MERS was created by the mortgage banking industry to streamline this process.  Every mortgage or deed of trust granted to MERS by the mortgagor or trustor has a unique mortgage identification number.  That deed of trust or mortgage (depending on the state), once executed by the borrower, is recorded in the public land records.

26.   Every lender that becomes a member of the MERS® System signs a MERS® System membership agreement, which includes standard "Rules of Membership" that require the member to "cause 'Mortgage Electronic Registration Systems, Inc.' to appear in the applicable public land records as the Mortgagee of Record as Nominee for the Note Owner and its successors and/or assigns with respect to each mortgage loan that Member registers on the MERS System."

3145043.1

Further, every lender agrees, as part of the Rules of Membership, that MERS as the "Mortgagee of Record … takes, holds, or receives a pledge of an interest or lien against property" and that definition "Mortgagee of Record" expressly "include[s] the named beneficiary under a deed of trust …"

27.     Pursuant to this authority, when a deed of trust or mortgage identifying MERS as the beneficiary or mortgagee is signed by the borrower(s) as part of a mortgage loan "closing" or transaction, that document *expressly grants* a security interest in the subject property to MERS as beneficiary/mortgagee as nominee for the lender and the lender's successors and assigns.  MERS holds legal title to the interests granted in the mortgage (or, in a deed of trust, the trustee holds legal title on behalf of MERS) and MERS generally has the right, as beneficiary and nominee for the current note owner(s) and holder, to exercise any or all of the lender's interests in the property under the deed of trust.

28.     MERS will typically remain the mortgagee or beneficiary of record throughout the life of the loan on behalf of the original lender and its successors and assigns.  MERS also has the right to assign the mortgage or deed of trust and the terms of the security instrument are binding upon MERS' assignee.

29.     When MERS is identified in the public land records as mortgagee or beneficiary, the purchase and sale of the promissory note and of servicing rights between lenders and loan servicing agents are tracked electronically through the

9

MERS® System. The purchase and sale of the promissory note and the servicing rights involves the transfer of non-recordable, private contract rights.

30. This system does not improperly avoid the payment of county recording fees. There is no requirement under California's recording statutes for recordation in public land records to reflect the purchase and sale of the promissory note or the loan servicing rights. And because the security instrument remains with MERS, there is no transfer of the security interest and, therefore, nothing to record. Moreover, even if some record of a transfer could be recorded, recording is permissive not mandatory in California.

31. MERS® System members pay annual membership and transaction fees for the right to use MERS as the mortgagee in public land records and to utilize the MERS® System. MERS® System members *intend* for MERS to appear in the public land records for the purpose of receiving service of process and other forms of notice on behalf of the members and they contract with MERS to hold the security interest on their behalf for this purpose.

32. At this time, approximately 60% of residential mortgages nationwide are registered on the MERS® System. In California, MERS has approximately 3.5 million active loans for which it holds the security instrument as the record beneficiary and for which MERS® System members intend for MERS to receive service of process and other forms of notice on behalf of the members. As beneficiary of record, MERS routinely receives service of process and other forms

10

3145043.1

of notice with regard to mortgaged California properties and takes action to protect the value and priority of the recorded deeds of trust.

33.     MERS and the MERS® System have eliminated the need to scour land records (at least for properties with MERS as the recorded beneficiary) in search of multiple, expressly-executed deed of trust assignments that may have been filed incorrectly or not filed at all.  This has facilitated title companies' ability to efficiently and accurately provide lien releases and title opinions, to the benefit of real estate purchasers.

34.     MERS and the MERS® System thus provides several significant benefits to consumers who buy and sell real estate and member companies, in that they:

      a.     Foster the creation of new credit and reduces the costs of credit. Borrowers have saved billions of dollars in legal and recording fees as a direct result of MERS.

      b.     Provide prompt and accurate information for owners seeking to refinance, avoid foreclosure, or obtain lien releases; and

      c.     Provide more accurate title searches and lowers the cost of title searches and title insurance (the American Land Title Association is a member of the MERS® System).

35.     One of the critical functions MERS provides its membership as lien holder of record is to receive service of legal process for proceedings related to the

11

secured property and to notify the appropriate MERS® System member and take other appropriate action to protect the security interest or collateral.

36.     The MERS® System Rules of Membership, incorporated into MERS' agreements with its members, provide that MERS shall identify any "Urgent Mail" received by MERS with respect to a loan registered on the MERS® System for which MERS serves as mortgagee or beneficiary of record or secured party, and forward that mail to the appropriate member or members "within two (2) business days of receipt at the MERSCORP Holdings mail processing center" in accordance with MERS' procedures (which procedures are also agreed to by the members). "Urgent Mail" includes mail relating to lawsuits.

37.     MERS® System members rely upon MERS to receive these legal notices and advise the servicing entity or current note owner(s) of action that need to be taken in response to the notice.

### California's Quiet Title Procedure

38.     California statutes provide a procedure for those holding title to real property to seek to eliminate claims of those holding interests adverse to the plaintiffs' title.   The statute provides that "an action may be brought under this chapter to establish title against claims to real or personal property."  CCP § 760.020.

39.     A "claim" is defined in the statute as "including a legal or equitable right, title, estate, lien, or interest in property or cloud upon title."  CCP § 760.010.

AMENDED COMPLAINT

3145043.1

The Committee Comments state that the word "claim" is "intended in the broadest [sic] possible sense."

40.    The plaintiff commences the action by filing a verified complaint with the court in the county in which the property is located as well as a notice of the pendency of the action in the office of the county recorder. CCP § 760.050, § 761.010.  The verified complaint must identify "[t]he adverse claims to the title of the plaintiff against which a determination is sought." CCP § 761.020(c).

41.    The statute provides that the "[t]he plaintiff shall name as defendants in the action the persons having adverse claims to the title of the plaintiff against which a determination is sought."  CCP § 762.020.  Under the plain terms of the statute, it is the plaintiff in the quiet title action who must assert title to the property.  Entities, such as MERS, must be named as defendants if they merely assert a claim – an interest – that is adverse to the plaintiff's asserted title.  Process must be served upon all named defendants as in other civil matters.  CCP § 763.010.

42.    The statute further provides that "[a]ny person who has a claim to the property described in the complaint may appear in the proceeding.  Whether or not that person is named as a defendant in the complaint, the person shall appear as a defendant." CCP § 762.050.

43.    The court may not enter judgment by default in quiet title actions, but instead "shall in all cases require evidence of plaintiff's title and hear such evidence

13

3145043.1

1  as may be offered respecting the claims of any of the defendants" and "shall render

2  judgment in accordance with the evidence and the law."  CCP § 764.010.

3

4      44.      The statute expressly provides that the judgment entered in a quiet title

5  action "does not affect a ***claim in the property*** or part thereof of any person who

6  was not a party to the action if ***any*** of the following conditions is satisfied:

7

8          a.      the claim was of record at the time the lis pendens was filed or, if

9                  none was filed, at the time the judgment was recorded.

10

11         b.      the claim was actually known to the plaintiff . . ."

12  CCP § 764.045 (emphasis added).

13                          **The Deed of Trust**

14     45.      In order to fund their purchase of the Property, the Robinsons obtained

15  a loan represented by a promissory note in the amount of $999,950.00 (the "Note").

16

17  The loan was secured against the Property by a deed of trust recorded on February

18  15, 2005 in the Official Records of the Recorder's Office of Los Angeles County as

19

20  instrument number 05 0342544 (the "Deed of Trust").  A copy of the recorded Deed

21  of Trust is attached as Exhibit 1 to this complaint and incorporated herein.

22     46.      The Robinsons executed the Deed of Trust and initialed each page.

23

24  Exhibit 1.

25     47.      The "Lender" identified on the Deed of Trust was United Pacific

26  Mortgage and MERS was identified as a separate corporation acting solely as a

27

28  nominee *for Lender and Lender's successors and assigns*.  The Deed of Trust

                                    14

3145043.1

provides MERS' state of incorporation as well as the address and telephone number of MERS.  Exhibit 1, p. 1.

48.    Immediately after identifying the Lender and MERS, the Deed of Trust provides that "MERS is the beneficiary under this Security Instrument."  Exhibit 1, p. 1.

49.    Under the section entitled "Transfer of Rights In The Property," the Deed of Trust again states that "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS."  Exhibit 1, p. 2.

50.    The Deed of Trust secures the repayment of the Note and "[f]or this purpose," the Deed of Trust grants a power of sale over the Property together with all improvements and interests therein.  Exhibit 1, p. 2-3.  It further provides:

> "Borrower understands and agrees that MERS holds only **legal title to the interests granted by Borrower** in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, **but not limited to,** the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

Exhibit 1, p. 3.  (emphasis added).

51.    The Robinsons agreed in the Deed of Trust that the Note secured thereby "can be sold one or more times without prior notice to Borrower" and that

15

3145043.1

"the covenants and agreements of this Security Instrument shall bind . . . and benefit the successors and assigns of Lender." Exhibit 1, p. 9, 10.

52.     Prior to January 11, 2012, the Note was transferred to U.S. Bank National Association ("U.S. Bank") as Trustee for Harborview 2005-03, a securitized trust. This entity was the owner of the Note at the time of the filing of the Quiet Title Action referenced below and through the date of the Quiet Title Judgment referenced below. At the time of the Quiet Title Action and Quiet Title Judgment, Bank of America was the servicer of the Note for U.S. Bank.

53.     From the inception of the Deed of Trust through the date of the Quiet Title Judgment referenced below, MERS held legal title to the beneficial interests in the Deed of Trust as beneficiary on behalf of and as nominee of the successive owners of the Note, including U.S. Bank.

54.     At all times that they were the owner and holder of the Note, U.S. Bank and Bank of America were members of the MERS® System, pursuant to the MERS® System rules and procedures incorporated into their membership agreements. Those entities remain members of the MERS® System. Those entities **intended** MERS, as the record beneficiary, to be the recipient of service of process and other forms of notice of adverse claims against the mortgaged property.

55.     At all times that U.S. Bank owned the Note, MERS had obligations to provide notices of any actions impacting the Note or Deed of Trust to the current servicer and/or U.S. Bank pursuant to those entities membership agreements with

MERS and MERS' rules and procedures incorporated into those agreements.  U.S. Bank and the current servicers, as MERS® System members, relied upon MERS to provide notice of any actions that might affect the validity of the Deed of Trust.

### The Robinsons' Quiet Title Action

56.     On or about January 11, 2012 the Robinsons filed a verified complaint in the Los Angeles County Superior Court, Robinson v. United Pacific Mortgage, case number PC052281 (the "Quiet Title Action").  A copy of the verified complaint is attached hereto as Exhibit 2 and incorporated herein by this reference.

57.     At the same time, the Robinsons filed a Notice of Lis Pendens with the Recorder's Office of Los Angeles County as instrument number 20120731667.  A copy of the Notice of Lis Pendens is attached hereto as Exhibit 3 and incorporated herein by this reference.

58.     At the time the Robinsons filed the Complaint, the approximate outstanding principal balance of the negative amortization loan due from the Robinsons under the Note was $1,042,433.89.

59.     The sole and express purpose of the Quiet Title Action was to eliminate the Deed of Trust.  Exhibit 2.  The complaint identifies the Deed of Trust, acknowledges that the Robinsons executed the Deed of Trust, and states that this Deed of Trust "forms the basis for [United Pacific's] adverse claim."  Exhibit 2, p. 6.  A title report filed as an exhibit to the Robinsons' complaint identifies the Deed

AMENDED COMPLAINT

3145043.1

of Trust and that it was granted to the named trustee "as trustee for MERS, Inc., as nominee for United Pacific Mortgage." Exhibit 2, Attachment 1.

60.   The Robinsons' complaint expressly pleads that the owner of the Note, via assignment, is U.S. Bank N.A.  Ex., 5 at 4.

61.   The Robinsons' complaint in the Quiet Title Action does not allege that the Note has been paid in full, but nonetheless asserts that:

> "there exist absolutely no Debt, Loan(s) and or Promissory Note(s) or Mortgage relative to, hypothecated, or that which pertains to subject 'PROP' nor is there, in existence any individual or entity who could or might claim to be a 'Holder' of such Debt, Loan(s) and or Promissory Note.   As such no individual or entity could present a claim 'Adverse' or otherwise as to any Rights, Title or Interest in subject Prop."

Exhibit 2, p. 3.  That allegation was and is false and the Robinsons knew that it was false at the time they filed the complaint.

62.   The Robinsons further alleged that "there is no current holder of any valid [deed of trust] 'DOT' and that:

> "None of the alleged Parties hereto claiming to hold or possess any 'DOT' herein can establish that they are entitled to, or possess any Right, Interest, or Beneficial Interest relative to any valid 'DOT' or the right to effectuate any enforcement as against . . . the subject "Prop" itself . . ."

Exhibit 2, p. 6.  That allegation is and was false and the Robinsons knew it was false at the time they filed their quiet title action.

63.   The Robinsons averred, on information and belief, that the Property "is free and clear as to any securitization instrument, and or any security interest . . ."

18

and asked the court to quiet title "exclusively" to them.  Exhibit 2, p. 7.  That allegation is and was false and the Robinsons knew it was false at the time they filed their quiet title action.

64.    The complaint names as defendants in the Quiet Title Action only United Pacific Mortgage and "unknown persons or entities" claiming an interest in the Property.  Exhibit 2.  It does not name MERS as a defendant despite the Robinsons' actual knowledge that MERS claimed an interest in the property adverse to the Robinsons' claim of title and that United Pacific no longer owned the Note.  The Robinsons never supplied any notice to MERS of the pendency of the quiet title action.

65.    The Robinsons requested a default judgment on the complaint and set a hearing thereon.   On information and belief, the Robinsons did not properly notify United Pacific of the hearing on their request for default judgment.  In any event, as the Robinsons knew, United Pacific was not the record beneficiary on the Deed of Trust and no longer had any interest in the Note.  The Robinsons did not provide notice to MERS, the record beneficiary of the deed of trust.

66.    On April 12, 2013, the Robinsons filed a brief and supporting documents in support of their motion for default quiet title judgment, all attached hereto as Exhibit 3 and incorporated by this reference.  The supporting documents included a "Closed Loan Forensic Report" by Legal Forensic Auditors which clearly

3145043.1

states that the Deed of Trust was entered in favor of MERS and identifies U.S. Bank as the owner of the Note as trustee for the securitized trust.

67.     The brief asserts that the Deed of Trust shall be of no force and effect upon payment in full of the Note and that "[t]his paying in full has specifically taken place." Ex. 3, p. 5.  That allegation is and was false and the Robinsons knew it was false at the time they filed their quiet title action.

68.     The Robinsons' brief takes the position that the Deed of Trust was no longer enforceable by United Pacific Mortgage because that entity transferred the Note.  The brief does not directly address the rights of MERS to enforce the Deed of Trust on behalf of the successive note owners.

69.     No party appeared to defend the security interest represented by the Deed of Trust at the default hearing.  As MERS did not have notice of the quiet title action, it did not appear and could not notify U.S. Bank, or its loan servicer, of the proceedings.  Thus, no one was present at the hearing to dispute the false and fraudulent misrepresentations that the Robinsons made.

70.     Based upon the "evidence" submitted by the Robinsons, the state court entered a Judgment for Quiet Title dated April 17, 2013 ("Quiet Title Judgment) quieting title to the Property in the Robinsons as against "United Pacific Mortgage and all persons or entities unknown asserting any legal or equitable right, title, estate, lien or interest in the Property described in this Compliant adverse to Plaintiffs' title, or any cloud upon Plaintiff's title."  The Judgment further ordered

20

3145043.1

that the "Deed of Trust, the subject of instant action (L.A. County Recorder's Instrument # 050342554) is hereby ordered expunged."

71.     The Robinsons recorded the Judgment in the Official Records of the Recorders' Office of Los Angeles County as instrument number 20130621913.  A copy of the Judgment is attached hereto as Exhibit 4 and incorporated herein by this reference.

### The Robinsons Intentionally Failed To Provide Notice To MERS

72.     MERS was the beneficiary on the Deed of Trust at the time it was recorded and MERS remained the record beneficiary of the Deed of Trust at the time the Robinson Action was filed.  The Robinsons had both actual and constructive knowledge of these facts when they filed their Quiet Title Action.

73.     This failure to give notice of the Quiet Title Action was intentional.  It was part of a plan by the Robinsons and their counsel to misuse the quiet title process to eliminate the Deed of Trust on the Property without notice to any interested party.

74.     The Robinsons' counsel advertises that he files quiet title actions so that "your House and or Home becomes foreclosable proof and cannot be touched in order to satisfy any Debt, Loan and or Promissory Note previously secured against it.  You would then be free to either sell it, transfer it, re-encumber it or just possess it free and clear of any lien."  A copy of the relevant excerpt from the Robinsons'

21

AMENDED COMPLAINT

3145043.1

counsel's website is attached hereto as Exhibit 5 and incorporated herein by this reference.

75.     The Legal Forensics Auditors website, which advertises Robinsons' counsel's services, states that he "takes advantage" of the MERS® System to accomplish this result for clients.  This is described in an article entitled "Al West Quiet Title Actions California" on the Legal Forensics Auditors website—the same entity that provided the "report" filed in support of the Robinsons' Quiet Title Action.  The article describes MERS, albeit inaccurately, and acknowledges that MERS serves as the record beneficiary on deeds of trust.  It also acknowledges that the original lenders typically sell the notes shortly after origination leaving MERS as the beneficiary in the land records.   The article explains how the quiet title lawsuit "takes advantage" of this situation by identifying the true owner of the note but filing a quiet title action only against the original lender.

> "GUESS WHAT THIS DOES FOR YOU . . . VOILA. . . it completely nullifies your trust deed. . . . Guess what that means??  It makes your property non-forecl018seable, the property is now free and clear.  You are fee to sell it and stash the cash in your pocket. … You wish to talk to Al?  Call 888-400-[xxxx]"

Relevant excerpts of the LFA website are attached hereto as Exhibit 6 and incorporated herein by this reference.

76.     On that same website that advertises Robinsons' counsel services there is a section entitled, "Quiet Title by Default Oh Yeah You Can," which recommends

AMENDED COMPLAINT

3145043.1

determining if the original lenders in deeds of trust are defunct and then filing suit against those entities to obtain a quiet title judgment by default.  Exhibit 6.

77.     The Robinsons' Quiet Title Action was filed for the express purpose of eliminating the Deed of Trust as a claim adverse to the Robinson's title.  The Robinsons and their counsel were aware of the outstanding indebtedness represented by the Note and asked the state court to adjudicate the validity of MERS' interest as record beneficiary and to eliminate that interest, yet the Robinsons purposely failed to provide notice of this action to MERS or to the current owner of the Note as identified in their own Complaint, instead naming only an entity that they knew no longer had any interest in the Note and Deed of Trust.  The Robinsons are also aware that the money they applied for and borrowed is still unpaid and outstanding.

78.     Had MERS received notice of the Robinson Action, it would have defended the action and alerted the current servicer and/or U.S. Bank about the need to protect the security interest.

79.     Upon learning of the Quiet Title Judgment, MERS contacted the Robinsons' counsel and demanded that the Robinsons stipulate to set it aside.  The Robinsons failed and refused to do so.

80.     As a result of the Quiet Title Judgment, plaintiffs were damaged in that they lost the right to protect MERS's bargained-for security interest in the Property and to protect the interests of the servicer and note-owner, who contracted with MERS to hold the security interest in the land records and to provide notice of

23

3145043.1

actions that might threaten that interest.  MERS and the note owner lost the ability to enforce payment of the promissory note through the collateral for the loan.

81.    In addition to the damage and loss of customer good will associated with this particular transaction, the result in the Quiet Title Action threatens the plaintiffs' overall business model.  The essence of plaintiffs' business is for MERS to serve as holder of the beneficiary or mortgagee (i.e., security) interest under a deed of trust or mortgage for the benefit of the current note owner(s).  Plaintiffs protect the members' interests by receiving legal notices of foreclosures, tax sales or other proceedings impacting the note owner's equitable interests in the mortgaged property held through MERS—the agent expressly appointed for this purpose.

82.    The Quiet Title Judgment purports to deprive the note owner of the right to enforce payment of the Note through recourse to the security instrument. The outstanding debt owned by the Robinsons, previously secured by Property, was rendered unsecured by the Quiet Title Judgment without notice to MERS, the agent expressly appointed by the note owner to hold the security interest in the land records and to notify the note owner of actions that threaten the security interest.   If the Quiet Title Judgment is upheld, the inevitable result is that current investors on mortgage loans identifying MERS as beneficiary will cease using MERS for these purposes, causing plaintiffs to lose significant transaction fees and revenues.

83.    Allowing the Quiet Title Judgment to stand, and sanctioning the Robinsons' plan to eliminate the Deed of Trust in this manner, where MERS is

3145043.1

plainly identified as an interest-holder from the moment the Robinsons closed on

$999,950.00 loan, will open the door to widespread scheme for elimination or

impairment of bargained-for security interests in California without notice to any

party interested in the security instrument, potentially rendering **millions of loans**

**worth billions of dollars** in California unsecured.  This would have devastating

consequences for the mortgage industry and would destroy the market for real estate

throughout the State of California.

84.     Moreover, if MERS System® members return to the inefficient,

inaccurate and unnecessary system of recording assignments to correspond with

changes in private, contractual loan servicing rights, this will increase the costs to

borrowers of mortgage loan transactions and decrease the availability of credit,

further hampering the recovering housing industry in California.

### FIRST CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT FOR VIOLATION OF THE QUIET TITLE STATUTES AND TO SET ASIDE VOID JUDGMENT)

85.     Plaintiffs re-allege and incorporate by reference the allegations of all

prior paragraphs of this complaint as though fully set forth herein.

86.     Code of Civil Procedure sections 760.010 - 764.045, and in particular,

section 762.010 of the Code of Civil Procedure, required the Robinsons to name as

defendants in the Quiet Title Action all persons holding the "claims" adverse to the

Robinson's title sought to be eliminated in that action.  A "claim" is defined in the

25

statute as "including a legal or equitable right, title, estate, lien, **or interest** in property or cloud upon title." CCP § 760.010.

87.     Code of Civil Procedure section 760.010 does not quantify the amount or qualify the type of legal or equitable right, title, estate, lien, or interest in property is necessary to hold a recorded "claim" adverse to the Robinsons.

88.     At the time the Quiet Title Action and associated Notice of Lis Pendens were filed, MERS claimed an interest in the Property as record beneficiary of the Deed of Trust on behalf of and as nominee for the owner of the Note. That claim was recorded in the public land records and gave notice to the Robinsons – and the world – of MERS' claimed interest in the Property. That claimed interest was "against the title" of the Robinsons, plaintiffs in the quiet title action. Under the plain terms of the statute, the Robinsons had to join MERS as a defendant in the Quiet Title Action.

89.     The purpose of the California quiet title action is to provide a mechanism for a plaintiff to seek to eliminate claims that are adverse to the plaintiff's title; the state court in that action is charged with adjudicating the validity of those adverse claims before they are eliminated. Thus the statute requires that anyone with an objective "claim" to the property sought to be eliminated must first be named as a defendant and provided an opportunity to defend its claim. The statute does not allow a plaintiff to subjectively determine the validity of the claim and, on that basis, choose not to name a known claimant, thereby circumventing the

26

3145043.1

judicial process for determining the validity of adverse claims before they are eliminated. The Robinsons did just that, thereby thwarting the purpose and intent of the California statute.

90.     The Quiet Title Judgment entered by the state court violates the California quiet title process and, under Section 764.045, the judgment could not affect MERS' claim to an interest in the Property because that claim was of record and the time the Notice of Lis Pendens was filed and at the time the Quiet Title Judgment was entered and because MERS' claim was actually known to the Robinsons.

91.     As a result of the Quiet Title Judgment, plaintiffs were harmed in the manner described above and plaintiffs have no adequate remedy at law to redress this harm.

92.     The Quiet Title Judgment is void and of no effect because it was obtained in violation of the mandatory provisions of the California statutes.

93.     The Property remains subject to the Deed of Trust interests because the Quiet Title Judgment was obtained without the state court in the Quiet Title Action ever acquiring jurisdiction over MERS or having jurisdiction to quiet title to the Property and expunge the Deed of Trust.

AMENDED COMPLAINT

3145043.1

## SECOND CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT FOR VIOLATION OF DUE PROCESS UNDER THE 5TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 7 OF THE CALIFORNIA CONSTITUTION)

94.     Plaintiffs re-allege and incorporate by reference the allegations of all prior paragraphs of this complaint as though fully set forth herein.

95.     The Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the California Constitution protect against the deprivation of property without due process of law.  The rights protected by these constitutional provisions include the guarantee of procedural due process: parties are entitled to notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of an action that will affect their rights and an opportunity to present their objections to the action.

96.     At the time the Quiet Title Action was filed, and at the time the Quiet Title Judgment was entered, MERS held and claimed the following property rights and interests:

a.     Its interest in the Robinsons' real property as beneficiary of the Deed of Trust in its capacity as nominee for the owner of the Note and its successors and assigns.

b.     Its ability to enforce the lien in the Robinsons' real property by a non-judicial foreclosure on the Property in the event of default.

AMENDED COMPLAINT

3145043.1

c.      Its ability to file suit to foreclose on the Property to recover the

outstanding balance of the loan represented by the Note.

97.     The Supreme Court of the United States has squarely held that all of

these rights and interests are of sufficient importance that due process requires

notice and an opportunity to be heard before a court purports to divest a party of

these rights.

98.     The Quiet Title Action divested MERS of these rights and interests

without due process of law in violation of the United States and California

Constitutions.

99.     If the California quiet title statutes, and in particular Sections 760.010-

764.045 of the Code of Civil Procedure, do not require notice of a pending quiet title

action to those holding plainly recorded security interests in property prior to

elimination of those interests, then the Act violates the due process guarantees of the

United States and California Constitutions.

100.    The State of California established the legislative quiet title process

and that process requires substantial involvement from the state, in particular the

state court.  The Robinsons acted in concert with the state court to obtain clear title

to the Property in violation of MERS' rights, and thus the Quiet Tile Action and

Judgment entered therein constitute state acts.

3145043.1

101.   The violation of MERS' due process rights harmed the plaintiffs as described above and the plaintiffs have no adequate remedy at law to redress this harm.

## THIRD CLAIM FOR RELIEF

## (CANCELLATION OF INSTRUMENTS)

102.   Plaintiffs re-allege and incorporate by reference the allegations of all prior paragraphs of this complaint as though fully set forth herein.

103.   As is set forth above, the Robinsons recorded the Notice of Lis Pendens and Quiet Title Judgment in the Official Records of the Recorder's Office of Los Angeles County.

104.   These documents were recorded improperly for all the reasons set forth above.  The plaintiffs have a reasonable apprehension that if the instruments are left outstanding, the plaintiffs will be harmed as the Property may be transferred, sold, or otherwise encumbered without notice of MERS' claimed interest in the Property. The plaintiffs are entitled to have the instruments cancelled and to monetary damages from the Robinsons.

105.   The recordation of the invalid and void instruments has made it necessary for the plaintiffs to retain attorneys and bring this action to cancel the instruments, and the plaintiffs are entitled to recover from the Robinsons the attorney fees and costs incurred by the plaintiffs in cancelling these instruments.

AMENDED COMPLAINT

3145043.1

# FOURTH CLAIM FOR RELIEF

## (SLANDER OF TITLE)

106.    Plaintiffs re-allege and incorporate by reference the allegations of all prior paragraphs of this complaint as though fully set forth herein.

107.    On April 25, 2013 the Robinsons willfully, maliciously, and without privilege or justification published false statements concerning MERS' rights and title in the Deed of Trust and the Property by recording the void Quiet Title Judgment, which disparaged MERS' title to the security instrument it held.  By recording the void the Judgment, the Robinsons impaired the value of MERS' interest in the Deed of Trust and Property, which caused and continues to cause damages to the plaintiffs.

**WHEREFORE**, the plaintiffs pray for judgment as follows:

1.    A declaratory judgment declaring that the Robinsons failure to name MERS as a defendant in the Quiet Title Action or to otherwise provide it with notice and an opportunity to participate in that proceeding violated the California quiet title statutes, CCP §§ 760.010- 764.045, or in the alternative a declaratory judgment that these provisions of the California statutes are unconstitutional and void;

2.    A declaratory judgment declaring that the Robinsons' failure to provide MERS with notice of the Quiet Title Action and an opportunity to participate therein violated MERS' rights of procedural due process under the 5th and 14th

31

3145043.1

1   Amendments of the United States Constitution and Article I, Section 7 of the

2   California Constitution;

3

4       3.      A declaratory judgment declaring that the Quiet Title Judgment is null

5   and void and ordering that the Robinsons hold the Property subject to the Deed of

6   Trust and indebtedness secured thereby;

7

8       4.      An order requiring the removal and cancellation of the Quiet Title

9   Judgment and Notice of Lis Pendens from the Official Records of the Recorder's

10  Office of Los Angeles County;

11

12      5.      For attorney fees and costs, including an award of costs and reasonable

13  attorneys' fees under 42 U.S.C. § 1988;

14      7.      For such further and other relief as the Court deems proper.

15

16  DATED:  March 3, 2014          SEVERSON & WERSON
                              A Professional Corporation

17

18

19                              By:      */s/ J. Owen Campbell*

20                                      J. Owen Campbell

21                            Attorneys for Plaintiffs

22                            MORTGAGE ELECTRONIC
                          REGISTRATION SYSTEMS, INC. and

23                            MERSCORP HOLDINGS, INC.

24

25

26

27

28

3145043.1                                           AMENDED COMPLAINT

1

**PROOF OF SERVICE**

2

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium,

3

19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

4

On March 3, 2014, I served true copies of the following document(s):

5

**FIRST AMENDED COMPLAINT**

6

on the interested parties in this action as follows:

7

Susan M. Murphy                                        Attorney for Defendants Daniel W. Robinson
Advocate Legal                                           and Darla J. Robinson

8

5455 Wilshire Boulevard, Suite 2119
Los Angeles, CA 90036

9

Telephone:      (323) 692-7499
Facsimile:       (800) 878 7336
E-Mail:          susan@susanmurphylaw.com

10

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the

11

document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case

12

who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

13

14

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

15

16

Executed on March 3, 2014, at Irvine, California.

17

18

*Terri A. Keller*
Terri A. Keller

19

20

21

22

23

24

25

26

27

28

3145043.1

AMENDED COMPLAINT

**PROOF OF SERVICE**

1

2   At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium,
3   19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

4   On March 3, 2014, I served true copies of the following document(s):

5   **FIRST AMENDED COMPLAINT:**

6   on the interested parties in this action as follows:

7   Office of the Attorney General
    300 South Spring Street
8   Los Angeles, CA 90013-1230
    *Pursuant to CRC 8.29*
9

10  **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Severson &
11  Werson's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of
12  business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

13  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of
14  this Court at whose direction the service was made.

15  Executed on March 3, 2014, at Irvine, California.

16

17  *Terri A. Keller*
    Terri A. Keller
18

19

20

21

22

23

24

25

26

27

28

AMENDED COMPLAINT

3145043.1