1  J. OWEN CAMPBELL (State Bar No. 229976)
   joc@severson.com
2  SEVERSON & WERSON
   A Professional Corporation
3  The Atrium
   19100 Von Karman Avenue, Suite 700
4  Irvine, California 92612
   Telephone: (949) 442-7110
5  Facsimile: (949) 442-7118

6  MARY KATE SULLIVAN (State Bar No. 180203)
   SEVERSON & WERSON
7  A Professional Corporation
   One Embarcadero Center, Suite 2600
8  San Francisco, California 94111
   Telephone: (415) 398-3344
9  Facsimile: (415) 956-0439

10 JOANN T. SANDIFER(pro hac vice pending)
   HUSCH BLACKWELL LLP
11 190 Carondelet Plaza, Suite 600
   St. Louis, MO  63105
12 Telephone: (314)480-1500
   Facsimile: (314)480-1505

13

   Attorneys for Plaintiffs
14 MORTGAGE ELECTRONIC
   REGISTRATION SYSTEMS, INC. and
15 MERSCORP HOLDINGS, INC.

16              **UNITED STATES DISTRICT COURT**

17  **CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

18 MORTGAGE ELECTRONIC                 Case No. 2:13-cv-07142 PSG (ASx)
   REGISTRATION SYSTEMS, INC.,         Hon. Philip S. Gutierrez
19 and MERSCORP HOLDINGS, INC.,        Ctrm. 880

20              Plaintiffs,            **NOTICE OF ERRATA RE: FIRST**
                                       **AMENDED COMPLAINT**
21          vs.
                                       Action Filed:    September 26, 2013
22 DANIEL W. ROBINSON and              Trial Date:      None Set
   DARLA J. ROBINSON,
23
                Defendants.
24

25

26       TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS:

27       PLEASE TAKE NOTICE that Plaintiffs respectfully submit this Notice of

28 Errata Re: First Amended Complaint.

Paragraphs 66-67 of the first amended complaint erroneously refer to Exhibit 3 instead of Exhibit 3a.  Attached hereto is Exhibit 3a, the document referenced in paragraphs 66-67 of the first amended complaint, which should have been attached as Exhibit 3a when filed.  The references to "Exhibit 3" in paragraphs 66-67 should be references to "Exhibit 3a."

DATED:  March 4, 2014

SEVERSON & WERSON
A Professional Corporation


By:  _____*/s/ J. Owen Campbell*_____
                    J. Owen Campbell

Attorneys for Plaintiffs MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. and MERSCORP HOLDINGS, INC.

# Exhibit 3a

1

**Law offices of "WEST & ASSOCIATES"**
2   AL WEST Esq   Sbn 134456
   700 N Pacific Coast Hwy #201
3   Redondo Beach, Calif.  90277
   310.374.4141 * 310.372.4137
4   WestandAssociates1@GMail.Com

5   *Attorney for Plaintiff(s)*
6   *(Robinson, Daniel W; Robinson Darla J)*

**FILED**
LOS ANGELES SUPERIOR COURT

APR 1 2 2013

JOHN A. CLARKE, CLERK

BY GREG GILBERTSON, DEPUTY

7

8         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9         **COUNTY OF LOS ANGELES – NORTH VALLEY DISTRICT**

10

11   **ROBINSON, DANIEL W.;**
    **ROBINSON, DARLA J.;**                   )
12                                             )   CASE #   PC 0522__
                                               )
13                          Plaintiff(s),      )
                                               )
14                                             )   **PLAINTIFF'S BRIEF IN SUPPORT**
15   Vs                                        )   **OF COURT JUDGMENT PURSUANT**
                                               )   **TO PROVE-UP EVIDENTIARY**
16                                             )   **HEARINGFOR "QUIET TITLE"**
                                               )
17   **UNITED PACIFIC MORTGAGE;**              )
18   and "all persons or entities unknown,     )
    claiming any legal or equitable right, title, )
19   estate, lien or interest in the property  )
    described in this Complaint adverse to     )
20   Plaintiff's title, or any cloud upon Plaintiff's )   **DATE : 17 Apr '13**
    title thereto";                            )       **TIME : 8 :30 AM**
21   **and Does 1 - 25**                       )       **DIV :  "F47"**
                                               )
22                                             )
                                               )
23                          Defendant(s).      )

24

25   TO THE COURT AND HONORABLE JUDGE "*MELVIN D. SANDVIG*" OF THE SUPERIOR COURT :

26      Comes now the Plaintiff "ROBINSON, DANIEL W.; ROBINSON, DARLA J. " who herein

27   submits instant Brief in advance and in support of Plaintiff's Evidentiary Prove-Up Hearing seeking a

28   \Default Judgment for Quiet Title which is currently set for Hearing on APRIL 17th, 2013 at 8:30 A.M. or

1   as soon thereafter as the matter may be heard in Department "F47" of the above-entitled Court.

2       Instant Brief will be based upon the grounds that Plaintiff's Complaint and pro-offered

3   authority presents more than sufficient Facts ands Law to support a Judgment of "Quiet Title" in favor

4   of Plaintiff and as against all "Named" Defendants and all "Persons Unknown" whose "Entry of

5   Defaults" have previously been entered. Plaintiff's Brief will be supported by the within Points &

6   Authorities, all Exhibits, pleadings, authority, exhibits and papers contained within the Court's file,

7   the Record to Date, and any oral Argument and or documentary evidence and legal authority as may

8   be presented at the hearing of this motion.

9

10

11   DATED: _____APR 09 2013_____

12               By _____
                                 AL WEST Esq

13                        Attorney for Plaintiff
                        DANIEL W. ROBINSON;
                        DARLA J. ROBINSON

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*MEMORANDUM*
*of*
*POINTS AND AUTHORITIES*

I

INTRODUCTION

Plaintiff can simplify instant Argument in support of their request for a Court Judgment of Quiet Title by acknowledging what Plaintiff unequivocally does not dispute in this simple and single Cause of Action for "Quiet Title."

Plaintiff does not seek to challenge, address, rescind, cancel or undo any remaining or existing "DEBT" if there is any (without confirming the validity or existence of such debt) relative to the "Deed of Trust" document which is at issue, or has been brought into dispute by Plaintiff's instant action. Further Plaintiff does not seek any relief in this action concerning any Debt, Loan(s) and or Promissory Note(s).

Secondly; Plaintiff is not herein moving to vacate or set aside a "TRUSTEE'S SALE" of foreclosure, As this has not taken place nor had any Foreclosure proceedings commenced as against Plaintiff as of the time of the filing of instant action.

Thirdly; The "*TENDER RULE*", does not apply, as there exists no California Authority requiring any "Tender", or offer thereof, in the absence of any challenge to the relative "Debt", "Foreclosure Proceedings" and or "Trustee's Sale". Tender in California has only been required in these given fact scenarios, not the alleged fact pattern presented in Plaintiff's sole Cause of Action, or claim for "Quiet title".

Lastly, although subject Debt, Loan and or Promissory Note, may or may not have been "Securitized", whether or not it has, is not the basis upon which Plaintiff seeks to Quiet Title. The mere "SECURITIZATION" in and of itself, of subject Debt, Loan(s) or Promissory Note(s), is not what Plaintiff or Plaintiff's Cause of Action relies upon as Factual or Legal support for Plaintiff's claim for Quiet Title.

## II
## BRIEF STATEMENT OF FACTS/CASE

Plaintiff purchased and or took title to subject Property on 1/7/91 by way of a "Grant Deed". Without confirming the validity or existence thereof, as to any relative Debt, throughout instant Brief, it is alleged that Plaintiff on or about 2/07/05 executed a Debt Instrument, Loan document and or Promissory Note, as well as a document entitled "Deed of Trust" relative to the Property Plaintiff took title to. This was executed for and in the name of "UNITED PACIFIC MORTGAGE" (Plaintiff's First Named Defendant) see Ex "1" (Deed of Trust). As the holder of said Deed of Trust & Subsequent to the execution of this "Deed of Trust" this entity SOLD, ASSIGNED and or TRANSFERRED the relative Debt, Loan and or Promissory Note to another entity or individual (see Ex "2" Securitization Audit specifically Pg "7"). Subsequent to this initial selling, assigning and or transferring of the relative Debt, Loan and or Promissory Note, there were numerous other sales, assignments and or transfers of this same and identical relative Debt, Loan and or Promissory Note as indicated within this same Ex "2" and at this same page reference. However there was never any concurrent assignment, or assignments, of subject Deed of Trust on behalf of the initial Assignor of the Note "UNITED PACIFIC MORTGAGE" relative to either the initial or subsequent Selling, Assigning or Transferring of the Debt, Loan or Promissory Note as required by California Law as referenced below. Subject Deed of Trust in the name of the Assignor entity "UNITED PACIFIC MORTGAGE" remained on Title, having never been Reconveyed or Assigned whatsoever, thereby subsequently resulting in having no force and effect specifically as to " UNITED PACIFIC MORTGAGE" which left remaining a resulting "Invalid", "Null" and "Void" Deed of Trust as to this Assignor of the Note entity "UNITED PACIFIC MORTGAGE".

**III**
**ARGUMENT IN SUPPORT OF "QUIET TITLE"**

Plaintiff would first begin by explaining that Plaintiff's claim and sole Cause of Action for "Quiet Title" is based or supported as alleged and plead on three (3) distinct and specific theories of California Law. The First: is relative to the issue and or claim that there was a <u>Severance, Bifurcation</u> or <u>Separation</u> that had occurred and was effectuated as to the Debt, Loan or Promissory Note <u>from</u> subject Deed of Trust by, for, and on behalf of **"UNITED PACIFIC MORTGAGE"** (Plaintiff's First Named Defendant). This was a result of the <u>Selling</u>, <u>Assigning</u> and or <u>Transferring</u> of the <u>Debt</u>, <u>Loan</u> and or <u>Promissory Note</u> without a corresponding Assignment of the relative <u>Deed of Trust</u>. The Second: In the alternative, is that the "Terms" and or "Provisions" of the Deed of Trust had been fully satisfied. Each and every Deed of Trust, including subject Deed of Trust, contains and possesses the provision and or clause that states "upon payment of all sums secured by this Security Instrument", then subject Deed of Trust shall no longer remain in full force and effect, and or a "Reconveyance" shall be performed by the holder of said Deed of Trust". This paying in full has specifically taken place at the time of the Selling, Assigning or Transferring had occurred relative to the holder of subject Deed of Trust which is clearly **"UNITED PACIFIC MORTGAGE"** (Plaintiff's First Named Defendant). The Third: Pooling and Servicing Non-compliance.

**1) SEVERANCE AND OR BIFURCATION ALLEGATION :**

"<u>California Civil Code Sec "2936"</u> specifically declares that "The assignment of a <u>DEBT</u> secured by a mortgage carries with it the <u>security</u>" Additionally in the one hundred year old well established US Supreme Court case of "<u>Carpenter vs Longan</u>" @ 83 U.S. 271 (1872) it was held that "a Note and Mortgage are <u>inseparable</u>; the former as essential, the latter as an incident. An assignment of the Note carries the Mortgage with it". In "<u>Lewis vs Booth</u>" 3 Cal 2nd 347 (1935) it was held "A lien is but an incident of the debt secured, and cannot be transferred apart therefrom." "<u>Domarad vs Fisher & Burke, Inc.</u>" 270 Cal App 2nd 547 (1969) "A Deed of Trust" has no assignable quality independent of the debt, it may not be assigned or transferred apart from the debt, and an attempt to assign the Deed

of Trust without a transfer of the debt, is without effect.  "Cockerell vs Title Ins. & Trust Co." 42 Cal 2nd

284, 291; "Union Supply Co vs Morris" 220 Cal 331, 338-339; "Savings & Loan Soc. Vs McKoon" 120 Cal

179; "Hyde vs Mangan" 88 Cal 319, 327; that a Deed of Trust is inseparable from the debt and always

abides with the debt, and it has no market or ascertainable value, apart from the obligation it secures,

"Buck vs Superior Court" 232 Cal App 2nd 153,158; "Nagle vs Macy" 9 Cal 426, 428; "Polhemus vs Trainer"  30 Cal 685, 688;

"Adler vs Sargent" 1098 Cal 42, 48; "Johnson vs Razy" 181 Cal 342, 344; "Kelly vs Upshaw" 39 Cal 2nd

179, 191-192.

In effect when the Debt, Loan and or Promissory Note was Sold, Assigned and or Transferred

by "UNITED PACIFIC MORTGAGE" (Plaintiff's First Named Defendant) as alleged and specifically

stated in the relative paragraph entitled "Assigned; Transferred, Sold, any and all Debt; Loan;

Promissory Note" of subject Complaint, then pursuant to California Law, any and all security and or

secured interest was by Operation of Law accordingly assigned and transferred along with the Debt,

Loan and or Promissory Note. As such any and all interests possessed by the Assignor as in this case

"UNITED PACIFIC MORTGAGE" (Plaintiff's First Named Defendant) then became "Invalid", "Null"

and "Void". More specifically as the above authority holds subject Deed of Trust "had no market or

ascertainable value" nor "does it have any assignable quality". Furthermore the remaining "Deed of

Trust", or any attempt to assign subject "Deed of Trust", is without any effect as this Deed of Trust has

or had legally become "Invalid, "Null" and "Void", as to this specific entity or individual.

To Reiterate, once the Debt, Loan and or Promissory Note was sold, assigned and or

transferred, or any time thereafter by "UNITED PACIFIC MORTGAGE" (Plaintiff's First Named

Defendant) they, at that very moment lost any and all interests that might have initially existed from

and arose out of subject Deed of Trust, as well as to any and all interests in Plaintiff's Property.

Plaintiff does assert, in essence, that subject Deed of Trust held at one time by "UNITED

PACIFIC MORTGAGE" (Plaintiff's First Named Defendant) the Assignor of the Note and entity to the

relative Debt, Loan and or Promissory Note, no longer held a valid lien as against Plaintiff's Property

once the relative Debt, Loan and or Promissory Note had been Sold, Assigned and or Transferred

without a corresponding Assignment of subject Deed of Trust.

- 6 -

*PLAINTIFF'S BRIEF IN SUPPORT OF PROVE-UP COURT JUDGMENT*

**2) SATISFACTION OF THE TERMS AND PROVISIONS OF THE DEED OF TRUST :**

As is specifically stated and or enumerated within subject Deed of Trust (paragraph 23), one of the Terms and Provisions contained therein is that subject Deed of Trust shall be "Reconveyed" and or "This Deed of Trust" is in full force and effect until "all sums have been paid in full". By the mere fact that that the Debt, Loan and or Promissory Note had in fact been "Sold" <u>for full value plus</u>, then this provision or mandate would rendered subject Deed of Trust as having been fully satisfied, and would no longer be a valid lien as against Plaintiff's Property.

**3) NON-COMPLIANCE WITH THE SERVICING & POOLING AGREEMENT :**

Every Securitization Trust and or Pool, similar to the one at hand, absolutely mandates and requires by definition that each and every Loan Document, Debt Instrument, Security Instrument, Security, Mortgage and or Deeds of Trust etc., must be Sold, Assigned and or Transferred into the relative Trust or Pool prior to its <u>Closing</u> and or <u>Settlement</u> date. In this case it must have been done as of April of 2005. This was never done, as there was never any selling, assigning or transferring of subject Deed of Trust into the Trust or Pool at hand. Although the Security Interest or Security in subject property may have been, by operation of law, pursuant to Civil Code Sec 2936 and all the respective authority stated herein, the Law and facts herein clearly evidences the absence of any Right, Title or Interest on the part of "UNITED PACIFIC MORTGAGE" (Plaintiff's First Named Defendant) who were the initial and originating Party to the alleged Debt, Loan and or Promissory Note as well as to subject Deed of Trust.

Clearly put Plaintiff will concede that they themselves are not a Party or in privity of contract to the relative Securitization Trust or Pool as this is an "In Persona," issue not germane to a Quiet Title Action. However close scrutiny of the "Pooling & Servicing Agreement" clearly evidences the <u>Closing date</u> of this Trust or Pool as being in April of 2005. Once again the specific terms and provisions of the P&S Agreement clearly dictates as one of the initial mandates or requirements, is that all relative Debt or Security Instruments be transferred and or deposited into subject Trust and or Pool <u>prior</u> to the Closing Date. The mere action of non-compliance or violation of the P&S agreement and the applicable Law evidences that "UNITED PACIFIC MORTGAGE" (Plaintiff's First Named Defendant)

1   cannot in any conceivable way attempt to assert an "Adverse Claim" when

2   clearly they do not in fact possess any.

3                                    V

4                               CONCLUSION

5       Plaintiff's Cause of Action sounding in "Quiet Title" established by and through the supporting

6   authority  can be clearly established, and completely supported collectively by all of the alleged facts

7   and legal authority presented within Plaintiff's Complaint, documents and evidence presented, as well

8   as the testimony of the witnesses which will be fully provided to the Court in order to establish a claim

9   for Quiet Title on the, three (3) grounds or basis presented. Authority presented within instant

10  Memorandum of Points and Authorities unequivocally sets forth the Legal basis for Plaintiff's sole

11  Cause of Action sounding in "Quiet Title". The Severance and or Bifurcation of the Debt, Loan and or

12  Promissory Note from subject Deed of Trust without a corresponding assignment of the Deed of Trust

13  itself, which by California Law, are inseparable renders the stale or remaining un-assigned Deed of

14  Trust virtually Abandoned. The interest which were initially established by way of subject Deed of

15  Trust" became "Invalid", Null" and "Void".

16      By Contrast, as established by the Authorities presented herein, and out of the Laws of the

17  State of California, subject Deed of Trust, in the name of "UNITED PACIFIC MORTGAGE"  (Plaintiff's

18  First Named Defendant) became "Invalid", "Null", and "Void" once the relative Debt, Loan

19  and or Promissory Note had been Sold, Assigned and or Transferred. The attempt by any of the

20  "Named" Defendants or "Persons Unknown" to claim that a subsequent assignment of subject

21  "Invalid", "Null" and "Void" Deed of Trust somehow survived and subsequently provided them with

22  new found sense of a security interest in Plaintiff's Property would be wholeheartedly disingenuous,

23  false and a complete sham. This would also be an attempt to pull the wool over the eyes of the Courts

24  by arguing misplaced facts, Legal Authority as well as a presenting a ball of confusion as to the facts,

25  circumstances and issues at hand.

26      WHEREFORE; Plaintiff respectfully requests this Court uphold California Law in its entirety

27  and apply such authority to the specific facts which have been established herein, and render a

28

                                      - 8 -

1  Judgment for "Quiet Title" in favor of Plaintiff as against "UNITED PACIFIC MORTGAGE"  (Plaintiff's

2  First Named Defendant) "all Persons Unknown" now before the Court.

3

4  Dated : _____APR 09 2013_____                    "Respectfully Submitted"

5

6                                                      LAW OFFICES of "WEST & ASSOCIATES"

7                                                      By : _____

8                                                          AL WEST ESQ
                                                           Attorney for Plaintiff
9                                                          ROBINSON, DANIEL W.;
                                                           ROBINSON, DARLA J.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2/15/05

05 0342544

RECORDED AT THE REQUEST OF
CHICAGO TITLE COMPANY
Recording Requested By:
UNITED PACIFIC MORTGAGE

And After Recording Return To:
UNITED PACIFIC MORTGAGE
21600 OXNARD STREET, #1900
WOODLAND HILLS, CALIFORNIA 91367
Loan Number: 1110019608

460 22172 · HH     [Space Above This Line For Recording Data]

## DEED OF TRUST

MIN 100134911100196083

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated FEBRUARY 7, 2005 , together with all Riders to this document.
(B) "Borrower" is DANIEL W. ROBINSON and DARLA J. ROBINSON, HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the trustor under this Security Instrument
(C) "Lender" is UNITED PACIFIC MORTGAGE

Lender is a GENERAL PARTNERSHIP                                    organized
and existing under the laws of CALIFORNIA
Lender's address is 21600 OXNARD STREET, #1900, WOODLAND HILLS,
CALIFORNIA 91367

(D) "Trustee" is CHICAGO TITLE
535 NORTH BRAND BLVD, GLENDALE, CALIFORNIA 91203

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated FEBRUARY 7, 2005
The Note states that Borrower owes Lender NINE HUNDRED NINETY-NINE THOUSAND NINE HUNDRED FIFTY AND 00/100          Dollars (U.S. $ 999,950.00      ) plus interest.

Borrower Initials _DWR_ _dj_

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS     DocMagic eForms 800-649-1362
Form 3005 01/01                              Page 1 of 14                        www.docmagic.com



Telephone: (540) 341-1481
www.legalforensicauditors.com

# Closed Loan Forensic Loan
# Securitization Legal Chain of Title and Analysis Report

## Prepared
## For:

### DANIEL W. ROBINSON
### DARLA J. ROBINSON
19127 ROMAR STREET
LOS ANGELES, CALIFORNIA 91324

Mortgage

**$999,950.00**

First Mortgage
PAY OPTION ARM
07/01/2011



Telephone: (540) 341-1481
www.legalforensicauditors.com

# Table of Contents

Securitization Analysis ............................................................................... 3

    Transaction Participants ......................................................................... 4

    Summary of Transaction Parties ............................................................. 5

    Notes and Comments .............................................................................. 6

    Insurance and Cross-Collateralization ..................................................... 9

    Mortgage Origination Compliance ..........................................................10

Chain of Title Analysis ..............................................................................11

    Notes and Comments .............................................................................12

    Mortgage Deed of Trust .........................................................................14

    MERS as Beneficiary .............................................................................15

    Mortgage Note V. Deed of Trust .............................................................16

    Trustee/Substitute Trustee Pending Issues .............................................17

    Disclosed Risk and Adverse Result of Court Actions ...............................21

About *LFA Securitization Legal Chain of Title and Analysis Report* ...............24

Exhibits ...................................................................................................26

    SEC Filed Documentation Obtained and Examined ..................................27

    Form 15-15D Suspension of Duty to Report .............................................29

    MERS Servicer ID Search Result ............................................................32

    Property Search Result ...........................................................................33

    Pooling and Servicing Agreement ...........................................................39

    424B5-Prospectus .................................................................................39

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

## SECURITIZATION ANALYSIS

Loan No. 1110019608 Ownership Research
MERS Servicer ID: 1001349-1110019608-3
Parcel ID:  2729-027-042
19127 Romar Street
Los Angeles, California 91324

Daniel W. Robinson and Darla J. Robinson
Vs.
U.S. Bank National Association

DISCLAIMER:  No part of this Report shall be construed as legal advice with respect to the subject transaction.  The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client.  Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report.  The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited.  Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

## TRANSACTION PARTICIPANTS

**_Issuing Entity_**
MASTR Asset Backed Securities Trust 2005-HE1 CIK#: 0001325405

**_Title of Securities_**
Mastr Asset Backed Securities Trust 2005-He1, Mortgage Pass-Through Certificates Series 2005-He1

**_Originator_**
United Pacific Mortgage

**_Seller_**
Ubs Real Estate Securities Inc

**_Depositor_**
Mortgage Asset Securitization Transactions, Inc

**_Master Servicer_**
Wells Fargo Bank, N.A.

**_Servicer_**
Bac Home Loans Servicing, Lp        Simi Valley, CA        Phone:(800) 669-6607

**_Trustee_**
U.S. Bank National Association

**_Cut-Off Date_**
April 1, 2005

**_Closing Date_**
On Or About April 29, 2005

DISCLAIMER: No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in the Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



**lfa | legal forensic auditors**

Telephone: (540) 341-1481
www.legalforensicauditors.com

## <u>SUMMARY OF TRANSACTION PARTIES</u>



**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by <u>Forensic Mortgage Auditors, Inc. for use by its affiliates.</u>



Telephone: (540) 341-1481
www.legalforensicauditors.com

## NOTES AND COMMENTS

**NOTE:** *The Borrower's loan was funded in Los Angeles County in the State of California. In California, lenders may foreclose on deeds of trusts using a non-judicial foreclosure process. The deed of trust is the instrument securing the mortgage loan.*

*In the Securitization Analysis section of our report the paperwork searched and referenced uses the words "note", "mortgage", and "mortgage note" to refer to the instrument securing the mortgage loan. Since the Borrower's loan was funded in Los Angeles County, California either the deed of trust or mortgage may be used as the instrument securing the mortgage loan. The only concern for the transaction parties is that the instrument securing the mortgage loan be properly endorsed and transferred.*

*When we refer to the securing instrument in the Chain of Title Analysis section of our report, we will clearly state whether the mortgage or the deed of trust was searched and referenced.*

The above referenced loan has been traced as an asset belonging to a number of financial institutions. In a securitized mortgage loan purchase, there is no proof of ownership without the original note indicating that a clear chain of assignments took place and lien positions were properly perfected.

In a non-securitized loan, also called a traditional portfolio mortgage, the original mortgage is held as an investment by the lender and serviced throughout its life either by the same lender or a loan servicer who performs day to day loan administration for the original lender. This loan, however, is a securitized loan.

Securitization is the process of taking illiquid assets, in this case individual mortgages, and placing them into a "mortgage pool." It involves a series of independent "true sales" and financial engineering by a number of different parties in order to transform the pooled mortgages into a security owned by investors and represented by a Trustee.

The "true sales" are at the heart of securitization to ensure that the investors have the unequivocal legal right of ownership to the mortgage assets and receivables in the trust. The financial engineering begins with the mortgages in the pool being grouped into classes based upon the types of mortgages and the borrowers' credit. The borrowers' credit is then enhanced and rated by credit ratings agencies such as S&P and Moody's in a process called credit enhancement. These credit enhanced mortgages are repackaged and then sold to the investors. The investors then purchase insurance in the event that the mortgage defaults. Investors evidence their ownership in the mortgages through certificates (notes), or debt agreements (bonds), or rights to ownership (derivatives). Through the true sales process, the investors' ownership is protected from potential bankruptcy or claims made against the originating lender or interim owners of the mortgage(s).

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by <u>Forensic Mortgage Auditors, Inc. for use by its affiliates.</u>



**legal forensic auditors**

Telephone: (540) 341-1481
www.legalforensicauditors.com

Our securitized loan audit services are intended to transform the complicated financial engineering of the securitized loan into a simple report and analysis of facts. Our expert(s) trace the note and deed of trust from the originating lender up the line of sales to the trust and investor ownership. Our evidentiary findings may reveal defects in the real estate title that is being claimed by the party(s) seeking to foreclose. Other undisputable material defects may also be presented. Using this evidentiary findings report, attorney(s) can then analyze these facts and draw their own legal opinions.

In a securitized mortgage loan purchase, there is no proof without the original Note that a proper chain of assignments took place and that the lien positions were properly perfected.  Once the original Note is produced, it and the mortgage loan must comport, in proper conveyance, to the requirements of Article II of this Pooling and Servicing Agreement (see section, Exhibits: Pooling and Servicing Agreement). Specifically, the original Note must be endorsed in blank showing a complete chain of endorsements from the originator to the depositor.   ARTICLE II-CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES, SECTION 2.01.Conveyance of the Mortgage Loans from the Pooling and Servicing Agreement, states:

> *(i) the original Mortgage Note, endorsed in blank or in the  following form: "Pay to the order of U.S. Bank National Association, as Trustee under the applicable agreement, without recourse," with all prior and intervening endorsements showing a complete chain of endorsement from the originator to the Person so endorsing to the Trustee;*

Therefore, in order for the mortgage loan and Note to have been properly conveyed into the Pool, the Note would have had to have been properly endorsed by all intervening parties from the originator, **United Pacific Mortgage**, to the Trustee, **U.S. Bank National Association**.

At some point therein, the loan was sold to **Ubs Real Estate Securities, Inc**, the seller listed on the Pooling and Servicing Agreement.  Thereafter, that "seller" then sold the loan to the depositor **Mortgage Asset Securitization Transactions, Inc**.

**Mortgage Asset Securitization Transactions, Inc** then sold the loan to the Issuing Entity, **MASTR Asset Backed Securities Trust 2005-HE1** CIK#: 0001325405.  The Issuing Entity, **MASTR Asset Backed Securities Trust 2005-HE1** CIK#: 0001325405 then sold the loan to the Trustee, **U.S. Bank National Association**, for the benefit of the Certificate holders.

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction.  The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client.  Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report.  The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited.  Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

A complete chain of endorsements must exist, each being sufficient to transfer all rights, title, and interest of the party endorsing the Note. The monies involved are also laid bare: The loan originator was paid upon selling the paper to an investment bank; the investment bank got paid upon pooling the loan with thousands of other loans and selling the shares to investors; and, the servicer has been paid upon taking investors' payments and now processing a foreclosure.

The Note ought to reflect a minimum of three (3) endorsements since **United Pacific Mortgage** did not sell the loan directly to the trustee, **U.S. Bank National Association**.  It does not, and a note with no endorsements or just one endorsement in blank as is this case fails to meet the minimum requirements of the Pooling and Servicing Agreement.

The steps in this process are graphically noted in the flow chart in the previous section Summary of Transaction Parties.

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction.  The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client.  Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited.  Compilation and analysis by <u>Forensic Mortgage Auditors, Inc. for use by its affiliates.</u>



**legal forensic auditors**

Telephone: (540) 341-1481
www.legalforensicauditors.com

## INSURANCES AND CROSS-COLLATERALIZATION

The Prospectus Supplement outlines several means of assuring prospective purchasers of the certificates that the risk of purchasing these certificates is mitigated through the specific provisions of each of these 'insurances'. Notably, they are categorized as "insurance" by **Ubs Real Estate Securities Inc** the seller of the Prospectus. These types of insurance are used for the purpose of maintaining timely payments or providing additional protection against losses on the assets, for paying administrative expenses, or establishing a minimum reinvestment rate on the payments made.

Cross-Collateralization is one such insurance. Cross-Collateralization occurs when payments made on the mortgage loans in the loan group are used to make distributions on the classes of senior certificates that are unrelated to that original group.

The Prospectus Supplement also notates the use of *Primary Mortgage Insurance Policies*. Primary Mortgage Insurance policies reimburse certain losses sustained by reason of defaults in payments by borrowers. A *Liquidated Mortgage Loan* is a defaulted mortgage loan about which the master servicer has determined that all recoverable liquidation and insurance proceeds have been received.

Thus, had Borrowers defaulted on the mortgage loan, one or more of these "insurances" would have been used to satisfy all debts to the certificate holders. No debt would be owed to the certificate holders causing them to initiate a lawsuit against Borrowers.

If any legal action commenced, it would be initiated by the insurers seeking payment from Borrowers; an action that would not involve foreclosure. A foreclosure action occurs for the purpose of securing the property to satisfy the note, and not any other monies owed.

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

## MORTGAGE ORIGINATION COMPLIANCE

Although this report deals primarily with what happens to a mortgage loan after it is originated and funded, issues with how the mortgage was originated are related to the servicing and subsequent transfers of the mortgage note.

Rarely is the Borrower made aware of how their mortgage is being funded and sold. A complete chain of endorsements must exist, each being sufficient to transfer all rights, title, and interest of the party endorsing the Note. The monies involved are also laid bare: The loan originator was paid upon selling the paper to an investment bank; the investment bank got paid upon pooling the loan with thousands of other loans and selling the shares to investors; and, the servicer has been paid upon taking investors' payments and now processing a foreclosure.

It is this chain of endorsements that fueled the origination of the mortgage note and many rules and regulations were put in place to protect borrowers from abuse. An *LFA MORTGAGE COMPLIANCE ANALYSIS REPORT* is useful in verifying that the origination of the mortgage loan was carried out correctly. Any abuse or violations found in the origination process of the note can be a powerful tool in any negotiation or litigation. Some of the Federal and State Laws and Regulations compliance checked for in the origination process of a mortgage note are as follows:

√ Home Ownership & Equity Protection Act   (HOEPA)
√ Truth-in-Lending Act   (TILA)
√ Real Estate Settlement Procedures Act   (RESPA)
√ Equal Credit Opportunity Act   (ECOA)
√ Gramm, Leach, Bliley Act   (GLB)
√ Fair & Accurate Credit Transactions Act   (FACTA)
√ Underwriting Issues

The Borrowers may have been victims of unlawful origination practices. The subsequent process of securitization underlined in this report, show that various parties may have been the beneficiaries of such practices. The Borrowers' Note reflects a teaser payment rate of **1.0000%** for a **PAY OPTION ARM** Note with a Maximum Rate Cap of 9.9500%. Borrowers' loan allows for 115% Negative Amortization from the original loan balance. Any **yield spread premium (YSP)** or **servicing release premium (SRP)** paid to the originator, **UNITED PACIFIC MORTGAGE**, for originating the loan for the trust was not disclosed to the Borrowers. Cumulatively, these indicators could point to a significant likelihood that Borrower's loan was a predatory loan. There has been no documentation provided to indicate that **U.S. BANK NATIONAL ASSOCIATION** has made any proactive steps whatsoever to modify Borrowers' loan. **FURTHER RESEARCH INTO BORROWERS' MORTGAGE ORIGINATION PROCESS IS REQUIRED.**

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

## <u>CHAIN OF TITLE ANALYSIS</u>

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by <u>Forensic Mortgage Auditors, Inc.</u> for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

## NOTES AND COMMENTS

**NOTE:** *The Borrower's loan was funded in **Los Angeles County** in the State of California.  In California, lenders may foreclose on deeds of trusts using a non-judicial foreclosure process. The deed of trust is the instrument securing the mortgage loan.*

The **Deed of Trust** evaluated in this section was found filed in the **Los Angeles County, California Land Records** (see section, Exhibits: Property Search Results).  This is the County of Record for this property.  However, like most securities investments, the SEC requires that asset-backed and mortgage-backed security investment products be registered, unless sold as private placements.  Ideally, a record of each element of a given asset pool, in this case, the underlying loans would be found in the paperwork filed with the SEC.

Our search of SEC filed documentation for **MASTR Asset Backed Securities Trust 2005-HE1** CIK#: 0001325405 in the Edgar Database, reveals no filing of the note with the appropriate endorsements (see section, Exhibits: SEC Filed Documentation Obtained and Examined).  However, once the original Note is produced, it and the mortgage loan must comport, in proper conveyance, to the requirements of the Pooling and Servicing Agreement (see section, Exhibits: Pooling and Servicing Agreement).

The Pooling and Servicing Agreement dated **April 1, 2005**, requires that all prior and intervening endorsements show a complete chain of endorsement from the originator to the Person so endorsing to the Trustee.  We found no recordation of the appropriate endorsements at the county level.  The Deed of Trust and paperwork filed in the **Los Angeles County, California Land Records Search**, is not compliant with the requirement in the Pooling and Servicing Agreement.  An endorsement in blank does not satisfy those requirements.  In addition, the title to any promissory note or debt secured by a mortgage is conclusively presumed to be vested in the person holding the record title to the mortgage.  The Notice of Intent to Foreclose, and the Affidavit Certifying Ownership of Debt Instrument issued by any Lenders cannot promulgate the secured party as **U.S. Bank National Association**, as Trustee for **MASTR Asset Backed Securities Trust 2005-HE1** CIK#: 0001325405 without the proper endorsements.

**Due to the history of Borrowers' loan, we believe that nothing short of producing the original note will suffice to accurately clarify ownership of note and proper legal standing.**

Since the Borrowers' loan has been sold into a securitized trust, it is consistent with the Pooling and Servicing Agreement that one of the many forms of insurances (see previous section, Insurances and Cross-Collateralization) or credit enhancements would have been used to satisfy the loan. The Prospectus states that a Pool Insurance company has issued a mortgage pool insurance policy for **Mastr Asset Backed Securities Trust 2005-He1, Mortgage Pass-Through Certificates Series 2005-He1** to cover losses on the mortgage loans. If the "Pool Insurance Company" has paid the Lender, then the Borrowers could not be in default to any "lender."

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

A review of the **Deed of Trust** includes a copy of the **PAY OPTION ARM** Note. An examination of that Note, however, reveals it contains no dated endorsements. Section 131(g) of the Truth in Lending Act (15 USC § 1641) (TILA) must apply. This section was amended on May 19, 2009, to include a new provision requiring the assignee of a mortgage loan to notify a consumer borrower that the loan has been transferred. Section 131(g) requires the new owner or assignee of a mortgage loan must notify the borrower in writing within 30 days after the mortgage loan is sold or otherwise transferred. This notification must include the following:

1. The assignee's identity, address and phone number;
2. The date of transfer;
3. Contact information for an agent or party having authority to act on behalf of the assignee;
4. The location of the place where transfer of ownership of the debt is recorded; and,
5. Any other relevant information regarding the assignee.

An Assignee that violates this notice requirement is subject to civil penalties under Section 130(a) of TILA. Further, effective July 31, 2009, the maximum penalty increased from $2000.00 to $4000.00 that an individual consumer may recover for each TILA violation in connection with a closed-end loan secured by real property or a dwelling increased. Additionally, TILA's Section 108 provides that "a violation of any requirement imposed under [TILA] shall be deemed a violation of a requirement imposed under [the FTC Act]," regardless of whether a person committing a violation otherwise comes under the FTC's jurisdiction.

For willful or knowing violations, a person may be fined up to $5,000 and/or imprisoned for up to one year, in accordance with Section 112 of TILA. The auditors of this report note that while mortgage brokers or servicers may not be creditors, injured assignees would be given opportunity to extract penalties from secured parties in mortgages since secured parties are mortgagees. Such extraction could occur without injured persons' enlisting of the FTC according to the World Wide Web publication by TILA and the FTC of these provisions.

DISCLAIMER: No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

## MORTGAGE DEED OF TRUST

The **Deed of Trust**, dated **February 7, 2005**, names the Trustee as **CHICAGO TITLE**.  The institution of foreclosure action under a *power of sale* and/or an *assent to a decree* must be brought by any individual authorized to exercise power of sale in the deed of trust, or a successor trustee. The power of sale itself as defined in Borrowers' Deed of Trust dated **February 7, 2005**, authorizes the trustee to issue notice of sale, sell off property, postpone the property sale, deliver to the purchaser the deed conveying the property, and apply the proceeds of the sale. No language was found to indicate that the power to resolve controversies over debts owed by the secured creditor to the debtor derives from the power of sale.

In this case, that would include the authorization of a successor trustee to litigate against Borrowers in order to defend the Lender successor trustee(s)' right to foreclose. Notably, no language is found in the Deed of Trust indicating that the Substitute Trustees may be multiple in number and that each may "exercise all of the powers" as any Lender successor trustees my claim.  That power, self-granted or not, renders unnecessary the existence of more than one trustee or successor trustee in any situation, and it underscores the peculiar pattern in foreclosure actions of the continuous replacement of qualified trustees by successor trustees who also act as practicing attorneys.

Finally, should Lenders be unable to validate the trustee named in the Deed of Trust, and should seek removal of that trustee, procedures must be followed as set forth in the lien instrument.

The secured parties holding not less than 25% of the beneficial interest under the deed of trust may file a motion for the removal of the trustee and appointment of a new trustee. Such a motion shall be supported by an affidavit and shall state the facts alleged to constitute grounds for removal.  The Lenders must file a Motion for the Removal and Appointment of a New Trustee. If not, the Appointment of Substitute Trustees filed by Lenders as authorized by Borrowers' Deed of Trust is invalid and improperly filed in this case.

DISCLAIMER:  No part of this Report shall be construed as legal advice with respect to the subject transaction.  The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client.  Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report.  The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited.  Compilation and analysis by <u>Forensic Mortgage Auditors, Inc.</u> for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

## MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS BENEFICIARY

An examination of the **Deed of Trust** also indicates that the deed of trust, which secures the Note and Mortgage upon which any lawsuit is based, was entered in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")** (see section, Exhibits: MERS Servicer ID Search Result). The Deed of Trust does state that "'MERS" acts as a nominee and lender, and beneficiary. The 'nominee' appellation would establish that MERS is the agent of **United Pacific Mortgage**, with respect to the administration of the deed of trust. MERS' must also be named as 'original nominal beneficiary' on any Appointment of Substitute Trustees. However, MERS' own Terms and Conditions of Membership published on MERS' website at www.MERSINC.org, states that "the MERS System is not a vehicle for creating or transferring beneficial interests in mortgage loans." MERS further indicates that it does not ever have beneficial interest in mortgage notes, stating "that it has no rights whatsoever for creating or transferring beneficial interest in the mortgage loans". Lawyer-Lenders, all Substitute Trustees in this case who assume all powers, rights, and duties of the Deed of Trust containing the MERS entry, would observe also performing due diligence that the provisions of the Uniform Commercial Code (UCC) do not support the mention of MERS in the Deed of Trust and that labeling MERS as a "beneficiary" is impermissible: Deeds of Trust for property may be foreclosed by the named beneficiary as well as the trustee.

Lender's counsel cannot attempt to ascribe to MERS a right to collect on a Note on which MERS is not named or even mentioned and in which MERS acknowledges it has no beneficial interest. Factually, MERS could only ever act as agent of the servicer or agent of the owner of the note to Borrower's mortgage.

Further problematic is that pursuant to page 7 of MERS' public record **Recommended Foreclosure Procedure Manual**, the naming of MERS in the Deed of Trust—and in the Appointment of Substitute Trustee—intentionally mislead the borrower and benefited the lenders.

"When MERS is the mortgagee of record, the foreclosure can be commenced in the name of MERS in place of the loan servicer." The U.S. Government addressed such activity under MERS when it announced publicly that as of May 1, 2010, Fannie Mae would no longer reimburse a loan servicer for any expense incurred in preparing or recording an assignment of the mortgage loan from MERS to the loan servicer or to Fannie Mae.

MERS legal standing continues to be challenged in many states. In *Mortgage Electronic Registration Systems, Inc., Appellent, Vs. Southwest Homes of Arkansas, Appellee No 08-1299 Supreme Court of Arkansas 2009 Ark. Lexis 121 March 19, 2009*, it was upheld that MERS has no capacity or standing to foreclose.

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



**legal forensic auditors**

Telephone: (540) 341-1481
www.legalforensicauditors.com

## MORTGAGE NOTE VERSUS DEED OF TRUST SEPARATION

As auditors' presented in the previous section, The Deed of Trust was entered in favor of MERS. However, the Note was entered in favor of **United Pacific Mortgage**. Generally, if the Deed of Trust and the Note are not together with the same entity, there can be no enforcement of the Note.

The Deed of Trust, as established in the previous section, enforces the Note, and provides the capability for the lender to foreclose on a property. Thus, if the Deed of Trust and the Note are separated, foreclosure cannot occur: The Note cannot be enforced by the Deed of Trust if each contains a different mortgagee; and, if the Deed of Trust is not itself a legally enforceable instrument, there can be no valid foreclosure on Borrowers' property. Legal precedence of recent public law cases exists for these conclusions: Respectively: _Saxon vs. Hillery_, CA, Dec 2008, Contra Costa County Superior Court and In re Hudson, 643 S.E. 2d 485 (N.C. Ct. App. 2007).

DISCLAIMER: No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



**Telephone: (540) 341-1481**
**www.legalforensicauditors.com**

## TRUSTEE/SUBSTITUTE TRUSTEE PENDING ISSUES

The servicer listed on the MERS website is **BAC Home Loans Servicing, LP** (see section, Exhibits: MERS Servicer ID Search Result). **BAC Home Loans Servicing, LP** could have become the servicer according to the Pooling and Servicing Agreement for **MASTR Asset Backed Securities Trust 2005-HE1** CIK#: 0001325405.

The Investor listed on the MERS website is **U.S. Bank as Trustee** (see section, Exhibits: MERS Servicer ID Search Result). **U.S. Bank National Association** would be the trustee according to the Pooling and Servicing Agreement for **MASTR Asset Backed Securities Trust 2005-HE1** CIK#: 0001325405.

There is no correct record including all intervening endorsements showing a complete chain of the title from the originator to the trustee as described in the Pooling and Servicing Agreement or as required in the Los Angeles County records.

We find no evidence of "*) the original Mortgage Note, endorsed in blank or in the  following form: "Pay to the order of U.S. Bank National Association, as Trustee under the applicable agreement, without recourse," with all prior and intervening endorsements showing a complete chain of endorsement from the originator to the Person so endorsing to the Trustee*". The Deed of Trust does not include all intervening endorsements showing a complete chain of the title from the originator to **U.S. Bank National Association** as described in the Pooling and Servicing Agreement (see section, Exhibits: Pooling and Servicing Agreement).

**DUE TO THE HISTORY OF BORROWERS' LOAN, WE BELIEVE THAT NOTHING SHORT OF PRODUCING THE ORIGINAL NOTE WILL SUFFICE TO ACCURATELY CLARIFY OWNERSHIP OF NOTE AND PROPER LEGAL STANDING.**

A recent decision by the Massachusetts Supreme Judicial court helped focus a few important questions on the foreclosure crisis in America.  The Massachusetts land court decision in the case of U.S. Bank v. Ibanez, which was affirmed by the Supreme Judicial Court as correct, has called into question hundreds if not thousands of foreclosure titles across the country.

In the Ibanez case, the Land Court invalidated two foreclosure sales because the foreclosing lenders failed to show proof they held ownership of the foreclosed mortgages through valid assignments.  In modern securitized mortgage lending practices, the ownership of a mortgage loan may be divided and freely transferred numerous times on the lenders' books.  But the documentation (i.e., the assignments) actually on file at the Registry of Deeds/Clerk of Courts often lags far behind.  The Land Court ruled that foreclosures were invalid when the lender failed to bring the ownership documentation (the assignments) up-to-date until after the foreclosure sale had already taken place.

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction.  The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client.  Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report.  The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited.  Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

The Ibanez decision has called into serious question the validity of any pending or completed foreclosure where the lender did not physically hold the proper paperwork at the time it conducted its auction.

The first part of the problem is the bifurcation of the mortgage, that is to say the separation of the promissory note, from the underlying security instrument, or the mortgage. In the Ibanez case, the notes were conveyed, but improperly. The plaintiffs, in this case, the Trusts that held the securities that the loans were bundled into, never had any such conveyance of the related mortgages in addition to improperly conveyed notes. The Plaintiffs aggravated their claims in the following way:

1. By exercising the power of sale, although they were not holders of the underlying mortgage, and thus did not have proper standing to foreclose.
2. Possessing improperly conveyed notes endorsed in "blank"
3. Violating M.G.L. 244 ss. 14, by falsely indicating in their publications that they were the holders of said mortgages.

The conventional industry practice, conveniently, is to assume that the mortgage follows the note; however in most States, that is not the case. In Massachusetts, where a note has been assigned but there is no written assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of the mortgage: Barnes v. Boardman, 149 Mass. 106, 114 (1889). In other cases, the assignment of the mortgage may be held to be invalid, even if the note is properly conveyed, and thus renders the debt, nonetheless unsecured. It is possible that from the banks perspective an invalid assignment of the note is the more serious concern for the following reasons:

1. Without first having proper ownership of the debt, the bank can not initiate any collection activity, let alone foreclosure.
2. Notes (ownership of the debt asset), may be subject to further contention in bankruptcy proceedings where many creditors have a vested interest in the assets of a defunct mortgage lender, particularly since these notes are often sold in bankruptcy for a fraction of their face value.
3. The trusts that are suppose to contain the validly conveyed notes will in fact, not actually contain them (because they are not bearer paper), thus violating the representations and warranties made to investors who purchase these securities. Therefore, it is unsecured debt, and potentially, no debt at all upon which to collect payments.
4. Even if the notes obtain a valid conveyance, or confirmation of conveyance at a later date, it is still may be impossible to place them into the MBS's:

    a) It will have been longer than 90 days (the typical expiry period to transfer assets into the trust)
    b) If it is a foreclosure matter, the loan is in default (the PSA's do not allow for the addition of defaulted loans)
    c) Any effort on the part of the trust to insert old or defaulted loans would jeopardize the trusts favorable REMIC status – thus further harming already impaired returns.

DISCLAIMER: No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

While there is no significant change in the law, the ruling may provide encouragement to foreclosure victims to seek proper remuneration for their trials and finally, it may provide a sound legal framework for homeowners to stop paying their mortgages (especially in Massachusetts), irrespective of their ability to pay, until their mortgage holder can guarantee clear, insurable title.

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by <u>Forensic Mortgage Auditors, Inc. for use by its affiliates.</u>



**legal forensic auditors**

Telephone: (540) 341-1481
www.legalforensicauditors.com

The role of the Substitute Trustee is governed by statutory law, case law, Lawyer's Rules of Professional Conduct. "Fiduciary" means "a trustee acting under a deed..." and "Fiduciary" includes a trustee acting under a deed. General analysis shows that in mortgage loans, the trustee not only represents the holder of the note secured by the deed of trust, but also the owners of the property, who would be entitled to any surplus remaining after the payment of expenses and the note secured by the deed of trust. This, of course, is made by possible only when a fair foreclosure sale occurs, securing the best price for the property. As noted in public case law, *Simard v. White, 378 Md. 617, 837 A.2d 928 (2003)*, the Court held that "it must be shown that the trustee did not abuse the discretion reposed in him, and that the sale was made under such circumstances as might be fairly calculated to bring the best obtainable price. The trustee not only represents the holder of the note secured by the deed of trust, but also the owners of the property..." *Id.* at 53.

Most pronounced, the Court further noted that "in the sale procedures, the selling entity is charged with making appropriate efforts to generate proper prices, not only to address the satisfaction of the debt, i.e., protecting the creditor, but also to protect the interests of the mortgagor..." *Id.* The Simard case references other existing case law supporting this fact as follows: *Waters, 165 Md.* at 75, *166 A.* 431; *see also Miller, 456 at 538 (mortgagee acting under power of sale 'acts not for himself alone, but as a fiduciary, and for the benefit of all parties interested in the proceedings')." White, 152 Md. App.* at 241-42, *831 A.2d* at 524-25.

In *Wilson v. Draper, 443 F.3d 373 (4th Cir. 2006)*, the court "concluded that a trustee's actions to foreclose on a property pursuant to a deed of trust are not 'incidental' to its fiduciary obligation". Rather, they are central to it." Thus, to the extent a trustee uses the foreclosure process to collect an alleged debt, the lawyer-Lenders in this case could not benefit from the exemption contained in §1692a(6)(F)(i) of the Fair Debt Collection Practices Act (FDCPA) as debt collectors.

Lawyer-Lenders, as Substitute Trustees, act primarily as collection agents whose acts must comply with to all FDCPA provisions. The court in *Wilson v. Draper* further noted that "the exemption (i) for bona fide fiduciary obligations or escrow arrangements applies to entities such as trust departments of banks, and escrow companies. It does not include a party who is named as a debtor's trustee solely for the purpose of conducting a foreclosure sale (i.e., exercising a power of sale in the event of default on a loan)."

Any self-appointment by lawyer-Lenders in this case is analogous to our conclusions earlier in this report regarding the naming of MERS in the Deed of Trust as the nominal beneficiary: To intentionally mislead a borrower to the benefit the lawyer-Lenders, who derive 5% as Substitute Trustees as well as the additional legal fees they receive from the lender.

Most states define Mortgage Fraud as knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process [including negotiation and servicing] with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process."

The Preamble to the United States Supreme Court Rule 4 acts to regulate the activities of lawyer Lenders in all cases: "The legal profession's relative autonomy carries with it special responsibilities of self government. The profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar."

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by <u>Forensic Mortgage Auditors, Inc. for use by its affiliates.</u>



Telephone: (540) 341-1481
www.legalforensicauditors.com

## DISCLOSED RISK AND ADVERSE RESULTS OF COURT ACTION

The Risks to Investors and the Transaction Parties in the financial engineering process of securitization were spelled out clearly.

i. BOOK-ENTRY SECURITIES ... one or more of the securities may be issued in book-entry form. In that event, beneficial owners of those securities will not be considered "holders" under the agreements and may exercise the rights of holders only indirectly through the participants in the applicable book-entry system.

ii. FORECLOSURE ON MORTGAGES An action to foreclose a mortgage is an action to recover the mortgage debt by enforcing the mortgagee's rights under the mortgage. It is regulated by statutes and rules and subject throughout to the court's equitable power since a foreclosure action historically was equitable in nature, the court may exercise equitable powers to relieve a mortgagor of a default and deny the mortgagee foreclosure on proof that the mortgagee's action established a waiver, fraud, bad faith, or oppressive or unconscionable conduct such as to warrant a court of equity to refuse affirmative relief to the mortgage a court of equity may relieve the mortgagor from an entirely technical default where the default was not willful.

Moreover, a non-collusive, regularly conducted foreclosure sale may be challenged as a fraudulent conveyance, regardless of the parties' intent if a court determines that the sale was for less than fair consideration and the sale occurred while the mortgagor was insolvent and within one year ... of the filing of bankruptcy. Similarly, a suit against the debtor on the related mortgage note may take several years and, generally, is a remedy alternative to foreclosure, the mortgagee being precluded from pursuing both at the same time it is common for the lender to purchase the property from the trustee or referee for an amount that may be equal to the unpaid principal amount of the mortgage note secured by the mortgage or deed of trust plus accrued and unpaid interest and the expenses of foreclosure, in which event the mortgager's debt will be extinguished.

iii. BANKRUPTCY LAWS MAY RESULT IN ADVERSE CLAIMS AGAINST TRUST FUND ASSETS. The federal bankruptcy code and state debtor relief laws may adversely affect the ability of the trust fund, as a secured lender, to realize upon its security. For example, in a federal bankruptcy proceeding, a lender may not foreclose on mortgaged property without the bankruptcy court's permission. Similarly, the debtor may propose a rehabilitation plan, in the case of mortgaged property that is not his principal residence that would reduce the amount of the lender's secured indebtedness to the value of the property as of the commencement of the bankruptcy. As a result, the lender would be treated as a general unsecured creditor for the reduced amount, the amount of the monthly payments due on the loan could be reduced, and the interest rate and loan payment schedule could be changed. Any such actions could result in delays in receiving payments on the loans underlying the securities and result in the reduction of total payments.

DISCLAIMER: No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

Courts with federal bankruptcy jurisdiction have also indicated that the terms of a mortgage loan may be modified if the borrower has filed a petition under chapter 13. These courts have suggested that such modifications may include reducing the amount of each monthly payment, changing the rate of interest, altering the repayment schedule and reducing the lender's security interest to the value of the residence, thus leaving the lender a general unsecured creditor for the difference between the value of the residence and the outstanding balance of the loan.

In a chapter 11 case under the Federal Bankruptcy Code, the lender is precluded from foreclosing without authorization from the bankruptcy court. The lender's lien may be transferred to other collateral and/or be limited in amount to the value of the lender's interest in the collateral as of the date of the bankruptcy. The loan term may be extended, the interest rate may be adjusted to market rates and the priority of the loan may be subordinated to bankruptcy court-approved financing. The bankruptcy court can, in effect, invalidate due-on-sale clauses through confirmed Chapter 11 plans of reorganization. 141/179

iv. EQUITABLE LIMITATIONS ON REMEDIES In connection with lenders' attempts to realize upon their security, courts have invoked general equitable principles.... In some cases, courts have substituted their judgment for the lender's judgment and have required that lenders reinstate loans or recast payment schedules in order to accommodate borrowers who are suffering from temporary financial disability.

DISCLAIMER: No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by <u>Forensic Mortgage Auditors, Inc.</u> for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

We have researched the subject of Securitization from the lender to the borrower to the best of our ability. This audit investigates the loan from the time of its origination, through the process of securitization and sale to investors in a Trust, as detailed in the above. If there is any further related case law or other support that you can share with us, please feel free to let us know and we will incorporate it.

We are continually striving to bring the best and most up to date audit to our customers.

Again, we strongly advise you to seek the counsel of a reputable attorney, as we are not attorneys and do not provide legal advice. Our securitized loan audit services are intended to transform the complicated financial engineering of the securitized loan into a simple report and analysis of facts. Our expert(s) trace the note and deed of trust from the originating lender up the line of sales to the trust and investor ownership. Our evidentiary findings may reveal defects in the real estate title that is being claimed by the party(s) seeking to foreclose. Other undisputable material defects may also be presented. Using this evidentiary findings report, attorney(s) can then analyze these facts and draw their own legal opinions.

Thank you for allowing us to be of service to you and please do not hesitate to contact us if you or your attorney requires further information or assistance.

Sincerely,

**Legal Forensic Auditors**

_____

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



legal
forensic
auditors

Telephone: (540) 341-1481
www.legalforensicauditors.com

# About *LFA Securitization Legal Chain of Title and Analysis Report*

**To complete The Securitization Audits we follow 2 steps.**

<u>Step 1.  Loan Specific Title Search.</u>

We research all paperwork given to the borrower at closing.   We cross check the Mortgage Deed of Trust and Servicing Transfer Disclosure with a public records search of the county recorder's office in which the property is located.  We check to see if the loan is currently listed with MERS.  Based on these searches, we determine if the loan is a securitized loan.  If the loan is a non-securitized loan our report will only include the results of the Loan Specific Title Search.

<u>Step 2.  Chain of Title History</u>

For Securitize loans we then check through our Database to locate the pool, pools or group(s) of pools claiming to have ownership of the borrowers' loan.  Our Database search includes the EDGAR (SEC) Database and a proprietary Search Engine that helps locate possible ownership of the loan.

Our reports will show all findings in a clear and concise manner and will have loan specific analysis and commentary on the securitization status of the loan with suggested areas of focus and concentration for the borrower's lawyer or adviser.

**DISCLAIMER:**  No part of this Report shall be construed as legal advice with respect to the subject transaction.  The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client.  Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report.  The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited.  Compilation and analysis by <u>Forensic Mortgage Auditors, Inc. for use by its affiliates.</u>



Telephone: (540) 341-1481
www.legalforensicauditors.com

## Procedure

When we check through our Database to locate the pool, pools or group(s) of pools claiming to have ownership of the borrowers' loan we try to find actual mention of the note, either through loan number, address, loan size, loan type or other loan specific details. Otherwise we use the Closing dates and Cut-off dates for the specific pools that the loan may be in. We search through the 424B5 Prospectus and the Pooling and Servicing Agreements. If a 15-15d Suspension of Duty to Report is filed we can provide that as well.

Usually there is no recorded and perfected Chain of Assignments, nor is there a Chain of Endorsements in any Securitized Loan, no assignment history that goes from the lender, to the Sponsor, to the Depositor, and lastly, to the Trust, as required by most Pooling and Servicing Agreements.

However, we know that each Securitized Loan has purportedly been transferred two to three times at a minimum, but no Assignment of Beneficiary was ever recorded when the transfers took place. That was the purpose of MERS. The Deeds would be kept in the name of MERS as "Nominee for the Beneficiary". This allowed MERS to appear to be the Beneficiary and avoid the expenses of recording Assignments at each transfer, usually about $30 per recording.

Sometimes we see the original mortgage note, endorsed without recourse in blank by the last endorsee. Any Assignment of the Deed to the Trust will almost always occur after a Notice of Default is filed and the Assignment is made from the lender or MERS to the Trust. This is done to "establish" Beneficiary Rights in the mind of the Trust. It also tries to unite the Note and the Deed for Legal Standing to foreclosure.

Our audits usually show that there is a chain of ownership that has not been properly executed, and that any party trying to foreclose needs to present clear ownership and explain why they have a clear right to foreclose.

The Securitization Audit can be completed with the documents provided to the Borrower at Closing. If the Audit is going to be used to its fullest potential it is recommended that in your QWR you also request information on the holder of the mortgage loan. This is a right granted to Borrowers under TILA and RESPA. It is also advisable to request the Pooling and Service Agreement between the servicer and the investor in your Debt Verification Letter. They are not required to provide this, but sometimes they do.

Any information you gain from the QWR will only serve to complement the Securitization Audit and its information.

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by Forensic Mortgage Auditors, Inc. for use by its affiliates.



Telephone: (540) 341-1481
www.legalforensicauditors.com

## <u>EXHIBITS</u>

**DISCLAIMER:** No part of this Report shall be construed as legal advice with respect to the subject transaction. The addressee of this Report ("Client") acknowledges that Legal Forensic Auditors ("LFA") is not acting in the capacity of legal counsel to Client. Client also acknowledges that LFA has encouraged Client to retain legal counsel to evaluate the legal consequences of the matters addressed in this Report. The information contained in this report is for the sole and exclusive use of Client and any other use or dissemination of such information is strictly prohibited. Compilation and analysis by <u>Forensic Mortgage Auditors, Inc.</u> for use by its affiliates.



**legal forensic auditors**

Telephone: (540) 341-1481
www.legalforensicauditors.com

## SEC Filed Documentation Obtained and Examined

Search Results



Search Results

Search the Next-
Generation EDGAR System

SEC Home » Search the Next-Generation EDGAR System » Company Search » *Current Page*

MASTR ASSET BACKED SECURITIES TRUST 2005-HE1 CIK#: Business Address    Mailing Address
0001326405 (see all company filings)                                    1285 AVE OF THE      1285 AVENUE OF THE
SIC: 6189 - ASSET-BACKED SECURITIES                                      AMERICAS             AMERICAS
State location: NY | State of Inc.: DE | Fiscal Year End: 1231           NEW YORK NY 10019    NEW YORK NY 10019
(Assistant Director Office No 5)                                         2127132000

Filter Results:  Filing Type:    Prior to: (YYYYMMDD)    Ownership?              Limit Results Per Page
                                                         ○ include ⊙ exclude ○ only    40 Results

Items 1 - 16  RSS Feed

| Filings | Format | Description | Filing Date | File/Film Number |
|---|---|---|---|---|
| 10-K | Documents | Annual report [Section 13 and 15(d), not S-K Item 405] Acc-no: 0001056404-06-001345 (34 Act) Size: 39 KB | 2006-03-29 | 333-108982-67 06716872 |
| 8-K/A | Documents | [Amend] Current report, items 8.01 and 9.01 Acc-no: 0001056404-06-001076 (34 Act) Size: 167 KB | 2006-03-10 | 333-108982-67 06678471 |
| 8-K/A | Documents | [Amend] Current report, items 8.01 and 9.01 Acc-no: 0001056404-06-001075 (34 Act) Size: 145 KB | 2006-03-10 | 333-108982-67 06678407 |
| 15-15D | Documents | Suspension of duty to report [Section 13 and 15(d)] Acc-no: 0001056404-06-000537 (34 Act) Size: 4 KB | 2006-01-26 | 333-108982-67 06551653 |
| 8-K | Documents | Current report, items 8.01 and 9.01 Acc-no: 0001056404-06-000169 (34 Act) Size: 165 KB | 2006-01-05 | 333-108982-67 06510463 |
| 8-K | Documents | Current report, items 8.01 and 9.01 Acc-no: 0001056404-05-004302 (34 Act) Size: 139 KB | 2005-12-06 | 333-108982-67 051245364 |
| 8-K | Documents | Current report, items 8.01 and 9.01 Acc-no: 0001056404-05-003822 (34 Act) Size: 125 KB | 2005-10-31 | 333-108982-67 051165296 |
| 8-K | Documents | Current report, items 8.01 and 9.01 Acc-no: 0001056404-05-003249 (34 Act) Size: 128 KB | 2005-09-28 | 333-108982-67 051105780 |
| 8-K | Documents | Current report, items 8.01 and 9.01 Acc-no: 0001056404-05-003086 (34 Act) Size: 120 KB | 2005-09-02 | 333-108982-67 051066598 |
| 8-K | Documents | Current report, items 8.01 and 9.01 Acc-no: 0001056404-05-002746 (34 Act) Size: 80 KB | 2005-07-05 | 333-108982-67 05990674 |
| 8-K | Documents | Current report, items 8.01 and 9.01 Acc-no: 0001056404-05-002443 (34 Act) Size: 59 KB | 2005-07-05 | 333-108982-67 05934913 |
| 8-K | Documents | Current report, items 8.01 and 9.01 Acc-no: 0001056404-05-002273 (34 Act) Size: 58 KB | 2005-06-03 | 333-108982-67 05877323 |
| 8-K/A | Documents | [Amend] Current report, items 2.01 and 9.01 Acc-no: 0000882377-05-001375 (34 Act) Size: 908 KB | 2005-06-01 | 333-108982-67 05870533 |
| SE | Documents | [Paper] Exhibits Acc-no: 9999999997-06-024696 (NE Act) Size: 1 KB | 2005-05-20 | 333-108982-67 06064859 |
| 8-K | Documents | Current report, items 2.01 and 9.01 Acc-no: 0000882377-05-001236 (34 Act) Size: 905 KB | 2005-05-17 | 333-108982-67 05830031 |

http://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001325405&owner=exclude&count=40[7/1/2011 5:20:09 PM]



Telephone: (540) 341-1481
www.legalforensicauditors.com

Search Results

| 424B5 | Document | Prospectus [Rule 424(b)(5)] Acc-no: 0000882377-05-001014 (33 Act)  Size: 1 MB | 2005-04-28 | 333-108982-87 05780627 |

http://www.sec.gov/cgi-bin/browse-edgar

Home | Search the Next-Generation EDGAR System | Previous Page                    Modified 05/21/2009



Telephone: (540) 341-1481
www.legalforensicauditors.com

## Form 15-15D Suspension of Duty to Report

‹DOCUMENT›
‹TYPE›15-15D
‹SEQUENCE›1
‹FILENAME› mab05he1_15-2005.txt
‹TEXT›

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

FORM 15

Certification and Notice of Termination of Registration under Section
12(g) of the Securities Exchange Act of 1934 or Suspension of Duty to
File Reports under Sections 13 and 15(d) of the Securities Exchange Act
of 1934.

Commission File Number: 333-106982-67

MASTR Asset Backed Securities Trust
Mortgage Pass-Through Certificates,
Series 2005-HE1 Trust

(Exact name of Registrant as specified in its charter)

c/o Wells Fargo Bank, N.A.
9062 Old Annapolis Road
Columbia, MD 21045
(410) 884-2000

(Address, including zip code, and telephone number, including area code,
of Registrant's principal executive offices)

A-1

A-2

A-3

CE

http://www.sec.gov/Archives/edgar/data/1325305/000103690100008883/mab05he1_15-2005.txt[2/1/2011 5:40:51 PM]



Telephone: (540) 341-1481
www.legalforensicauditors.com

M-1

M-10

M-11

M-2

M-3

M-4

M-5

M-6

M-7

M-8

M-9

P

R

R-X

(Title of each class of securities covered by this Form)

None

(Titles of all other classes of securities for which a duty to file
reports under Section 13(a) or 15(d) remains)

Please place an X in the box(es) to designate the appropriate rule
provision(s) relied upon to terminate or suspend the duty to file reports:

Rule 12g-4(a)(1)(i)

Rule 12g-4(a)(1)(ii)

Rule 12g-4(a)(2)(i)

Rule 12g-4(a)(2)(ii)

Rule 15d-6                    :X:

Rule 12h-3(b)(1)(i)           :X:

http://www.sec.gov/Archives/edgar/data/1325405/000105640406000537/out00t9rel_15-2005.txt[7/1/2011 5:40:51 PM]



Telephone: (540) 341-1481
www.legalforensicauditors.com

Rule 12h-3(b)(1)(ii)

Rule 12h-3(b)(2)(i)

Rule 12h-3(b)(2)(ii)

Approximate number of holders of record as of the certification or notice date:

　　　Less than 300 Holders

Pursuant to the requirements of the Securities Exchange Act of 1934,

MASTR Asset Backed Securities Trust
Mortgage Pass-Through Certificates,
Series 2005-HE1 Trust

has caused this certification/notice to be signed on its behalf by the undersigned duly authorized person.

Date: 01/19/2006
By: /s/ Beth Belfield, Officer

Instruction: This form is required by Rules 12g-4, 12h-3 and 15d-6 of the General Rules and Regulations under the Securities Exchange Act of 1934. The Registrant shall file with the Commission three copies of Form 15, one of which shall be manually signed. It may be signed by an officer of the Registrant, by counsel or by any other duly authorized person. The name and title of the person signing the form shall be typed or printed under the signature.

</TEXT>
</DOCUMENT>

http://www.sec.gov/Archives/edgar/data/1325405/000105040000000537/msb05he1 15-2005.txt[7/1/2011 5:40:51 PM]



Telephone: (540) 341-1481
www.legalforensicauditors.com

## MERS Servicer ID Search Results
MERS® Servicer Identification System - Results

https://www.mers-servicerid.org/sis/search

**MERS**
**ServicerID**
www.mers-servicerid.org

*Process Loans, Not Paperwork™*

1 record matched your search:

MIN: 1001949-1110019609-8   Note Date: 02/07/2005   MIN Status: Active

Servicer: BAC Home Loans Servicing, LP   Phone: (800) 669-6607
Simi Valley, CA

Investor: U.S. Bank as Trustee   Phone: (651) 495-3959
St. Paul, MN

Return to Search

For more information about MERS please go to www.mersinc.org
Copyright© 2005 by MERSCORP, Inc.



**lfa** | **legal forensic auditors**

Telephone: (540) 341-1481
www.legalforensicauditors.com

## Property Search Results
PropertyShark Reports

http://www.propertyshark.com/mason/california/Reports2/showsection.h...

19127 Romar St, Los Angeles, CA 91324



Telephone: (540) 341-1481
www.legalforensicauditors.com

PropertyShark Reports                                      http://www.propertyshark.com/mason/california/Reports2/showsection.h...



Telephone: (540) 341-1481
www.legalforensicauditors.com

Detailed Parcel Information

Page 1 of 1

Records for this property are kept at the North District Office
( *How frequently is the information updated on this site?* and other FAQs )

## Property Information

| | |
|---|---|
| Assessor's ID No. | 2729-027-042 |
| Site Address | 19127 ROMAR ST |
| | LOS ANGELES CA 91324 |
| Property Type | Single Family Residence |
| Region / Cluster | 02 / 02105 |
| Tax Rate Area (TRA) | 00016 |

Here to View Assessor

Here to View Index

## Recent Sale Information

Latest Sale Date
Indicated Sale Price

rch for Recent Sales

## 2010 Roll Values

| | |
|---|---|
| Recording Date | 02/16/2005 |
| Land | $521,000 |
| Improvements | $347,000 |
| Personal Property | $0 |
| Fixtures | $0 |
| Homeowners' Exemption | $0 |
| Real Estate Exemption | $0 |
| Personal Property Exemption | $0 |
| Fixture Exemption | $0 |

Show for 2010 Annual

( I have a question regarding my property tax payment )

iorate Supplemental(s)

## Property Boundary Description

TR=43424 LOT 21

## Building Description[s]

| | Improvement 1 |
|---|---|
| Square Footage | 4,752 |
| Year Built / Effective Year Built | 1986 / 1988 |
| Bedrooms / Bathrooms | 5 / 6 |
| Units | 1 |

Here for Another Search



| | legal |
| forensic |
| auditors |

Telephone: (540) 341-1481
www.legalforensicauditors.com

19127 Romar St. Northridge, CA 91324

http://www.redfin.com/CA/Northridge/19127-Romar-St-91324/home/58...

Call: 877-683-3346    Join Redfin or Sign In

**Welcome to Redfin**

Want to see all the homes for sale in your area?

Just click Search Listings

Sold on 02/15/2005
**$1,315,010**

19127 Romar St
Northridge, CA 91324
Source: Public Records

BEDS: 5
BATHS: 4.0
FINISIED SQFT: 4,762
UNFINISHED SQFT: --
TOTAL SQFT: 4,752
FLOORS: --
LOT SIZE: 17,329

STYLE: Single Family Residend
YEAR BUILT: 1986
YEAR RENOVATED: 1986
COUNTY: Los Angeles County
APN: 2725027042
LAST UPDATED: June 19, 2011

Views



**Property History**

| Date | Event | Price | Appreciation | Source |
|------|-------|-------|--------------|--------|
| Feb 15, 2005 | Sold (Public Records) | $1,315,010 | -- | Public Records |

*Notice: There are past MLS listings for this property which are not being shown. In order to see these listings, please sign in. Why is this required?*

**Property Tax**

| | Taxable Value |
|------|------|
| Land | $521,000 |
| Additions | $347,000 |
| Total | $868,000 |
| Tax (2010) | $11,434 |

**What's the Market Like for Houses Near 19127 Romar St?**

House: $/Sq. Ft. in 91324

Median House Values

Select a place below for more pricing guidance.

| | List $ | $/Sq. Ft. | Sale/List |
|------|--------|-----------|-----------|
| Northridge | $499,900 | $237 | 98.1% |
| North Valley | $350,000 | $228 | 99.3% |
| 91324 | $459,900 | $227 | 97.4% |
| Los Angeles | $475,000 | $276 | 97.7% |
| Los Angeles County | $409,900 | $263 | 97.7% |

1 of 3



Telephone:  (540) 341-1481
www.legalforensicauditors.com

19127 Romar St, Northridge, CA 91324          http://www.redfin.com/CA/Northridge/19127-Romar-St-91324/home/58...



Home Value Estimates

| | Low | Estimate | High |
|---|---|---|---|
| | $700,000 | $858,000 | $1,400,860 |
| | $776,172 | $813,144 | $1,050,115 |

1 yr | 5 yr | 10 yr



93% of homes in this zip code have a
value lower than this home. See more
charts at Zillow.com

### Nearby Similar Listings

Closest listings of similar size and type:


$1,370,000
19233 DEERFIELD Ln
0.17 miles
5 bd / 5.5 ba
8,988 Sq. Ft.

10031 Belvig Ave
0.27 miles
6 bd / 4 ba
5,338 Sq. Ft.


$1,128,000
19363 BEECHTREE Ln
0.61 miles
5 bd / 5.5 ba
4,406 Sq. Ft.


$1,308,000
19439 KINDE St
0.64 miles
7 bd / 5.5 ba
7,020 Sq. Ft.


$799,000
3084 NOTTINGHILL Sq
0.71 miles
7 bd / 5.25 ba
5,162 Sq. Ft.


$780,000
19722 HAWAITH
0.92 miles
6 bd / 4.5 ba
4,007 Sq. Ft.


$719,000
5456 WHALDEN Ave
0.93 miles
4 bd / 4 ba
4,486 Sq. Ft.


$1,280,000
9261 GOTHMILL Rd
1.03 miles
8 bd / 8 ba
6,226 Sq. Ft.


$899,900
19558 LOS ALAMOS St
1.17 miles
4 bd / 4 ba
4,401 Sq. Ft.

10599 Winnetka Ave
1.27 miles
5 bd / 6 ba
7,485 Sq. Ft.

Range: $719,000 - $1,360,000
Average: $196/Sq. Ft.
This home at $104/Sq. Ft.: $821,960

### Nearby Similar Sales

Closest homes of similar size and type, sold within the
past six months:


$1,270,000
19203 ROMAR St
0.07 miles
7 bd / 5.75 ba
5,944 Sq. Ft.


$770,000
19254 ROMAR St
Sold on Apr 09, 2011
0.18 miles
4 bd / 3.75 ba
4,050 Sq. Ft.


$
19441 LARSEN St
Sold on Feb 01, 2011
0.59 miles
7 bd / 7 ba
5,970 Sq. Ft.


$640,000
10021 DANBY Ave
Sold on May 18, 2011
0.60 miles
8 bd / 4.5 ba
4,667 Sq. Ft.


$720,000
19912 BERMUDA St
Sold on Mar 16, 2011
0.69 miles
5 bd / 3.5 ba
4,306 Sq. Ft.


$416,000
8846 BELVEDERO Ave
Sold on Mar 30, 2011
0.94 miles
5 bd / 4 ba
4,271 Sq. Ft.


$999,000
18208 TRAMMELL Ln
Sold on May 24, 2011
1.35 miles
4 bd / 5 ba
4,724 Sq. Ft.


$980,000
18188 TRAMMELL Ln
Sold on Feb 25, 2011
1.44 miles
5 bd / 4 ba
4,418 Sq. Ft.


$1,050,000
18197 TRAMMELL Ln
Sold on Jan 07, 2011
1.46 miles
5 bd / 4.5 ba
4,747 Sq. Ft.

$692,000
10461 CELTIC St
Sold on May 25, 2011
2 miles
5 bd / 4.5 ba
4,200 Sq. Ft.

Range: $416,000 - $1,370,000
Average: $160/Sq. Ft.
This home at $108/Sq. Ft.: $703,730

2 of 3

# lfa | legal forensic auditors

Telephone: (540) 341-1481
www.legalforensicauditors.com

Does Fannie Mae Own Your Mortgage? Loan Lookup Tool

http://www.fanniemae.com/loanlookup/

**FannieMae**

The Fannie Mae Loan Lookup enables mortgage borrowers to quickly determine if Fannie Mae owns their loan by providing a street address, one, city, state, and zip + 0 code.

| Street Address * | | Unit |
| 19127 roamr | | |
| City | State | Zip Code * |
| NORTHRIDGE | CA | 91324 |

* I confirm that I am the owner of this property, or have the consent of the owner to look up this information.

* Required Fields

No Match Found.

Based on the property information you entered, it appears Fannie Mae does not own a loan at this address.

Please contact your mortgage lender or servicer (the organization to whom you make your monthly mortgage payments) to confirm these results and obtain additional information regarding your mortgage. Information that does not match our records exactly may return inaccurate results. Your loan may be held by Freddie Mac or another lender eligible for participation in the Making Home Affordable program.

Please visit MakingHomeAffordable.gov for additional information and next steps.

View Frequently Asked Questions for this Loan Lookup tool.

Thank you for contacting Fannie Mae.

The Fannie Mae Loan Lookup is provided as a convenience for borrowers. Fannie Mae makes no representation, warranty, or guarantee regarding the accuracy or completeness of the results. A search that results in a "Match Found" status does not guarantee or imply that you will qualify for a Making Home Affordable refinance or modification. Information that does not match our records exactly may return inaccurate results. You should contact your mortgage lender to verify these results.

For information about the use of our site and our privacy policy, see Legal Information. Click here for FAQs.

2011 Fannie Mae

* FAQ |
* Site Map |
* Privacy |
* Legal

**888-995-HOPE**
Homeowner's HOPE Hotline
888-995-HOPE (4673)
877-304-9709 TTY

If you have questions about the program that your servicer cannot answer or need further counseling, you can call the Homeowner's HOPE Hotline at 1-888-995-HOPE (4673) or via a TTY at 877-304-9709. The Hotline can help with questions about the program and offers free HUD-certified counseling services in English, Spanish, and other languages

**Know Your Options -**
**Avoid Foreclosure**

 Learn more about avoiding foreclosure and how you can have a more informed discussion with your mortgage company.

Visit KnowYourOptions.com

7/1/2011 5:09 PM



**Ifa** | legal
forensic
auditors

Telephone:  (540) 341-1481
www.legalforensicauditors.com

## Pooling and Servicing Agreement
See separate attachment *(Robinson,Daniel-19127Romar-PSA)* sent with this document

## 424B5-Prospectus
See separate attachment *(Robinson,Daniel-19127Romar-Prospectus)* sent with this
document

## VERIFICATION

STATE OF CALIFORNIA, COUNTY OF _____
I have read the foregoing_____ and know its contents.

☐ **CHECK APPLICABLE PARAGRAPH**

☐ I am a party to this action. The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am ☐ an Officer ☐ a partner_____ ☐ a_____ of _____ a party to this action, and am authorized to make this verification for an on its behalf, and I make this verification for that reason. I have read the foregoing document and know its contents. The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for_____ a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I have read the foregoing document and know its contents. I am informed and believe and on that ground allege that the maters stated in it are true.
Executed on_____, 20_____ at_____, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
Signature

## ACKNOWLEDGEMENT OF RECEIPT OF DOCUMENT
### (Other than Summons and Complaint)
Receive copy of document described as _____
_____on_____ 20_____.

_____
Signature

## PROOF OF SERVICE
STATE OF CALIFORNIA, COUNTY OF _____
I am employed in the county of _____LOS ANGELES_____, State of California
I am over the age of 18 and not a party to the within action; my business address is:_____
_____700 N PACIFIC COAST HWY #201, REDONDO BEACH, CALIF. 90277_____
On _____, 20_____, I DID NOT served the foregoing document described as___
_____PLAINTIFF'S BRIEF FOR COURT JUDGMENT OF QUIET TITLE BY PROVE-UP_____
_____ on ____ ANY DEFENDANTS _____
in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at :_____REDONDO BEACH_____
addressed as follows:

### ALL DEFENDANTS ARE DEFAULTED

☐ (BY MAIL) I caused such envelope and postage thereon fully prepaid to be placed in the United States mail. Executed on___APR 09 2013___, 20_____, at ____REDONDO BEACH, California.

☐ (BY FACSIMILE) I caused such Pleadings to be forwarded by telephonic Facsimile transmission.
Executed on_____, 20_____, from___REDONDO BEACH, California.

☐ (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of addressee.
Executed on _____, 20_____, at _____, California.

☐ (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the bar and of this court at whose direction the these documents were served.

_____
**AL WEST Esq**

# PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium, 19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

On March 4, 2014, I served true copies of the following document(s):

**NOTICE OF ERRATA RE: FIRST AMENDED COMPLAINT**

on the interested parties in this action as follows:

Susan M. Murphy
Advocate Legal
5455 Wilshire Boulevard, Suite 2119
Los Angeles, CA 90036

Attorney for Defendants Daniel W. Robinson and Darla J. Robinson

Telephone: (323) 692-7499
Facsimile: (800) 878 7336
E-Mail:
    susan@susanmurphylaw.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 4, 2014, at Irvine, California.

*Terri A. Keller*

Terri A. Keller