Susan M. Murphy (SBN: 185335)
susan@advocatelegal.org
ADVOCATE LEGAL
5455 Wilshire Boulevard  Suite 2119
Los Angeles, CA 90036
Telephone:  (323) 692-7499
Facsimile:   (800) 878-7336

Attorney for Defendants
DANIEL W. ROBINSON
DARLA J. ROBINSON

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA- WESTERN DISTRICT

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
and MERSCORP HOLDINGS, INC.,

        Plaintiffs,

v.

DANIEL W. ROBINSON and DARLA
J. ROBINSON,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.: CV13-07142-PSG (ASx)

DEFENDANTS DANIEL W. ROBINSON
and DARLA J. ROBINSON'S NOTICE OF
MOTION AND MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT.

Date Filed:        September 26, 2013
Judge:              Hon. Philip S. Gutierrez
Courtroom:       880

Hearing Date:   April 28, 2014
Hearing Time:   1:30 p.m.

255 East Temple Street
Los Angeles, California 90012

        PLEASE TAKE NOTICE that on April 28, 2014 at1:30 p.m., in courtroom 880 of

the above entitled court located at 225 East Temple Street. Los Angeles California

90012, the Honorable Philip S. Gutierrez presiding, Defendants Daniel W. Robinson and

Darla J. Robinson (hereafter "Defendants") will move to dismiss the first through fourth

claims in the First Amended Complaint ("FAC")  by MORTGAGE ELECTRONIC

SYSTEMS, INC. and MERSCORP HOLDINGS, INC (hereafter "Plaintiffs" or

"MERS," pursuant to FRCP 12(b)(6).

Grounds for the 12(b)(6) Motion to Dismiss are as follows:

1.  **First Claim:**

Plaintiffs fail to state a claim for Setting Aside a Void Judgment because 1) the

underlying QUIET TITLE cause of action required only the beneficiary and other parties

at interest to be named as Defendants, 2) Plaintiffs are agents and therefore are not

parties at interest, 3) as non-interested parties Plaintiffs cannot assert diversity

jurisdiction, and 4) Plaintiffs are collaterally estopped from reversing a state court

judgment in federal court.

2.  **Second Claim:**

Plaintiffs fail to state a claim for Violation of Due Process because 1) Plaintiffs

are not the party at interest, 2) Plaintiffs have limited authority as agents of the

beneficiary that does not allow them to initiate a cause of action, and 3) Plaintiffs have

lost nothing and have not been injured.

3.  **Third Claim**

Plaintiffs fail to state a claim for Cancellation of Void Instrument because 1) the

Lis Pendens recorded by Defendants was properly served on all parties to Defendants'

state court action, 2) the judgment recorded by Defendants on April 25, 2013 was not a

void judgment, 3) Plaintiffs are not parties of interest with standing to bring this cause of action, and 4) Plaintiffs have not been harmed by Defendants' state court judgment.

4. **Fourth Claim**

Plaintiffs fail to state a claim for Slander of Title because 1) Plaintiffs are not owners of the property in question, 2) Defendants recorded a valid state court judgment, and 3) Plaintiffs have not suffered any damage.

This Motion to Dismiss is based upon this Notice, the Memorandum of Points and Authorities, the prior Motion to Dismiss, Plaintiffs Complaint, Plaintiffs' First Amended Complaint, and Defendants' oral arguments at hearing.

Respectfully submitted,

Dated:   March 24, 2014          ADVOCATE LEGAL

By:  /s/  Susan M. Murphy                    .
         Susan M. Murphy
Attorney for Defendants
DANIEL W. ROBINSON and
DARLA J. ROBINSON

# TABLE OF CONTENTS

I.  Introduction   …………………………………..…………………………  1

II.  Procedural History ……………………………………………………… 2

III.  Summary of the First Amended Complaint …..…………………………… 4

   A. Jurisdiction …………………………………………………………… 4

   B. Standing  ……………………………………………………………… 5

   C. Allegations …………………………………………………………… 5

   D. Damages ……………………………………………………………… 6

      1.  Declaratory Relief …………………………………………… 6

      2.  Cancellation of Instruments ………………………………… 6

      3.  Constitutional Rights ………………………………………… 7

      4.  Attorney Fees & Damages …………………………………... 7

IV.  Issues

   A. Due Process Rights for the MERS business model ………………………… 7

      1.  MERS Business Model Does Not Create Title ……………………… 7

      2.  MERS Business Model Cannot Reconcile Title …………………… 9

   B. California CCP §762.010 is Constitutional ………………………………… 13

      1.  Defendants Are The Ones Deprived of Property ………………….... 13

      2.  Plaintiffs Confuse Constitutionality with Cost …………………… 14

      3.  Plaintiffs Argue Form over Substance …………………………….. 14

V.  Arguments in Support of Motion to Dismiss …………………………….... 16

   A. Plaintiffs fail to state a claim under FRCP 12(b)(3)…..………….....……… 16

   B. Plaintiffs lack Standing FRCP 17(a) …………………………………….. 17

   C. Plaintiffs are in an Improper Venue FRCP 12(b)(3) ……………….....…… 19

   D. Plaintiffs Lack Subject Matter Jurisdiction FRCP 12(b)(1) …………....…… 20

V.    Damages ……………………………………………..………………… 20

      A.    Attorney Fees 42 U.S. Code §1988. …………………………..……… 20

      B.    Defendants are entitled to damages …………………………………... 21

VI.   Conclusion ……………………………………………………… …... 22

.

# TABLE OF AUTHORITIES

Federal Cases

*Carpenter v. Longan,*
    83 U.S. 271, 274 (1872). *Agard* at 246-247…………………………..…..12, 15

*Hensley v. Eckerhart,*
    42 U.S. 424, 429 (1983) ……………………………………………..  20

*Christiansburg Garment Co. v. EEOC,*
    434 U.S. 412, 421 (1978) …………………………………………....  20

*Hughes v. Rowe,*
    449 U.S. 5 (1980) ……………………………………………….....  21

*In Re: Agard,*
    444 B.R. 231, 235 (U.S. 2011) ………………………………………..  10, 11

*Lawler v. Gleason*, 1
    30 Cal. App. 2d 390, 279 P.2d 70 (1955)………………………………  14

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (U.S. 1992) ……………………………………………  17

*Mortgage Elec. Registration Sys. v. Saunders,*
    2 A.3d 289, 294-97 (Me. 2010). …………………………………….  18

*Cervantes v. Countrywide Home Loans, Inc.,*
    656 F.3d 1034, 2011 (9th Cir. Ariz. 2011)   …………………………….  18

*James v. ReconTrust Co.,*
    845 F. Supp. 2d 1145, 1155 (D. Or. 2012) …………………………….  18

*Weingartner v. Chase Home Finance, LLC,*
    702 F.Supp.2d 1276, 1280 (D. Nev. 2010) …………………………….  18

*Mortg. Elec. Registration Sys. v. Neb. Dep't of Banking & Fin.,*
    270 Neb. 529, 533 (Neb. 2005) ……………………………………..  18

*Scheuer v. Rhodes*,

 416 U.S. 232  (1974) …………………………………………..…   16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,

 511U.S. 375 (U.S.1994). ……………………….…………………….. 20

*Bell Atlantic Corp. v. Twombly*,

 550 U.S. 544 (2007) ………………………………………………… 16

*Aschroft v. Iqbal*,

 129 S.Ct. 1937 (2009) ……………………………………………… 17

*Balistreri v. Pacifica Police Dept.*,

 901 F.2d 696 (1990) ………………………………………………… 16

*Davis v. Scheuer*,

 468 U.S. 183 (1984) ………………………………………………… 16

*Scheuer v. Rhodes*,

 416 U.S. 232 (1974) ………………………………………………… 16


State Cases

*Bevilacqua v. Rodriguez*,

 460 Mass. 762, 955 N.E.2d 884, 2011 Mass. LEXIS 918 (Mass. 2011)……   9, 13

*Merscorp, Inc., v. Romaine*,

 295 A.D.2d  431, 432, 743 N.Y.S.2d 562 (2002) …………………………… 9, 10

*Merscorp, Inc., v. Romaine*,

 8 N.Y.3d 90, 861 N.E.2d 81, 828 N.Y.S.2d 266 (N.Y. 2006) ………………… 12

*Wells Fargo Bank, N.A., v. Perry*,

 875 N.Y. S. 2d 853, 856 (N.Y. Sup. Ct. 2009) ……………………………….. 11

*U.S. Bank National Ass'n v. Ibanez*,

 941 N.E. 2d 40 (Mass.2011) …………………………………………..  13

*Eaton v. Fed. Nat'l Mortg. Assn,*

    969 N.E.2d 1118, 1134 (Mass.2012) …………………………………… 13

*Gomes v. Countrywide Home Loans, Inc.*,

    192 Cal. App. 4th 1149 (Cal. App. 4th Dist. 2011) ………………..…………..17

*Fontenot v. Wells Fargo Bank, N.A.*,

    198 Cal. App. 4th 256 (Cal.App.1st Dist.2011)………………………………… 17


Federal Law

United States Constitution Amendment 5 …………………………………    4, 7, 13, 14

United States Constitution Amendment 14 …………………………………    4, 7, 13, 14

28 U.S.C. §1331 ……………………………………………………………………..  4

42 U.S.C. §1988 …………………………………………………………… 7, 20

FRCP §12(b)(6) ……………………………………………………………   16

Federal Rules of Civil Procedure 12(b)(3) …………………………......…………..  19

Federal Rules of Civil Procedure 12(b)(1) …………………………..…………....  20

Federal Rules of Civil Procedure 12(b)(6) …………………………………………19

Federal Rules of Civil Procedure 17(a) …………………………..…… ……....…:17


State Law

California Code of Civil Procedure §762.010 …………………    5, 7, 13, 14, 15, 16, 22

Cal. Civ. Code §1214 …………………………………………….………… … 15 fn 7

2001 N.Y. Op. Atty. Gen. 1010, 2001 N.Y. AG LEXIS 2 ………………………..   9, fn 6

New York Real Property Law §291 …………………………………………………… 9

New York Real Property Law §316(a)(1) ……………………………………………..9

<u>Other sources</u>

6A CHARLES ALLEN WRIGHT & ARTHUR R. MILLER,

      FEDERAL PRACTICE AND PROCEDURES

      §1553 (2d ed. 1990) ……………………………………………..... 2, fn2

*Black's Law Dictionary* (9th ed. 2009) …………………………………………..18

Adam J. Levitin, *The Paper Chase:*

      *Securitization and the Uncertainty of Mortgage Title,*

      Duke Law Journal Vol. 63 at 672 (2013)……................................. 1, fn1, 21, fn9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

"MERSCORP HOLDINGS, Inc. is a private stock corporation" owned by servicers ("originating lenders") and Wall Street investment firms ("secondary market investors") that originate and bundle mortgages for securitization. (FAC ¶s8-9.)  The servicers created MERS to circumvent the recording requirements of the REMIC Act that required them to physically endorse and ASSIGN the NOTE, physically transfer the NOTE to each new owner, and physically *record* the ASSIGNMENT of the NOTE to each of the different parties to securitization.[1] This cost-cutting benefitted Plaintiffs and their stockholders but not the consumer (or investors) since the multiple transactions required for compliance with state and federal law regarding securitization are not recorded in the public registry and not verifiable.  (FAC ¶23.)

In their First Amended Complaint ("FAC") Plaintiffs' only discussion of chain of title is the allegation that Defendants Promissory NOTE was "transferred" to U.S. Bank National Association as Trustee for Harborview 2005-03 ("US BANK") sometime prior to the filing of Defendants' Quiet Title complaint. (FAC ¶52.)  Plaintiffs do *not* claim there was any ASSIGNMENT of Plaintiffs' Promissory NOTE to US BANK.  Plaintiffs also do *not* bring this action as nominee or agent of US BANK.

---

[1] Adam J. Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title,* Duke Law Journal Vol. 63 at 672 (2013).

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Although Plaintiffs lose nothing by non-payment, which is the determinant of beneficial interest, Plaintiffs continue to claim a beneficial interest based on being named "the beneficiary of this security instrument" in Defendants Deed of Trust. (FAC ¶49.)  Plaintiffs seek the court's legitimization for their MERS business model by granting them title and the accompanying due process rights. (FAC ¶1.)  Plaintiffs make these demands despite dismissal of their original complaint on all causes of action, and the opportunity to amend to name the actual beneficiary and bring this suit as an agent or nominee.[2]  Plaintiffs allegations are repeated here as Plaintiffs continue to claim the rights of a beneficiary to personal service of NOTICE of Defendants' state court Quiet Title complaint pursuant to CCP §762.010.

## II.   PROCEDURAL HISTORY

On February 15, 2005 Defendants signed a DEED OF TRUST for 19127 Romar Street, Northridge, California 91324 ("the Romar property") with United Pacific Mortgage ("UNITED PACIFIC") as beneficiary (Los Angeles County Recorder doc. #050342544). (Comp. Ex.1.)  Defendants made their payments to Countrywide Financial ("COUNTRYWIDE") and then to Bank of America, N.A. ("BOA") until Defendants' mortgage servicing rights ("MSRs") were transferred to Nationstar Mortgage ("NATIONSTAR") on or about October, 2013 concurrent with Plaintiffs' Quiet Title

---

[2] "As a general rule a person who is an attorney-in-fact or an agent solely for the purpose of bring suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name." 6A CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURES §1553 (2d ed. 1990).

filed September 26, 2013. (Comp.Ex.5.)  Plaintiffs failed to record an ASSIGNMENT of the mortgage to a new beneficiary despite it being sold to a Real Estate Investment Trust ("REIT") in 2005.[3]  (FAC ¶52.)  Despite multiple problems with their servicer BOA, Defendants had not missed a mortgage payment pursuant to their Deed of Trust when they filed their Quiet Title action (Case no. PC052281) in Los Angeles Superior Court North Valley District on January 11, 2012.[4]

In their Quiet Title action Defendants sued UNITED PACIFIC, the beneficiary on Defendants' DEED OF TRUST, and "all persons or entities unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in this Complaint adverse to Plaintiff's title, or any cloud upon Plaintiff's title thereto" and Defendants claimed that no party could claim to be a valid current holder of their Deed of Trust. (Comp. Ex.5.)   Defendants recorded a Lis Pendens on May 16, 2012. (Id.) Defendants gave *no* NOTICE of the state court Quiet Title action to Plaintiffs pursuant to CCP§762.010.

Defendants received a judgment of Quiet Title against Defendant UNITED PACIFIC and "ALL PERSONS OR ENTITIES UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THIS COMPLAINT ADVERSE TO PLAINTIFF'S TITLE OR ANY CLOUD UPON PLAINTIFF'S TITLE THERETO." (Comp. Exs.1&5.)  Pursuant to the

---

[3] Mortgage used to mean mortgage and deed of trust.
[4] Defendants currently make their mortgage payment to NATIONSTAR.

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

judgment, the recorded DEED OF TRUST that was the subject of the Complaint (Los Angeles County Recorder doc. # 050342544) was ordered expunged. (Id.) Defendants also recorded the state court judgment and order (doc. # 20130621913) on April 25, 2013. (Comp. Ex.4.)

Plaintiffs conclude in their FAC that NOTICE in the Quiet Title action was defective, but the state court docket shows that NOTICE by publication was granted and given.[5] (FAC ¶65.)  Plaintiffs did not seek to have MERS joined to Defendants' Quiet Title Action and Plaintiffs continue to represent MERS' interests only, not those of any purported beneficiary or UNITED PACIFIC. (FAC ¶69.)

## III.   SUMMARY OF THE FIRST AMENDED COMPLAINT

### A. JURISDICTION

Plaintiffs claim original jurisdiction under 28 U.S.C. §1331 based on Violation of Due Process as protected by the Fifth and Fourteenth Amendments to the U.S. Constitution and supplemental jurisdiction to hear Plaintiffs' state law claims that arise out of a common nucleus of operative fact. (FAC ¶5.)  Plaintiffs claim Diversity Jurisdiction since Defendants reside in California and Plaintiffs' corporate home is Delaware, their principal place of business in the Commonwealth of Virginia, and the amount in controversy exceeds seventy-five thousand dollars ($75,000).  (FAC ¶9.)

---

[5] *Robinson v. United Pacific Mortgage* (LASC case no: PC052281): January 24, 2013 Defendants applied for and received an Order for Publication; March 11, 2013 Defendants filed Proof of Publication having provided NOTICE by publication; April 8, 2013 a default against Union Pacific Mortgage and … was entered; April 12, 2013 prove-up hearing conducted.

**B. <u>STANDING</u>**

Plaintiffs assert standing for their business model MERS based on, but not limited to, California Code of Civil Procedure §762.010 which states:

"The Plaintiff shall name as defendants in the action the persons having adverse claims to the title of the plaintiff against which a determination is sought." (FAC ¶38.)

Plaintiffs also claim standing due to a MERS membership agreement which grants them "an interest or lien" against Defendants' property *and* due to being named as "Beneficiary" on Defendants' Deed of Trust which Plaintiffs allege makes them "mortgagee of record" with all powers of the beneficiary. (FAC ¶26.)

**C. <u>ALLEGATIONS</u>**

Plaintiffs FAC alleges that Defendants' Deed of Trust entitles Plaintiffs to "a legal or equitable right," "title," "an estate," "a lien," "an interest in property," and "a cloud on title" (FAC ¶14.)   Plaintiffs allege "…that document ***expressly grants*** a security interest in the subject property to MERS as beneficiary/mortgagee as nominee for the lender and the lenders successors and assigns." (FAC ¶27.)  Plaintiffs allege that the wording on Defendants' DEED OF TRUST, along with Plaintiffs' MERS membership agreement grants Plaintiffs a due process right because members ***"intend"*** for MERS to

receive service of process and members "contract with" MERS to "hold their security

interest for this purpose." (FAC ¶s31&32.)

Plaintiffs allege that they "claimed an interest" in Defendants' property at the time

that Defendants' filed their state court action. (FAC ¶14.)  Plaintiffs allege that from the

recording of Defendants' DEED OF TRUST through the Quiet Title judgment, Plaintiffs

held "legal title to the beneficial interests in the Deed of Trust as beneficiary on behalf of

and as nominee of the successive owners of the Note, including U.S. Bank." (FAC ¶53.)

Plaintiffs allege that the Judgment of Quiet Title and Expungement of the Deed of Trust

(Los Angeles County Recorder doc. # 20130621913) is VOID because they were not

properly noticed "as required by law." (FAC ¶92.)

**D. <u>DEMANDS</u>**

1.  <u>DECLARATORY RELIEF</u>

Plaintiffs seek a declaration that Defendants' Quiet Title judgment is VOID and

that Defendants have title subject to the (expunged) deed of trust to UNITED PACIFIC.

(FAC ¶3.)

2.  <u>CANCELLATION OF INSTRUMENTS</u>

Plaintiffs seek Cancellation of the Quiet Title Judgment and Expungement of the

Deed of Trust and Lis Pendens (doc. # 20120731667) recorded April 25, 2013. (FAC

¶s103-105.)

//

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

3.  <u>CONSTITUTIONAL RIGHTS</u>

Plaintiffs request this court uphold MERS' Constitutional right of due process pursuant to CCP §762.010 or, in the alternate, declare that CCP §762.010 is unconstitutional. (FAC ¶s1-2)

4.  <u>ATTORNEY FEES & DAMAGES</u>

Plaintiffs request punitive and exemplary damages claiming Defendants acted "with reckless disregard for the Plaintiffs' rights" and that Plaintiffs have "a reasonable apprehension that if the instruments are left outstanding, they will be harmed as the property may be transferred, sold, or otherwise encumbered." (FAC¶104.) Plaintiffs seek attorney fees pursuant to 42 U.S. Code §1988 because Defendants "acted in concert with the state court to obtain clear title to the Property in violation of MERS' rights and thus the Quiet Title Action and Judgment entered therein constitute state acts. (FAC ¶100, p.32¶5.)

**IV.   ISSUES**

**A. <u>DUE PROCESS RIGHTS FOR THE MERS BUSINESS MODE</u>**

1.  <u>MERS BUSINESS MODEL DOES NOT CREATE TITLE</u>

Plaintiffs' MERS business model includes a voluntary computer registry created by Plaintiffs, the servicers, to facilitate securitization and track servicing rights. (FAC ¶s 25-27.) Plaintiffs' MERS business model includes the MERS mortgage with language making MERS "beneficiary" or "nominee" by which Plaintiffs claim to act as "holder of

the beneficiary interest for the current note holder." (FAC ¶14.)  Plaintiffs' MERS

business model also includes a "membership agreement" which beneficiaries sign which

states that MERS will appear as the "mortgagee of record" and as "nominee of the note

owner and its successors and assigns." (FAC ¶26.)

Plaintiffs claim that the MERS business model was created because of the public's

need for MERS. (FAC ¶s 24-25.)  Plaintiffs allege that "problems" in the existing public

recording system led them to create their MERS business model which has fixed the

mistakes and cleared up title. (FAC ¶25-28.)  Plaintiffs allege that MERS saves

borrowers the passed-on cost of recording fees *and* helps title companies give title

opinions. (FAC ¶s 33-34.)

"MERS and the MERS@ System have eliminated the need to scour land

records (at least for properties with MERS as the recorded beneficiary) in

search of multiple assignments that may have been filed incorrectly or not

filed at all. This has facilitated title companies' ability to efficiently and

accurately provide lien releases and title opinions, to the benefit of real

estate purchasers." FAC ¶33.)

In reality Plaintiffs' MERS business model benefits its corporate owners (the

servicers) while passing the risk and cost of clouded title onto the beneficiary, the title

holder, and all subsequent purchasers. Pursuant to their MERS business model Plaintiffs

record ASSIGNMENTS only in anticipation of foreclosure and these "after-the-fact" ASSIGNMENTS are often inaccurate as when US BANK sold Frank Bevilacqua a property *before* receiving a recorded ASSIGNMENT.  *Bevilacqua v. Rodriguez*, 460 Mass. 762, 955 N.E.2d 884, 2011 Mass. LEXIS 918 (Mass. 2011).  Mr. Bevilacqua neglected to "scour the land records" prior to purchasing his property at auction from US BANK and then could not quiet title on a property he did not own. *Id.*

2.  <u>THE MERS BUSINESS MODEL CANNOT RECONCILE TITLE</u>

In response to complaints by county officials, on April 5, 2001 New York's Attorney General issued Informal Opinion No. 2001-2 stating that county clerks were not obligated to record a MERS mortgage if MERS was not the actual mortgagee.[6]  On the basis of Informal Opinion No. 2001-2, Suffolk County Recorder Ed Romaine began refusing to record Plaintiffs' MERS mortgages in 2001. *Merscorp, Inc., v. Romaine*, 295 A.D.2d  431, 432, 743 N.Y.S.2d 562 (2002).  Romaine had a duty, under New York Real Property Law §291, to record all mortgages that were "duly acknowledged and accompanied by the proper fee," but Romaine cited conflict with New York Real Property Law §316(a)(1) which required indexing in the county records by mortgagor and mortgagee. *Id* at 433.  Based on New York Real Property Law §316(a)(1) Romaine refused to record a MERS mortgage unless MERS was, in fact, the mortgagee. *Id.*

---

[6] "County Clerks have no obligation to record Mortgage Electronic Recording Systems (MERS) as the mortgagee of record where MERS is not the actual mortgagee. Doing so (1) violates the terms of N.Y. Real Property Law § 316, and (2) tends to frustrate the legislative intent of the Real Property Law's recording provisions." 2001 N.Y. Op. Atty Gen. 1010, 2001 N.Y. AG LEXIS 2.

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Romaine's argument was similar to the courts in *In Re Agard* where US BANK attempted to intervene as a secured creditor after receiving an ASSIGNMENT from MERS "as the nominee of the original lender" and the debtor challenged MERS' right to ASSIGN. *In re Agard*, 444 B.R. 231, 235 (U.S. 2011). Although the Court was bound by the *Rooker Feldman Doctrine* and *res judicata* to honor the state court's foreclosure judgment, and grant the rights of a secured creditor to US BANK, the Court set forth it's analysis of why MERS did not have the authority to own or ASSIGN mortgages, or to receive relief from the automatic stay as a creditor under its "current business practices." *Id* at 256. The court held that MERS did not have the authority to own or ASSIGN mortgages, or to receive relief from the automatic stay as a creditor, because MERS took no part in the ASSIGNMENT of the Promissory NOTE, but merely provided a database which allowed members to electronically self-report. *Id.* at 246.

Title requires a creditor to have a legally cognizable priority interest, but Romaine argued that the fictional MERS mortgage itself prohibited this and clouded title because the mortgage could not be indexed according to the actual mortgagee pursuant to New York Real Property Law §316(a)(1). *Merscorp, Inc., v. Romaine*, 8 N.Y.3d 90, 861 N.E.2d 81, 828 N.Y.S.2d 266 (N.Y. 2006). Plaintiffs complain that if Defendants' Quiet Title is allowed to stand it would render "**millions of loans worth billions of dollars** in California unsecured," but the Court in *Agard* pointed out that the MERS business

model itself is the cause of lost security by splitting the deed from the Promissory NOTE. (FAC ¶84.):

> "While it is generally true that a mortgage travels a parallel path with its corresponding debt obligation, the parties in this case have adopted a process which by its very terms alters this practice where mortgages are held by MERS as "mortgagee of record."  By MERS's own account, the Note in this case was transferred among its members, while the Mortgage remained in MERS' name.  MERS admits that the very foundation of its business model as described herein requires that the Note and the Mortgage travel on divergent paths." *Agard* at 247.

The court in *Agard* laid out the fallacy of the MERS business model, the fallacy that the deed and NOTE could ever be joined again by Plaintiffs to create clear title:

> "The Movant's failure to show that U.S. Bank holds the note should be fatal to the Movant's standing.  However, even if the Movant could show that U.S. Bank is the holder of the note, it still would have to establish that it holds the mortgage in order to prove that it is a secured creditor with standing to bring this Motion before this Court.  The Movant urges the Court to adhere to the adage that a mortgage necessarily follows the same

path as the note for which it stands as collateral.  *See Wells Fargo Bank, N.A., v. Perry*, 875 N.Y. S. 2d 853, 856 (N.Y. Sup. Ct. 2009).  In simple terms the Movant relies on the argument that a note and mortgage are inseparable. *See Carpenter v. Longan,* 83 U.S. 271, 274 (1872). *Agard* at 246-247.

In *Merscorp Inc. v. Romaine* Plaintiffs claimed that irreparable harm would come to their "business operation," as well as "to the mortgage lending industry," and "to the general public" if Romaine was not compelled to record their mortgages. *Id.* At the time (May 1, 2001) sixteen thousand (16,000) MERS mortgages had been recorded. *Id.* The NY Court of Appeals *compelled* Romaine to record MERS mortgages while acknowledging they clouded title:

"…although the Clerk must record and index the MERS mortgage when presented, the Clerk may refuse to record a MERS assignment and discharge, because those instruments violate the "factual mandates" of section 321 (3) of the Real Property Law." *Merscorp, Inc., v. Romaine*, 8 N.Y.3d 90, 861 N.E.2d 81, 828 N.Y.S.2d 266 (N.Y. 2006)

Having subverted the recording system, Plaintiffs must now show that they at least have standing as the nominee of the ASSIGNED beneficiary of the mortgage, as well as the holder of the Promissory NOTE, but their MERS business model cannot

accomplish this.  Plaintiffs did not amend to name a beneficiary, and they continue to argue the MERS fiction, because they can't prove they are acting on behalf of either of these entities, let alone both. *See: U.S. Bank National Ass'n v. Ibanez*, 941 N.E. 2d 40 (Mass.2011) (holding that a pair of foreclosure sales were invalid because the foreclosing banks were not the mortgagees of record at the time of the foreclosure sale); *see also: Bevilacqua,* supra at 898 holding that the foreclosing bank did not hold title at the time of foreclosure sale; *see also: Eaton v. Fed. Nat'l Mortg. Assn,* 969 N.E.2d 1118, 1134 (Mass.2012) (holding that a foreclosure sale was invalid because the foreclosing bank did not hold the Promissory NOTE at the time of sale.)

## B. <u>CALIFORNIA CCP §762.010 IS CONSTITUTIONAL</u>

### 1. <u>DEFENDANTS ARE THE ONES DEPRIVED OF PROPERTY</u>

Defendants' recordation of Plaintiffs' mortgage clouded title on the Romar property because UNITED PACIFIC was a "straw-man" beneficiary that did not finance the Romar property. (FAC ¶65.) The MERS mortgage that Defendants signed said that their loan could be sold, but it contained no warning to Defendants that the real lender was a line of credit from an investment firm and the mortgage itself clouded a title. (Comp. Ex.1.)  Defendants were deprived of property when they paid *three-hundred-eighty-five thousand dollar ($385,000) down-payment* and received a mortgage that clouded title. Defendants are the ones that had to hire an attorney to help them quiet title and Defendants were the ones with a reasonable apprehension that if left outstanding

---

their DEED OF TRUST would have caused them harm since the clouded title would remain even after satisfaction of the NOTE. (FAC¶55.)

## 2. PLAINTIFFS CONFUSE CONSTITUTIONALITY WITH COST

Plaintiffs here assert a Constitutional right to due process for their MERS business model pursuant to CCP §762.010 that is based not in statute or caselaw or actual ownership, but rather derives from terms and conditions in a MERS membership agreement. (FAC ¶s26-27.)  It is far-fetched to assert that CCP §762.010 is unconstitutional because it does not require NOTICE to the MERS registry which Plaintiffs unilaterally created to circumvent the recording statutes and the fees involved. There is no constitutional right to save money.

## 2. PLAINTIFFS CONTINUE TO ARGUE FORM OVER SUBSTANCE

Maintaining MERS did nothing wrong, Plaintiffs claim that they have not improperly avoided the payment of recording fees since the security interest stayed with them so there was nothing to record. (FAC ¶30.)  Plaintiffs focus on the discretionary nature of the recording statutes and cite *Lawler v. Gleason* for the proposition that recordation has nothing to do with (chain of) title. (FAC ¶17.)  *Lawler v. Gleason*, 130 Cal. App. 2d 390, 279 P.2d 70 (1955) ("Recordation is a device to establish priority, but has nothing to do with conveying title.") Plaintiffs' argument is specious and diversionary since standing requires a party to have a legally cognizable interest in the

mortgage which is achieved by recording in our priority system.[7] Recording is voluntary, priority is not.

Plaintiffs also claim that a Promissory NOTE is a negotiable instrument, not an interest in real property, and concurrently Plaintiffs argue that the Uniform Commercial Code, as adopted by California, does not require that a negotiable instrument be recorded in the land records. (FAC ¶19.)   This is another specious and diversionary argument that is technically true but also meaningless. The promissory NOTE and the mortgage exist together, the debt obligation being represented by the NOTE, the real property being secured as collateral by the mortgage which is recorded.  The Promissory NOTE is a negotiable instrument, but it remains secured by the mortgage and the two must exist together. *See: Carpenter v. Longan,* 83 U.S. 271, 274 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.")

Plaintiffs argue that Code of Civil Procedure §760.010 does not "quantify the amount" or "qualify the type" of legal or equitable right, title, estate, lien, or interest in property necessary to hold a recorded "claim" adverse to the Robinsons which intentionally distorts the substance of the statute which applies to title holders and

---

[7]  Cal. Civ. Code §1214:  Every conveyance of real property or an estate for years therein, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

beneficiaries as described herein. (FAC ¶87.)  Plaintiffs argue that their claimed interest

was "an objective claim," that it was "against the title" of Defendants Romar property

and that "under the plain terms of the statute" Defendants were required to join MERS

as a Defendant, but "against the title" and "objective claim" are terms that mean nothing

here. (FAC ¶88.).  The "plain terms of the statute" require Plaintiffs to be beneficiaries

with an "adverse interest" which they are not. CCP §762.010.

## IV.   ARGUMENTS FOR MOTION TO DISMISS

### A. PLAINTIFFS FAIL TO STATE A CLAIM FRCP 12(b)(6)

Dismissal of Plaintiffs' complaint is appropriate pursuant to Fed. R. Civ. P.

12(b)(6) because Plaintiffs have failed to state a cause of action based on their lack of

standing.  The question presented by a motion to dismiss is not whether a plaintiff will

prevail in the action, but whether the plaintiff is entitled to offer evidence in support of

the claim.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) overruled on other grounds by

*Davis v. Scheuer*, 468 U.S. 183 (1984).  While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

provide the "grounds" of his "entitle[ment] to relief" requires more than labels and

conclusions….  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-

65, 167 L. Ed. 2d 929 (2007).

A complaint may fail to show a right to relief either by lacking a cognizable legal

theory or by lacking sufficient facts alleged under a cognizable legal theory.  *Balistreri*

*v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. Cal.1990).  Here Plaintiffs present

a legal theory that they are a beneficiary, but this is an unwarranted legal conclusion, not

a fact.  The Court must accept all factual allegations in the complaint as true, but the

Court is "not bound to accept as true a legal conclusion couched as a factual allegation."

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (U.S. 2009).

### B. **PLAINTIFFS LACK STANDING**

Defendants' complaint should be dismissed pursuant to <u>Fed. R. Civ. P. 17(a)</u>

because this complaint has not been brought by the real party(s) in interest.

Plaintiffs do not meet the three elements of standing which are: 1) an "injury in

fact" – an invasion of a legally protected interest which is (a) concrete and

particularized, and (b) "actual or imminent" not "conjectural" or "hypothetical;" 2) a

causal connection between the injury and the conduct complained of – the injury has to

be "fairly … trace[able] to the challenged action of the defendant, and not … the result

[of] the independent action of some third party not before the court;" and 3) it must be

"likely" as opposed to merely "speculative," that the injury will be "redressed by a

favorable decision."  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (U.S. 1992).

Plaintiffs' revenue comes from fees and they suffer no injury-in-fact by Defendants'

Quiet Title. *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1156

(Cal. App. 4th Dist. 2011.).  Even though they are named "beneficiary" they act as agent

for the lender not for their own interests. *Fontenot v. Wells Fargo Bank, N.A*., 198 Cal.

App. 4th 256, 273 (Cal.App.1st Dist.2011); *see also: Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 2011 (9th Cir. Ariz. 2011) ("[M]ERS cannot foreclose because it does not have an independent interest in the loan because it functions solely as a nominee." (quoting: *Mortgage Elec. Registration Sys. v. Saunders*, 2 A.3d 289, 294-97, (Me. 2010))).

Plaintiff MERS does not have standing to bring a suit in its own name against a borrower. *See*:  *James v. ReconTrust Co.*, 845 F. Supp. 2d 1145, 1155 (D. Or. 2012) (holding that MERS was not a beneficiary within the meaning of the Oregon Trust Deed Act, Or. Rev. Stat. §86.705(2) but was solely the agent of the noteholder.); *Mortgage Elec. Registration Sys. V. Saunders*, 2010 ME 79, 2A.3d 289, 295  (ME.2010) (holding that MERS's only right is the right to record the mortgage and that it's designation as "mortgagee of record" on a document does not change or expand that right and therefore MERS does not qualify as a mortgagee pursuant to Maine foreclosure statute 14 M.R.S. §§6321-6325.); *Weingartner v. Chase Home Finance, LLC*, 702 F.Supp.2d 1276, 1280 (D. Nev. 2010) (holding that MERS's identification as a beneficiary on a deed of trust does not confer beneficiary status.) In seeking to avoid legal responsibility themselves, Plaintiffs have taken a similar position, claiming legal title *only* as a nominee contractually prohibited from exercising any rights without the authorization of the actual beneficiary. *Mortg. Elec. Registration Sys. v. Neb. Dep't of Banking & Fin.*, 270 Neb. 529, 533 (Neb. 2005).

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*Black's Law Dictionary* defines "mortgagee" as "[o]ne to whom property is mortgaged; the mortgage creditor, or lender." *Black's Law Dictionary* (9th ed. 2009). Plaintiffs state no facts to show that they are a creditor or a lender.  Plaintiffs did not fund Defendants' loan nor purchase it from a prior beneficiary.  Defendants never made their mortgage payments to Plaintiffs and Plaintiffs claim no right to collect payments. If Plaintiffs were to declare bankruptcy, no creditor could claim Defendants' property because it was an asset of Plaintiff MERS.  Plaintiffs' claim of ownership, and of the rights of a beneficiary with status as a party in interest, is a fiction.

## C. <u>PLAINTIFFS ARE IN AN IMPROPER VENUE</u>

Dismissal of Plaintiffs complaint is also appropriate based on improper venue pursuant to <u>Fed. R. Civ. P. 12(b)(3)</u> since Plaintiffs' Due Process claim as well as their Diversity Jurisdiction claim rests on Plaintiffs' allegation that they are the real party(s) in interest.  As detailed herein, this is conclusion not fact.  Despite the fact that Defendants did not serve NOTICE to Plaintiffs of their state court Quiet Title action, the state court was the proper venue for the beneficiary's claims where Plaintiffs should have represented themselves as "agent" or "nominee.[8]"

//

//

---

[8] See FN 1

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

### D. **PLAINTIFFS LACK SUBJECT MATTER JURISDICTION**

Plaintiffs' complaint should finally be dismissed for lack of subject matter jurisdiction pursuant to <u>Fed. R. Civ. P. 12(b)(1)</u> since a due process claim can only be brought by a party at interest.

Federal courts are presumptively without jurisdiction over civil action and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511U.S. 375, 377, 114 S.Ct. 1673, 1677 (U.S.1994). Federal Courts can adjudicate only those cases which the Constitution and Congress authorize them to adjudicate: basically those involving diversity of citizenship, or a federal question, or to which the U.S. is a party. *Id.* If the court decides that Plaintiffs are not a party at interest, they cannot assert diversity jurisdiction or a violation of their due process rights pursuant to the Federal Constitution.

### V.    **DAMAGES**

### A. **ATTORNEY FEES – 42 U.S. CODE §1988**

Under §1988 a trial court "in its discretion may allow the prevailing party … a reasonable attorney's fee." 42 U.S. Code §1988(b). The purpose under 42 U.S. Code §1988 is to ensure effective access to the judicial process for persons with civil rights grievances. *Hensley v. Eckerhart,* 42 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, p.1 (1976). A prevailing defendant can win attorney's fees under § 1988 if it can prove that a plaintiff's claim is frivolous, groundless, or vexatious. See *Christiansburg*

*Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) ("a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, and without foundation, even though not brought in subjective bad faith"); see also *Hughes v. Rowe*, 449 U.S. 5 (1980) (adopting same standard for successful §1983 defendants).

## B. DEFENDANTS ARE ENTITLED TO ATTORNEY FEES

Defendants had no NOTICE of ASSIGNMENT of their DEED OF TRUST since there were no recorded ASSIGNMENTS.  MERS is not a lender or a beneficiary and no federal civil or bankruptcy court has granted the MERS business model beneficiary rights. Plaintiffs FAC is vexatious since they have repeated the same demand despite leave to amend to add a beneficiary.

## VI.   CONCLUSION

The "foreclosure crisis" refers to the estimated seven-million (7,000,000) or more homes have been sold in foreclosure or distressed sales since 2007.[9] Plaintiffs' MERS business model coincides with this crisis since Plaintiffs business model promotes foreclosure as the last cash-flow in Plaintiffs' MERS business plan.  Foreclosure is the most lucrative of all the MSRs that Plaintiffs acquire as servicers because it allows Plaintiffs to sell property with impunity despite clouded title.

---

[9] Adam J. Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title,* Duke Law Journal Vol. 63 at 639 (2013).

Chain of Title Comes from recording which creates a priority of liens and provides a beneficiary with standing. Having avoided recording with a fictional *claim* of title, and having thereby clouded title on millions of MERS mortgages, Plaintiffs now seek to turn their MERS fiction into reality with the constitutional right of a beneficiary to due process pursuant to CCP§762.010.   Confusing their own monetary interests with those of the public, Plaintiffs put forth the ultimate form over substance argument which is that their MERS business model is the only way to fix the damage their MERS business model has created.  Better to remember that the damage did not arise because of a failure of our existing system, but because Plaintiffs found the existing law inconvenient and disregarded it.


                                    Respectfully submitted,


Dated:   March 24, 2014              ADVOCATE LEGAL

                                     By:  /s/  Susan M. Murphy                  .
                                        Susan M. Murphy
                                     Attorney for Plaintiffs
                                     DANIEL and DARLA ROBINSON