1  J. OWEN CAMPBELL (State Bar No. 229976)
   joc@severson.com
2  SEVERSON & WERSON
   A Professional Corporation
3  The Atrium
   19100 Von Karman Avenue, Suite 700
4  Irvine, California 92612
   Telephone: (949) 442-7110
5  Facsimile: (949) 442-7118

6  MARY KATE SULLIVAN (State Bar No. 180203)
   mks@severson.com
7  SEVERSON & WERSON
   A Professional Corporation
8  One Embarcadero Center, Suite 2600
   San Francisco, California 94111
9  Telephone: (415) 398-3344
   Facsimile: (415) 956-0439

10
11 JOANN T. SANDIFER (pro hac vice)
   Joann.sandifer@huschblackwell.com
   HUSCH BLACKWELL LLP
12 190 Carondelet Plaza
   Suite 600
13 Telephone: (314)480-1500
   Fascimilie: (314) 480-1505Attorneys for
14 Plaintiffs

15 MORTGAGE ELECTRONIC
   REGISTRATION SYSTEMS, INC. and
16 MERSCORP HOLDINGS, INC.

17

18            **UNITED STATES DISTRICT COURT**

19    **CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

| | |
|---|---|
| 20 MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.,<br>and MERSCORP HOLDINGS, INC., | Case No. 2:13-cv-07142 PSG (ASx)<br>Hon. Philip S. Gutierrez<br>Ctrm. 880 |
| 21  Plaintiffs, | **OPPOSITION TO MOTION TO DISMISS AMENDED PETITION** |
| 22  vs. | Date:   May 19, 2014<br>Time:   1:30 p.m.<br>Crtrm.:  880 |
| 23 DANIEL W. ROBINSON and<br>24 DARLA J. ROBINSON, | |
| 25  Defendants. | Action Filed:  September 26, 2013<br>Trial Date:   None Set |

26

27

28

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

FACTS ............................................................................. 2

    A.    MERS and the MERS® System ................................. 2

    B.    The Deed of Trust ................................................... 4

    C.    Defendants' State Court Judgment ............................ 5

STANDARD OF REVIEW ..................................................... 6

ARGUMENT ...................................................................... 7

    I.    MERS Had a Statutory And Constitutional Right To Notice .............. 7

        A.    The Statute Requires Joinder Of Parties Claiming An Interest Adverse to Plaintiffs' Asserted Title ............................ 7

        B.    Due Process Required Notice to MERS ......................... 12

    II.    MERS Is A Real Party In Interest With Standing To Prosecute This Lawsuit ........................................................ 15

        A.    MERS Has Standing As A Nominee Of The Lender And Its Assigns .......................................................... 15

        B.    MERS Has Standing As A Beneficiary With The Right To Enforce the Security Instrument ............................ 21

        C.    MERS Has Standing To Challenge The Quiet Title Judgment Because That Judgment Adversely Affects MERS' Business ................................................... 22

    III.    The Robinsons' Other Arguments Are Irrelevant .............. 24

CONCLUSION ................................................................. 25

i

OPPOSITION TO MOTION TO DISMISS AMENDED PETITION

SLC-7205125-3

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agard v. Select Portfolio Servicing, Inc.,*
  2012 WL 1043690 (E.D.N.Y. 2012) ..................................................24

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007).............................................................................7

*Benson v. Ocwen Loan Servicing, LLC,*
  14 WL 962022 (9th Cir. 2014) ..........................................................22

*Board of Regents of State College v. Roth,*
  408 U.S. 564 (1972)............................................................................14

*Calvo v. HSBC Bank USA, N.A.,*
  199 Cal. App. 4th 118 (2d Dist. 2011) ...............................................17

*Castle Rock v. Gonzales,*
  545 U.S. 748 (2005)............................................................................14

*Cervantes v. Countrywide Home Loans, Inc.,*
  656 F.3d 1034 (9th Cir. 2011) ...........................................................18

*Citimortgage, Inc. v. Barabas,*
  975 N.E.2d 805 (Ind. 2012) ...............................................................19

*Delo v. GMAC Mortgage, L.L.C.,*
  302 P.3d 658 (Ariz. App. 2013) ....................................................19, 20

*Deutsche Bank Nat. Trust Co. v. McGurk,*
  206 Cal.App.4th 201 (2012) .............................................................8, 9

*Doe v. U.S.,*
  419 F.3d 1058 (9th Cir. 2005) .............................................................7

*Flagstar Bank, FSB v. Lone Pine Capital LLC,*
  No. 04781 EQCV 109513
  (Iowa Dist. Ct. Pottawattamie County Oct. 14, 2013) ......................20

*Fontenot v. Wells Fargo Bank, N.A.,*
  198 Cal. App. 4th 256 (1st Dist. 2011)...................................15, 17, 21, 22

ii

2:13-cv-07142 PSG (ASx)
OPPOSITION TO MOTION TO DISMISS AMENDED PETITION

SLC-7205125-3

*Fuentes v. Shevin,*
    407 U.S. 67 (1972)............................................................................14

*Gerhard v. Stephens,*
    68 Cal.2d 864 (1968)......................................................................8, 9

*Gomes v. Countrywide Home Loans, Inc.,*
    192 Cal. App. 4th 1149 (2011)........................................................17

*Hamdi v. Rumsfeld,*
    542 U.S. 507 (2004)........................................................................12

*Hamlin v. Harps,*
    No. 4:07-cv-00066-JBF-FBS (E.D. Va. 2007)................................20

*Herrara v. FNMA,*
    205 Cal. App. 4th 1495 (4th Dist. 2012).....................................17, 22

*Hollins v. Recontrust, N.A.,*
    2011 WL 1743291 (C.D. Cal. 2011)...............................................22

*In re Agard,*
    444 B.R. 231 (Bkrtcy E.D.N.Y. 2011)............................................24

*James v. ReconTrust Co.,*
    845 F. Supp. 2d 1145 (D. Or. 2012)............................................18, 19

*Landmark Nat. Bank v. Kesler,*
    216 P.3d 158 (Kan. 2009)............................................................20, 21

*Lassman v. Quicken Loans, Inc.,*
    No. 13-cv-1405-FJB (Bankr. D. Mass.  April 25, 2014).................20

*Louisville Joint Stock Land Bank v. Radford,*
    295 U.S. 555 (1935).........................................................................13

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, S.Ct. 2130 L.Ed.2d 351 (1992) ...............................23

*Macon County v. MERSCORP, Inc.,*
    742 F.3d 711 (7th Cir. 2014).............................................................3

iii

OPPOSITION TO MOTION TO DISMISS AMENDED PETITION

SLC-7205125-3

*Mennonite Board of Missions v. Adams*,
    462 U.S. 791 (1983)..................................................................12, 14

*Merscorp, Inc. v. Romaine*,
    861 N.E.2d 81 (N.Y. 2006)................................................................24

*Metlife Home Loans v. C.T. Hansen*,
    286 P.3d 1150 (Kan. Ct. App. 2012)................................................20

*Metropolitan Regional Information Systems, Inc. v. American Home Realty
    Network, Inc.*,
    888 F.Supp.2d 691 (D. Md. 2012)....................................................23

*Morgera v. Countrywide Home Loans, Inc.*,
    2010 WL 160348 (E.D. Cal. 2010) ..................................................18

*Mortgage Elec. Registration Sys., Inc. v. Bellistri*,
    2010 WL 2720802 (E.D. Mo. 2010) ...............................4, 12, 13, 23

*Mortgage Elec. Registration Sys., Inc. v. Murphy*,
    No. CGC-08-473479
    (Cal. Super. Ct. San Francisco County Aug. 2, 2010) ...............17, 18

*Nevada ex rel. Bates v. Mortgage Electronic Registration System, Inc.*,
    2012 WL 4058052 (9th Cir. 2012)......................................................4

*Newman v. Cornelius*,
    3 Cal. App. 3d 279 (5th Dist. 1970) .................................................12

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)..........................................................................13

*Renkemeyer v. Mortgage Elec. Registration Sys. Inc.*,
    2010 WL 3878582 (D. Kan. 2010)....................................................21

*Schwab Corp. v. Banc of America Securities LLC*,
    2011 WL 864978 (N.D. Cal. 2011) ..................................................16

*Siliga v. Mortgage Electronic Registration Systems, Inc.*,
    219 Cal. App. 4th 75 (2d Dist. 2013) ...................................17, 22, 25

iv

*Sprint Communications Co. v. APCC Services, Inc.*,
   554 U.S. 269 (2008)..................................................................13, 15, 16, 25

*Tulsa Professional Collection Services, Inc. v. Popo*,
   485 U.S. 478 (1988)..........................................................................14

*U.S. Bank, N.A. v. Howie*,
   280 P.3d 225 (Kan. Ct. App. 2012).....................................................20

*Walters v. Fidelity Mortgage*,
   730 F. Supp. 2d 1185 (E.D. Cal. 2010).............................................9, 10

*Weingartner v. Chase Home Finance*,
   702 F.Supp. 2d 1276 (D. Nev. 2010)...................................................18

*Wolfe v. Strankman*,
   392 F.3d 358 (9th Cir. 2004) ...............................................................7

**STATUTES**

15 U.S.C.
   § 1641(g).........................................................................................4

28 U.S.C.
   § 1391(b)(1)....................................................................................25
   § 1391(b)(2)....................................................................................25

Cal. Gov't Code
   § 27280(a) (2010) .............................................................................4

Code Civil Proc.
   § 760.010 ...............................................................................7, 8, 13
   § 760.020 ........................................................................................7
   § 761.020 ........................................................................................8
   § 761.020(c) ....................................................................................7
   § 762.010 ...................................................................................1, 7
   § 762.050 ........................................................................................8
   § 764.010 ....................................................................................8, 12
   § 764.045 ....................................................................................8, 14
   § 2924 ..........................................................................................17

SLC-7205125-3

Kan. Stat.
    § 60-219(e) (2011) ................................................................................ 20

**OTHER AUTHORITIES**

Allen H. Jones, *Setting the Record Straight on MERS*, MORTGAGE BANKING,
    May 2011 ........................................................................................ 4

BLACK'S LAW DICTIONARY (8th Ed. 2004) ............................................ 15

Patrick C. Sargent and Mark W. Harris, *The Myths and Merits of MERS*, THE
    NATIONAL LAW REVIEW, Sept. 25, 2012,
    http://www.natlawreview.com/article/myths-and-merits-mers ............................ 4

WEBSTER'S NEW COLLEGIATE DICTIONARY (1981) ................................ 11

2:13-cv-07142 PSG (ASx)

OPPOSITION TO MOTION TO DISMISS AMENDED PETITION

SLC-7205125-3

### INTRODUCTION

Defendants Daniel and Darla Robinson borrowed $999,500.00, secured by a deed of trust on the real property they purchased.  With the aid of an unscrupulous lawyer, they decided to rid themselves of that deed of trust by filing a false and fraudulent action to quiet title.  The Robinsons knew that the original lender had transferred the note to U.S. Bank as trustee and they knew that MERS had recorded a claim against their title as nominee for the note owner.  Despite this knowledge, they deliberately refused to provide notice of the quiet title action to either MERS or U.S. Bank, naming only an entity they knew no longer had any interest in the note or deed of trust.  Based upon their false allegations, they obtained a default judgment quieting title and purporting to extinguish the deed of trust.

The failure to notify MERS makes the judgment void *ab initio*, both on statutory and on constitutional grounds.  CCP § 762.010 requires the plaintiff in a quiet title action to join as defendants all persons of record "having adverse claims to the title of the plaintiff," and due process requires no less.

The Court granted the Robinsons' motion to dismiss MERS' original complaint on the ground that MERS had no claim to title to the property, an issue not briefed by either party.  With all respect, MERS submits that the Court misunderstood the statute.  The only party to a quiet title action who arguably needs a claim *to* title is the plaintiff.  The defendants must include every person of record with a claim *adverse to* the plaintiff's title, and the statute defines "claim" broadly. As the record holder of the deed of trust, with the right to enforce the lien – including the right to foreclose – MERS has a claim against the Robinsons' asserted unencumbered title under the plain language of the California Code.  And it has constitutionally protected property rights.  Moreover, the statute requires joinder of parties that have a recorded "claim" against the property, not that the claim necessarily be meritorious.

OPPOSITION TO MOTION TO DISMISS AMENDED PETITION

SLC-7205125-3

1     For three separate reasons, MERS has standing to prosecute this case.  First,

2  the recorded deed of trust identifies MERS as the nominee – *i.e.,* agent – of the

3  current note owner. The Supreme Court has squarely held that such entities have

4  standing to sue, even if they have no beneficial interest in the result.

5     Second, the deed of trust identifies MERS as beneficiary and gives it the

6  power to foreclose.  A clear majority of the cases to consider the issue – and all of

7  them under California law – have held that this status gives MERS standing to

8  enforce the deed of trust.

9     Third, the judgment quieting title, if not set aside, will damage MERS'

10  business and property.  MERS® System members depend upon MERS to provide

11  them with timely notice of events that might affect their liens.  If MERS does not

12  receive the statutorily required notice – the same as any other agent identified in the

13  public land records on behalf of its principal – its business will be harmed.

14                    **FACTS**

15  **A.     MERS and the MERS® System**

16     Mortgage Electronic Registration Systems, Inc. ("MERS"), a wholly owned

17  subsidiary of MERSCORP Holdings, Inc., is the product of a cooperative endeavor

18  by agencies of the federal government and the lending industry to adapt 17th century

19  legal principles and 19th century statutes to 21st century technology.  These days,

20  most home mortgage loans are sold into a secondary market, sometimes more than

21  once.  A healthy secondary market for such loans is essential for the country's

22  prosperity.  First Amended Complaint ("FAC") ¶ 20.  The cause of the credit crisis

23  that started in the fall of 2008 was a freeze-up in that secondary market.

24     Before MERS, it was necessary for each successive debt purchaser to record

25  assignment of the corresponding security interest to a new agent for service of

26  process in the land records, an expensive and error-prone process that cost

27  borrowers hundreds of millions of dollars. FAC ¶¶ 23-24.  The solution was simple

28

and elegant:  appoint MERS as the common agent for the lender, its successors and assigns, and record that interest, thereby requiring notice to MERS of events, such as quiet title actions, that might affect the lender's security.  FAC ¶¶ 25-27.

A MERS deed of trust names MERS as the beneficiary, solely in its capacity as nominee for the lender, its successors and assigns.  FAC ¶ 27.  MERS has the right, as nominee or agent, to exercise any or all of the lender's interests under the deed of trust.  *Id.*  If the loan and or the servicing rights are transferred (which typically happens one or more times in the current mortgage industry), MERS will generally remain the beneficiary of record and those transfers will be tracked electronically through the MERS® System.  *Id.* ¶ 28-29.  As record beneficiary, MERS receives service of legal process for proceedings relating to the secured property.  MERS protects its members' interests by notifying the appropriate MERS® System member (note owner or loan servicing agent) or taking other appropriate action to protect the security interest.  FAC ¶¶ 35-37.  At this time, approximately 60% of the mortgages nationwide are registered on the MERS® System, which includes some 3.5 million active loans in California.  *Id.* ¶ 32.

Contrary to the Robinsons' overheated rhetoric, there is nothing shady or illegal about MERS' business model. The promissory note is a negotiable instrument, not an interest in real property. The law does not require (or generally even allow) successive transferees of a note to record the negotiation of that note. "[S]ubsequent assignees do not have a mortgage to record because they are assignees not of the mortgage held by MERSCORP – the property interest that secures the homeowner's debt – but just of the homeowner's promissory note." *Macon County v. MERSCORP, Inc.*, 742 F.3d 711,712 (7th Cir. 2014).[1]

---

[1]  The Robinsons' contention that MERS improperly circumvents recording requirements and associated fees is not accurate because, as noted in *Macon County*, the security interest does not change hands when the note is transferred.  Moreover, (footnote continued)

1        Nor does MERS cloud title or shield the identity of the note owner.  15 U.S.C.

2    § 1641(g) requires the transferee of a note secured by a mortgage to "notify the

3    borrower in writing of such transfer" not later than 30 days after the transfer.  (The

4    Robinsons do not dispute the receipt of these notices with respect to their

5    promissory note).  And when a loan is registered on the MERS® System, borrowers

6    have access to a toll-free number and an internet website that provide the identity of

7    the servicer, and in many cases, the beneficial owner of their mortgage loans.

8    MERS Home Page, http://www.mersinc.org.[2]  Long before MERS, and still today

9    for non-MERS mortgage loan transactions, loan servicing agents frequently hold the

10    record interest in security liens on behalf of the beneficial owners of the loans, in

11    exactly the same way that MERS does.  *Mortgage Elec. Registration Sys., Inc. v.*

12    *Bellistri*, 2010 WL 2720802 *6 (E.D. Mo. 2010).  *See also* FAC ¶ 22.

13    **B.    The Deed of Trust**

14        To fund their purchase of their home in Los Angeles, California (the

15    "Property"), the Robinsons obtained a loan represented by a promissory note in the

16    amount of $999,950.00 (the "Note").  FAC ¶ 45.  The loan was secured by a deed of

17    trust on the Property recorded on February 15, 2005 in the Los Angeles County land

18    records (the "Deed of Trust").  *Id.*  The "Lender" on the Deed of Trust was United

19    

---

20    there is no obligation to record any real property interest in California; recording is a
21    permissive tool for those seeking to put subsequent purchasers or claimants on
    notice of their property interests.  § 27280(a) (2010) Cal. Gov't Code.  The federal
22    courts have soundly rejected similar claims against MERS.  *See e.g., Nevada ex rel.*
23    *Bates v. Mortgage Electronic Registration System, Inc.,* 2012 WL 4058052 (9th Cir.
    2012).
24    
    [2]    The Robinsons' attacks on MERS' business model are further refuted by
25    Allen H. Jones, "Setting the Record Straight on MERS," MORTGAGE BANKING,
26    May 2011 and Patrick C. Sargent and Mark W. Harris, "The Myths and Merits of
    MERS,"    THE    NATIONAL    LAW    REVIEW,    Sept.    25,    2012,
27    http://www.natlawreview.com/article/myths-and-merits-mers.

28    

SLC-7205125-3

Pacific Mortgage. *Id.* ¶ 47. The Deed of Trust states that the "beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." *Id.* ¶¶ 48-49.

The Deed of Trust secures the repayment of the Loan and grants a power of sale over the Property. *Id.* ¶ 50. It further provides:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, *but not limited to*, the right to foreclose and sell the Property; and *to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument. Id.* (emphasis added).

The Robinsons agreed in the Deed of Trust that the Note secured thereby "can be sold one or more times without prior notice to Borrower" and that "the covenants and agreements of this Security Instrument shall bind . . . and benefit the successors and assigns of Lender." FAC ¶ 51.

Prior to January 11, 2012, the Note was transferred to U.S. Bank as the trustee for a securitized trust. *Id.* ¶ 52. This entity remained the owner of the Note at the time of the filing of the quiet title action and judgment referenced below. *Id.* Bank of America was the loan servicing agent of the Note for U.S. Bank. *Id.* U.S. Bank and Bank of America were at all relevant times members of the MERS® System and, pursuant to their membership agreements, they intended for MERS to receive notices of legal proceedings relating to the security interest and relied upon MERS to provide notice to them of any actions that might affect the validity of the Deed of Trust. *Id.* ¶¶ 54-55.

## C. Defendants' State Court Judgment

On January 11, 2012 the Robinsons filed a verified quiet title complaint in the Los Angeles County Superior Court and a Notice of Lis Pendens in the Los Angeles County land records. FAC ¶¶ 56-57. The case was filed for the sole and express purpose of eliminating the Deed of Trust; the complaint identified the Deed of Trust as the basis for adverse claims in the Property. *Id.* ¶¶ 58-59. The Robinsons sought

5

SLC-7205125-3

1 | an order vesting fee simple title in them "free and clear as to any securitization

2 | instrument and or any secured interest." FAC, Ex. 2, p. 7.

3 |     The Robinsons' failure to notify MERS of their quiet title action was no

4 | simple mistake—it was part of a scheme advertised by their attorney in that case to

5 | obtain quiet title judgments by default to enable secured borrowers to obtain

6 | "forecloseable proof" homes, "free and clear of any lien," without having to repay

7 | their debts. FAC ¶ 72-77. The Robinsons' lawyer advertises that he "takes

8 | advantage" of MERS' business model to nullify deeds of trust by filing quiet title

9 | actions that fail to name MERS or the current note owner. FAC ¶ 75-76. Instead,

10 | he names only the original lender who no longer has any interest in the loan. *Id.*

11 |     Consistent with that advertisement, the complaint identified U.S. Bank as

12 | owner of the note but did not join it. FAC ¶¶ 60, 64, 77. And though the Robinsons

13 | knew that MERS had a record claim against the title, they did not join MERS or

14 | give it any notice. *Id.* ¶ 64, 77; Motion at 3. The Robinsons' state court filings also

15 | contained a number of false and fraudulent allegations: that there was no debt

16 | owing on the property, even though the Note balance had increased to over one

17 | million dollars; that no one had any right, title or beneficial interest in the Deed of

18 | Trust; and that the Note has been paid in full. FAC ¶¶ 61-63; 67.

19 |     Based solely on this lack of notice, no one appeared to defend the security

20 | interest at the default hearing and the state court entered a default judgment that

21 | purports to expunge the Deed of Trust. FAC ¶ 69-71, 78. Had MERS received

22 | notice of the state court action, it would have defended the action and/or alerted the

23 | loan servicing agent or current Note owner that action needed to be taken to protect

24 | the security instrument. *Id.* ¶ 78. It did not have that opportunity.

25 | **STANDARD OF REVIEW**

26 |     This Court must construe the complaint in the light most favorable to the

27 | plaintiffs, taking all allegations as true and drawing all reasonable inferences from

28 |

the complaint in plaintiffs' favor.  *See, e.g., Doe v. U.S.*, 419 F.3d 1058, 1062 (9th Cir. 2005); *Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004).  So construed, the Court must deny the motion if the Complaint has "enough factual matter" to establish "plausible grounds" for recovery.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## ARGUMENT

### I.     MERS Had A Statutory And Constitutional Right To Notice.

This Court dismissed MERS' first complaint based upon its *sua sponte* conclusion that California only requires notice of quiet title actions to parties claiming fee title *to* the subject property.  Order at 5.  When properly examined, the express language of the statute – and the due process guarantees it is designed to protect – establish MERS' right to notice of the Robinsons' quiet title proceedings as a party with a claim *adverse to* the Robinsons' asserted title.

### A.     The Statute Requires Joinder Of Parties Claiming An Interest Adverse to Plaintiffs' Asserted Title.

A quiet title "action may be brought . . . to establish title *against claims to real or personal property*."  CCP § 760.020 (emphasis added).  The verified complaint must identify "[t]he *adverse claims to the title of the plaintiff* against which a determination is sought."  CCP § 761.020(c) (emphasis added).  The Code also requires that "[t]he plaintiff shall name as defendants in the action the persons having *adverse claims to the title of the plaintiff* against which a determination is sought."  CCP § 762.010 (emphasis added).  A "claim" is defined in the statute as "including a legal or equitable *right*, title, estate, *lien, or interest in property* or cloud upon title."  CCP § 760.010 (emphasis added).  The word "claim" is "intended in the broadcast [sic] possible sense."  (1980 Law Revision Commission Comments).

Any "person who has a claim to the property described in the complaint" may appear in the proceeding as a defendant; the court may not enter judgment by

default, but instead "shall in all cases require evidence of plaintiff's title and hear such evidence as may be offered respecting the *claims of any of the defendants*" and "shall render judgment in accordance with the evidence and the law." CCP §§ 764.010, 762.050 (emphasis added). The judgment entered in a quiet title action "does not affect *a claim in the property or part thereof* of any person who was not a party to the action" if either the claim was of record at the time the lis pendens was filed or was actually known to the plaintiff. CCP § 764.045 (emphasis added).

Under the plain terms of the statute, the only person who needs some type of claim to title is the plaintiff in the quiet title action.[3] But that plaintiff must name as defendants all parties who have "claims" ***adverse to*** the plaintiff's asserted title – *i.e.*, "all other persons who are known to the plaintiff to have some claim or cloud on the real property . . . adverse to plaintiff's ownership." *Gerhard v. Stephens*, 68 Cal.2d 864, 907 (1968). Such adverse claims are broadly defined to include any "legal or equitable" "right," "lien" or "interest" in the property or "cloud upon title." CCP § 760.010. MERS had a claim of record adverse to the Robinsons' claim of unencumbered fee title. The statute required them to join MERS and the failure to do so voids the judgment.

California courts have held that these statutes mean exactly what they say. In *Deutsche Bank Nat. Trust Co. v. McGurk*, 206 Cal. App. 4th 201 (2012), fraudfeasors who later went to jail tricked a woman out of title to her house. She sued them and the lender who had financed the sale to quiet title. The lender filed for bankruptcy and the plaintiff voluntarily dismissed it from the quiet title action. She obtained a judgment quieting title against the other defendants.

---

[3] The statute "does not require that the plaintiff claim a fee or other freehold interest in the property; any interest is sufficient." CCP § 761.020 (1980 Law Revision Commission Comments). If the plaintiffs in a quiet title action need not claim fee title, those to be joined as defendants certainly do not have to.

OPPOSITION TO MOTION TO DISMISS AMENDED PETITION

1        Thereafter, the lender transferred the note and assigned the deed of trust to

2 Deutsche Bank.  Deutsche Bank brought an action seeking a declaration that the

3 quiet title action had no effect on its deed of trust.  Neither the lender nor Deutsche

4 Bank asserted a claim to fee title to the property.  The Court nonetheless held that

5 the quiet title action did not bind those entities because neither was a party when

6 judgment was entered:

> 7     The quiet title statutes are clear that a quiet title action does not bind a party whose interest was of record prior to the filing of the lis pendens, nor does it
> 8     bind a non-party whose interest was actually known to the plaintiff at the time of the lis pendens.  As a result of its voluntary dismissal, New Century
> 9     became a non-party to the quiet title action.  New Century's interest was both
> 10     of record and known to McGurk prior to filing her lis pendens.  Thus, . . . the
> 11     quiet title judgment could not have bound it.

12 206 Cal. App. 4th at 212.  *Accord, Gerhard*, 68 Cal. 2d at 907-08 (quiet title

13 judgment did not extinguish oil, gas and mineral rights of known claimants "since

14 defendants failed to name them in the complaints and serve them with process").

15        The Court did not cite any authority for its conclusion that the only persons

16 entitled to notice are those that have a claim *to* title to the property, and MERS does

17 not believe that any exists.  Indeed, the very case the Court cited in its order,

18 *Walters v. Fidelity Mortgage*, 730 F. Supp. 2d 1185 (E.D. Cal. 2010), stands for

19 exactly the opposite proposition.

20        In *Walters*, MERS assigned its rights under the deed of trust to HSBC.

21 Walters claimed wrongful foreclosure based upon the servicing agents' alleged

22 wrongful conduct and filed an action to quiet title.  She named HSBC as a

23 defendant.  Denying HSBC's motion to dismiss, the court observed that the

24 beneficiary's power to cause a sale of the property, "is effectively a lien on the

25 property."

> 26     Here, if plaintiff prevails in her attempt to obtain a decree setting aside the trustee's deed and the parties are restored to the positions they held prior to
> 27     the sale, HSBC would potentially be the holder of a security interest in the

28

1     Property and may thus be an adverse claimant for the purposes of plaintiff's

2     quiet title claim.

3  730 F. Supp. 2d at 1199.

4     Any holding that a lienholder is not entitled to notice of a quiet title action

5  unless it has a claim to fee title flatly contradicts the plain language of the California

6  Code and would have an absolutely devastating effect the real property market in

7  California.  There are any number of persons with "interests" in land that do not

8  come anywhere close to claims to fee title: lessees, easement holders, lienholders,

9  or mineral interest holders, for example.  Under the holding in this Court's prior

10  ruling, all of these persons could be stripped of their rights without notice or an

11  opportunity to be heard.

12     For instance, the title holder could seek to eliminate public roads and

13  highways if held as right-of-way easements, without notice to the public bodies

14  holding those interests.  A 99-year ground lease could be extinguished without

15  notice to the lessees.  Judgment and mechanics' liens could be eliminated without

16  notice to the lienholders.  And any residential or commercial mortgage lien –

17  whether held by MERS or the original lender – could be eliminated without notice

18  to the holder of the security interest.

19     If the Court's prior order were correct, the note owner and beneficiary of a

20  properly recorded non-MERS deed of trust would not be entitled to notice of a quiet

21  title lawsuit, because such an owner has no claim "to" the title.  What lender would

22  be foolish enough to loan money secured by a lien on real property that could be

23  eliminated without notice?  Only those who could pay cash would be able to buy

24  real property.  The FAC expressly alleges that the Court's interpretation of the quiet

25  title statute would destroy the market for real estate throughout California, FAC

26  ¶ 83, and the Court must assume the truth of that allegation in deciding the motion

27  to dismiss.

28

It does not matter that MERS is not the party entitled to the loan payments on the debt secured by the Deed of Trust.  MERS is the record beneficiary with the right in its own name to enforce the Deed of Trust, as agent for the Note owner.[4]  As set forth below, the California courts consistently uphold MERS' right to enforce deeds of trust in its own name as beneficiary and nominee for the owner of the debt.

This Court's prior order recognized MERS' right to foreclose or assign its right to do so under California law, but held that "those interests in the Property are hardly tantamount to an adverse claim of title."  Order at 6.  MERS respectfully submits that the pertinent question is whether MERS had a claim *against* title that required joinder.  The interests held by MERS, and recognized by this Court, fall squarely within the statutory definition of an adverse claim under the plain language of the Code.  As record beneficiary, MERS held an interest, security lien, and enforceable rights in the Property, all of which also constituted a cloud upon Plaintiffs' asserted title.  Thus MERS had an adverse claim that demanded joinder under the Code.

But, for this purpose, it does not even matter whether MERS' claim is valid or not: it is still a claim of record against the Robinsons' title.  MERS **claimed** a record interest as beneficiary, which is necessarily adverse to the Robinsons' claimed unencumbered title.  The word "claim" means "to ask for, esp. as a right" or to "assert in the face of possible contradiction."  WEBSTER'S NEW COLLEGIATE DICTIONARY (1981) at 203.  The plain terms of the California statute do not require that the claim ultimately be adjudged legally valid.

---

[4]     The situation is no different than the trustee of a trust who holds a deed of trust on behalf of the trust beneficiaries – the parties entitled to the proceeds of any foreclosure action.  No one would question the right of the trustee to notice of proceedings that would impair that security instrument.

The whole point of the notice requirement is to give persons with claims against an owner's title an opportunity to have the validity of those claims adjudicated in the quiet title action:

> The plain terms of [the statutes] do not require that the claim ultimately be adjudged legally valid.  If a claimant asserts a claim of record, the claimant is entitled to be given redemption rights and joined to the quiet title action.

*Bellistri*, 2010 WL 2720802 at *11.  *Accord, Newman v. Cornelius*, 3 Cal. App. 3d 279, 284 (5th Dist. 1970) (purpose of quiet title action "is to finally settle and determine . . . all conflicting claims to the property").

If a plaintiff could avoid joining known claimants to quiet title actions based upon the plaintiff's independent determination that their claims are not valid, then every quiet title action could be decided by default and the purpose of the statutory action defeated.  The California Code prohibits a judgment by default until after the court has held a hearing to "examine into and determine the plaintiff's title as against the claims of all defendants." CCP § 764.010.  The Robinsons skipped the part where the court adjudicates the competing claims; instead they engaged in a scheme to eliminate those interests by purposely circumventing the protections afforded to known claimants under the statute.  A default prove-up hearing without notice to the party holding the interest to be adjudged hardly satisfies the requirements of the statute.

B.    Due Process Required Notice To MERS.

The "central meaning of procedural due process" is "the right to notice and an opportunity to be heard" before a person is deprived of a property interest.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004).  As a matter of law, it violates due process not to give notice of a tax sale to a mortgagee, because that is a "substantial property interest."  *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 798 (1983).  Here, the Deed of Trust confers on MERS several property interests that the Supreme Court has deemed to be worthy of due process protection.

First, the Deed of Trust states that MERS is the nominee of the lender and its successor and assigns and expressly grants MERS the "legal title to the interests granted by Borrower in this Security Instrument." The Supreme Court has held that such an entity, even with no beneficial interest in the property, has a "property right." *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 289 (2008).

Second, MERS has the right to enforce the lien via the power of sale in the security instrument. In *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935), the Supreme Court held that such a lien is a "substantive right[] in specific property," 295 U.S. at 590, including the "right to retain the lien until the indebtedness thereby secured is paid" and the "right to realize upon the property by judicial public sale." *Id.* at 594.

Third, MERS has the right to file a lawsuit to enforce the lien, a right that, as discussed below, has been consistently upheld by the California courts. The right to file a lawsuit is a "constitutionally recognized property interest." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807 (1985). *Bellistri* squarely holds that an attempt to deprive MERS of these property rights without notice violates due process:

> Because Bellistri admittedly gave no notice to MERS, despite its claim of record, the Collector's deed violates due process. This violation of due process entitles MERS to summary judgment on Count II of its complaint.

2010 WL 2720802 at *14. There can be no plainer statement of law than California's statutory language safeguarding MERS' right to notice of quiet title actions that might eliminate these constitutionally protected property interests.[5]

---

[5] MERS' right to notice is even clearer under the California Code than it was under the Missouri statute at issue in *Bellistri*. While the latter did not define the "claims" that warranted notice, the California Code broadly defines the term to include any "legal or equitable right, title, estate, lien, or interest in property or cloud upon title." CCP § 760.010. This Court did not attempt to distinguish the *Bellistri* decision, and allegations of the FAC establish no material differences.

MERS' interest is nothing like the vague and indirect entitlement to police enforcement of a restraining order asserted in *Castle Rock v. Gonzales*, 545 U.S. 748, 763 (2005) (cited in the Court's prior Order). Rather, MERS claims a very specific right – a right to file suit or enforce a lien via sale of the Property. The plain language of the recorded security interest spells out the property rights expressly granted by the Robinsons to MERS "and to the successors and assigns of MERS." FAC ¶¶ 48-49. Those rights are protected by due process.

Again, MERS's ***claimed*** interest in the Deed of Trust is alone sufficient to trigger due process protection. "The Fourteenth Amendment's protection of 'property' has never been interpreted to safeguard only the rights of undisputed ownership." *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972) (persons claiming a contractual right to possession of goods under an installment sales contract were entitled to notice prior to replevin of goods). A "legitimate claim" of a property interest warrants due process protection. *Board of Regents of State College v. Roth*, 408 U.S. 564, 576-77 (1972). Even an intangible unsecured claim – a cause of action against an estate for an unpaid bill – is property protected by the Fourteenth Amendment. *Tulsa Professional Collection Services, Inc. v. Popo*, 485 U.S. 478, 485 (1988).

Because the quiet title judgment violates both the California statute and due process, it is void *ab initio*.[6] To the extent this Court continues to hold that the Code does not entitle MERS (and others holding property interests less than fee title) to

---

[6] The Robinsons' suggestion that notice by publication is sufficient, Motion at 4, is wrong as a matter of law. When an entity has a claim of record, "constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." *Mennonite*, 462 U.S. at 798. The California Code requires the same; a quiet title judgment does not bind a party with a claim of record if that claimant "was not a party to the action." CCP § 764.045.

1  notice of quiet title proceedings that could extinguish their interests, then the Code

2  violates due process.  Either way, the quiet title judgment is void.

3  **II.   MERS Is A Real Party In Interest With Standing To Prosecute This**

4      **Lawsuit.**

5       The Court dismissed MERS' initial complaint on the finding that, despite the

6  language of the Deed of Trust, MERS was not really a beneficiary thereof.  While

7  MERS respectfully disagrees with the Court's conclusion, as have most courts to

8  consider the issue, MERS has standing for two other reasons:  its status as a

9  nominee and the effect that the quiet title judgment will have on MERS' business.

10      A.   MERS Has Standing As A Nominee Of The Lender And Its Assigns.

11       The Deed provides that MERS is "nominee for Lender or Lender's

12  successors."  The legal definition of a nominee is a "party who holds bare legal title

13  for the benefit of others."  BLACK'S LAW DICTIONARY (8th Ed. 2004) at 1076.  The

14  California courts recognize that a "'nominee' is a person or entity designated to act

15  for another in a limited role—in effect, an agent."  *Fontenot v. Wells Fargo Bank,*

16  *N.A.*, 198 Cal. App. 4th 256, 270-71 (1st Dist. 2011).  The January 28 order

17  acknowledges as much.  Order at 9.

18       The scope of MERS' authority as nominee is defined by its agreement with

19  the lender.  *Id.*  The Deed of Trust expressly acknowledges that MERS "holds" the

20  "legal title" to the rights "granted by Borrower in this Security Instrument."  And it

21  granted MERS the right to exercise all of the Lenders' interests thereunder,

22  including, but not limited to, the right to foreclose and sell the Property.  As such,

23  MERS has a legal claim against the Robinsons' title that demanded notice of the

24  quiet title action.  The Robinsons admitted as much in their reply memorandum in

25  support of their motion to dismiss the original complaint.  Doc. 13 at 11 (plaintiffs

26  "may refile their suit as the nominee of the actual beneficiary").

27       The Supreme Court has held that bare legal title to a claim, without any

28  equitable or beneficial interest therein, confers standing on a party.  In *Sprint,*

15

SLC-7205125-3

payphone owners assigned their collection claims against long distance carriers to the plaintiffs and the plaintiffs agreed to remit all proceeds of the litigation back to the assignors.  The plaintiffs had the same interest that MERS does:  bare legal title to the claims but no equitable or beneficial interest therein.  The Supreme Court found this interest sufficient to confer standing to sue in federal court.  Courts "have always permitted the party with legal title alone to bring suit." 554 U.S. at 285.

> [F]ederal courts routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit.  Trustees bring suits to benefit their trusts; guardians ad litem bring suit to benefit their wards; receivers bring suit to benefit their receiverships; assignees in bankruptcy bring suit to benefit bankrupt estates; executors bring suits to benefit testator estates; and so forth.

*Id.* at 287-88.

The Court did not say, as the Robinsons argue here, that the plaintiffs had to sue in the name of the beneficiaries.  Instead, the Court noted that "an assignee with legal title is considered to be a real party in interest." *Id.* at 284.  Though the plaintiffs were suing based upon injuries originally suffered by third parties, those third parties assigned their "rights, title and interest" in their claims to the plaintiffs. *Id.* at 290.  "Thus, in the litigation before us, the [plaintiffs] assert what are, due to that transfer, *legal rights of their own.*" *Id.* at 290 (emphasis original). *See also Schwab Corp. v. Banc of America Securities LLC*, 2011 WL 864978 (N.D. Cal. 2011) at **3-4 (following *Sprint* and holding that assignee of claims was the real party in interest and that no other party had standing to bring the claims even though assignee had agreed to remit 97% of its recovery back to the assignor).

Similarly, the original lender under the Deed of Trust – and all subsequent Note owners – appointed MERS as their agent to hold legal title to their interest and to enforce the Deed of Trust on their behalf.  As the FAC establishes, the holder of the Robinsons' debt at the time of the quiet title action so appointed MERS to hold

1 and enforce the Deed of Trust on its behalf.  FAC ¶¶ 50-53.  Regardless of MERS'

2 interest in the proceeds of the Note, MERS has standing to bring this lawsuit.

3     California courts have expressly so held.  In *Gomes v. Countrywide Home*

4 *Loans, Inc.*, 192 Cal. App. 4th 1149, 1157 (4th Dist. 2011), the Court rejected the

5 borrower's wrongful foreclosure claim, finding it unnecessary to determine whether

6 MERS was the "beneficiary" under California's nonjudicial foreclosure statute.

7 That statute allows the "trustee, mortgage, or beneficiary, or any of their authorized

8 agents" to initiate foreclosure.  CCP § 2924.  This statute, as well as the deed of

9 trust, "permit MERS to initiate foreclosure as a nominee (i.e. agent) of the

10 noteholder."  192 Cal. App. 4th at 1157 n.9.

11     Other California courts have upheld MERS' right to enforce deeds of trust as

12 agent for the lender.  In *Fontenot*, the California court dismissed a wrongful

13 foreclosure claim premised upon alleged ambiguity regarding MERS' role:

14       There is nothing inconsistent in MERS's being designated both as the

15       beneficiary and as a nominee, i.e., agent, for the lender.  The legal implication
      of the designation is that <u>MERS may exercise the rights and obligations of a</u>

16       <u>beneficiary of the deed of trust,</u> . . . and there is nothing ambiguous or unusual
      about the legal arrangement.

17

18 198 Cal. App. 4th at 273 (emphasis added).  *See also Calvo v. HSBC Bank USA,*

19 *N.A.*, 199 Cal. App. 4th 118, 125 (2d Dist. 2011) ("MERS had the right to initiate

20 foreclosure and instruct the trustee to exercise the power of sale as nominee (i.e.,

21 agent) of the original lender *and its successors and* assigns) (emphasis original);

22 *Siliga v. Mortgage Electronic Registration Systems, Inc.*, 219 Cal. App. 4th 75, 83

23 (2d Dist. 2013) ("MERS, as the lender's nominee, has the authority to exercise all of

24 the rights and interest of the lender"); *Herrara v. FNMA*, 205 Cal. App. 4th 1495,

25 1505 (4th Dist. 2012) ("plaintiffs agreed in the DOT that MERS had the right to

26 exercise all rights of the lender, including foreclosing on and selling plaintiffs;

27 property"); *Mortgage Elec. Registration Sys., Inc. v. Murphy*, No. CGC-08-473479

28

(Cal. Super. Ct. San Francisco County Aug. 2, 2010) (overturning a judgment affecting MERS' lien interest that was entered without notice to MERS) (decision attached).

Federal courts have reached the same conclusion.  In *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011), borrowers claimed that MERS was a "sham" beneficiary because it had no financial interest in the loan. Affirming dismissal of the complaint, the Ninth Circuit held that, under the plain terms of the Deed, "MERS has 'the right to foreclose and sell the property,'" and, by signing the Deed, plaintiffs agreed to its terms.  656 F.3d at 1042.  *Accord, Morgera v. Countrywide Home Loans, Inc.*, 2010 WL 160348 at *8 (E.D. Cal. 2010) ("courts have consistently found that MERS does in fact have standing to foreclose as the nominee of the lender").

Indeed, the very cases on which the Court relied in finding that MERS was not a beneficiary recognize that it makes no difference, because MERS' status as nominee gives it standing.  In *Weingartner v. Chase Home Finance*, 702 F. Supp. 2d 1276 (D. Nev. 2010), the court held that calling MERS the "beneficiary" was not necessary to determine the validity of acts undertaken by MERS because MERS' role as nominee "is sufficient to establish that MERS <u>is an agent of the lender with respect to administration of the deed of trust</u>." *Id.* at 1280 (emphasis added).  It noted that even courts that hold that MERS lacks standing as a beneficiary find that MERS "does have standing as agent of the beneficiary where it is the nominee of the lender . . . ." *Id.*

Similarly, *James v. ReconTrust Co.*, 845 F. Supp. 2d 1145 (D. Or. 2012), held that MERS was not a beneficiary for purpose of the unique Oregon statute there at issue.  This finding "does not, however, establish that MERS lacked authority to assign the trust deed"; as "nominee of the lender and the lender's

1  successors," MERS could do anything "that a beneficiary (as principal) may do on

2  its own." *Id.* at 1165 n.20.

3         The vast majority of courts considering the issue have held that MERS' status

4  as a nominee, in and of itself, entitles MERS to notice of a proceeding that might

5  adversely affect the deed of trust and confers standing on MERS to challenge such a

6  proceeding when MERS does not receive notice.  In *Citimortgage, Inc. v. Barabas*,

7  975 N.E.2d 805 (Ind. 2012), the Supreme Court of Indiana held that MERS'

8  assignee, standing in MERS' shoes and asserting its rights, was entitled to intervene

9  to seek to set aside a foreclosure undertaken without service on MERS.  The court

10  further held that the foreclosure did not extinguish the mortgage and the buyer took

11  subject to the mortgage lien:

12         MERS's rights under the terms of the Barabas mortgage and MERS's own
          rules indicate that <u>the parties intended to designate MERS as an agent of the</u>
13         <u>lender.</u> This agency relationship conferred various rights on MERS, including
          rights that constitute protected property interests sufficient to entitle MERS –
14         and Citimortgage standing in the shoes of MERS – to meet the first
          requirement for intervention of right.
15
16  975 N.E.2d at 814-15 (emphasis added).

17         The Arizona Court of Appeals followed suit in *Delo v. GMAC Mortgage,*

18  *L.L.C.*, 302 P.3d 658 (Ariz. App. 2013).  Following a tax foreclosure undertaken

19  without notice to MERS, MERS sought to intervene in the foreclosure purchaser's

20  quiet title action.  The court upheld MERS' intervention based upon its "unique

21  business model and its contractual obligations with its member-lenders." 302 P.3d

22  at 659 n.1.  It also held that, "because MERS was designated the lender's nominee

23  under the Deed of Trust, the GMAC Parties' interests in the Property were protected

24  by MERS's recorded interest." *Id.* at 662:

25         [E]ven if MERS was merely an agent of [the original Lender] and its
          successors, a diligent search for the true holder of the Note, for purposes of
26         giving proper notice of the tax-lien foreclosure lawsuit, would have included
          providing notice of the lawsuit to MERS, who then could have forwarded it to
27         the current holder of the note.
28

                                          19

1     *Id.* at 663.

2       *See also, Flagstar Bank, FSB v. Lone Pine Capital LLC,* No. 04781 EQCV

3  109513 (Iowa Dist. Ct. Pottawattamie County Oct. 14, 2013) (setting aside a tax sale

4  and holding that MERS was entitled to statutory notice of redemption rights as

5  "mortgagee and a person who had an interest of record" and because due process

6  required notice of the tax sale and redemption rights to MERS) (decision attached);

7  *Lassman v. Quicken Loans, Inc.,* No. 13-cv-1405-FJB (Bankr. D. Mass. April 25,

8  2014) (vacating judgment in trustee's adversary proceeding avoiding mortgage "as a

9  matter of simple due process" where MERS, the record mortgagee at the time of the

10  bankruptcy, was not named as a defendant and noting that "MERS could not have

11  notified [the current note owner] where it had no notice itself"); *Hamlin v. Harps,*

12  No. 4:07-cv-00066-JBF-FBS (E.D. Va. 2007) (finding MERS to be a necessary

13  party to an action that seeks to diminish a MERS deed of trust) (decision attached).

14       *Landmark Nat. Bank v. Kesler,* 216 P.3d 158 (Kan. 2009), cited in this

15  Court's prior Order, is inapposite. The holding in that case was only that the trial

16  court did not abuse its discretion in denying MERS' motion to set aside a default

17  judgment approving a foreclosure sale and motion to intervene as of right. The

18  court's statements regarding MERS' role in the mortgage were pure dicta; the

19  holding did not require determination of MERS' right to enforce the mortgage.[7]

20       The Kansas Court of Appeals has since affirmed MERS' right to enforce a

21  mortgage as agent for the note owner. *U.S. Bank, N.A. v. Howie,* 280 P.3d 225, 229-

22  33 (Kan. Ct. App. 2012); *Metlife Home Loans v. C.T. Hansen,* 286 P.3d 1150, 1156-

23  57 (Kan. Ct. App. 2012). Both cases interpret *Landmark* as standing for the

---

[7]     Shortly after *Landmark* was decided, the Kansas Legislature overruled it by
amending Kansas law to make crystal clear that a mortgagee serving as a
"nominee," such as MERS, must be given service of process in actions affecting real
property. Kan. Stat. § 60-219(e) (2011).

1  unremarkable proposition that the mortgage may become unenforceable if not held

2  by the owner of the debt or an agent of the owner of the debt.  *Id.*   Both find the

3  requisite agency relationship in the plain language of the MERS mortgage.  *Id*.

4      Similarly, in *Renkemeyer v. Mortgage Elec. Registration Sys. Inc.*, 2010 WL

5  3878582 (D. Kan. 2010), the district court held that MERS was a necessary party to

6  a quiet title action that sought to eliminate a mortgage.  The court found *Landmark*

7  inapposite because "that case stood in a different procedural posture, and the Kansas

8  Supreme Court specifically declined to decide whether MERS was entitled to be a

9  party to the initial foreclosure action."  *Id*. at *2.

10      MERS' status as a nominee and therefore agent of the original lender and its

11  successors and assigns alone required the Robinsons to give MERS notice of the

12  quiet title action.

13      B.    MERS Has Standing As A Beneficiary With The Right To Enforce The
              Security Instrument.
14

15      MERS respectfully disagrees with the Court's prior ruling that it is not the

16  beneficiary of the Deed of Trust.  While a ruling in MERS' favor on this issue is

17  unnecessary to establish MERS' standing, MERS respectfully submits that every

18  court to address the issue under California law (including this Court) has held that

19  MERS is the beneficiary of the security interest in its capacity as nominee or agent

20  for the note owner; thus, MERS can be both a nominee and a beneficiary.

21      The leading case is *Fontenot*, in which the borrower filed suit for wrongful

22  foreclosure based on alleged improprieties in a MERS loan.  The trial court

23  sustained the demurrers without leave to amend and took judicial notice of MERS'

24  status as beneficiary in the deed of trust.  The court of appeals affirmed:

25      MERS was the beneficiary under the deed of trust because, as a legally
        operative document, the deed of trust designated MERS as the beneficiary.
26      Given this designation, MERS' status was not reasonably subject to dispute.

27

28

OPPOSITION TO MOTION TO DISMISS AMENDED PETITION

SLC-7205125-3

. . . . Under the MERS system, however, MERS is designated as the beneficiary in deeds of trust, acting as "nominee" for the lender, and granted the authority to exercise legal rights of the lender.

. . . . MERS was entitled to initiate foreclosure despite having no ownership interest in the promissory note because it was the beneficiary under the deed of trust.

. . . . MERS is the beneficiary, acting as a nominee for the lender. <u>There is nothing inconsistent in MERS's being designated both as the beneficiary and as a nominee, i.e., agent, for the lender.</u> The legal implication of the designation is that MERS may exercise the rights and obligations of a beneficiary of the deed of trust.

198 Cal. App. 4th at 266, 267, 269, 273 (emphasis added).

Other California cases similarly recognize that MERS is the beneficiary, and can exercise the rights of the beneficiary, in its role as nominee for the note owner. *E.g.*, *Benson v. Ocwen Loan Servicing, LLC*, 2014 WL 962022 (9th Cir. 2014 (MERS "had the authority to substitute Western Progressive as the trustee because MERS was the beneficiary of the deed of trust, . . . and was HSBC's nominee"); *Hollins v. Recontrust, N.A.*, 2011 WL 1743291 (C.D. Cal. 2011) at *3, and cases there cited ("where MERS acts as a beneficiary under a deed of trust, it has the right to assign its interest"); *Siliga*, 219 Cal. App. 4th at 83 (*quoting Fontenot*); *Herrera*, 205 Cal. App. 4th at 1504 (same).

Finally, whether or not MERS was legally a beneficiary of the Deed of Trust, it ***claimed*** a record interest as beneficiary, a claim necessarily adverse to the Robinsons' asserted unencumbered title. A claim to an adverse interest alone mandates notice under the California Code without any qualification of that interest. For that reason alone, MERS has standing to challenge the quiet title judgment.

C. <u>MERS Has Standing To Challenge The Quiet Title Judgment Because That Judgment Adversely Affects MERS' Business.</u>

Wholly apart from its status under the Deed, MERS has standing to challenge the quiet title judgment based on its effect on MERS' business. Constitutional

22

standing has three elements: (1) an "injury in fact," i.e., an invasion of a legally protected interest that is concrete and particularized, and is actual or imminent, not conjectural or hypothetical; (2) a "causal connection between the injury and the conduct complained of"; and (3) that a favorable decision is "likely" to remedy the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The FAC easily satisfies those requirements. Paragraph 82 alleges that, if the judgment is not set aside, members who use the MERS® System "will cease using MERS" causing MERS and MERSCORP Holdings, Inc. "to lose significant transaction fees and revenues." That is concrete injury. The direct cause of that injury would be the entry of the judgment. Vacating that judgment will restore members' confidence in Plaintiffs' business model, thus avoiding the injury.

In *Bellistri*, the Court held that essentially identical allegations in the context of a tax sale gave rise to standing. Bellistri's refusal to provide notice to MERS "affects MERS' fundamental business model and creates a realistic danger that it will lose customers." 2010 WL 2720802 at *16:

> The likely result of these concerns is that current investors on mortgages registered on the MERS® System will withdraw from using MERS, causing MERS economic loss. The requested declaratory relief will redress that injury by clarifying that MERS is legally entitled to notice when it appears of record to claim an interest in property, thereby avoiding MERS' economic loss.

*Id. See also Metropolitan Regional Information Sys., Inc. v. American Home Realty Network, Inc.*, 888 F.Supp.2d 691,712-13 (D. Md. 2012) (owner of database established irreparable harm resulting from unauthorized use of its content because owner's business model depended upon subscriptions to its database and thus to the extent its subscribers were harmed, the owner would also suffer harm).

## III.    The Robinsons' Other Arguments Are Irrelevant.

The Robinsons do not cite any cases applying California law to refute MERS' standing to bring this action.  The foreign law cases on which they rely either do not stand for the cited propositions, or are readily distinguishable, or in some cases have been overruled.  For example, the Robinsons cite *Merscorp, Inc.v. Romaine*, 861 N.E.2d 81 (N.Y. 2006), for the proposition that, under New York law, MERS is not the actual mortgagee.  Motion at 9.  They also claim that *Romaine* held that the recordation of MERS mortgages creates a cloud on title, because they allegedly do not comply with the statute.  Motion at 12.

The Robinsons have accurately quoted the language in *Romaine*.  861 N.E.2d at 82.  They have neglected, however, to point out that the Court was describing the holding of the trial court, which was reversed on appeal.  The ultimate holding is that the "MERS discharge complies with the statute." *Id.* at 85.

Similarly, the Robinsons cite lengthy portions of *In re Agard*, 444 B.R. 231 (Bkrtcy E.D.N.Y. 2011), for the proposition that one cannot split the note from the mortgage.  Motion at 10-12.  They do not disclose that the District Court reversed *Agard* on the very issues on which they cite it as an "unconstitutional advisory opinion." *Agard v. Select Portfolio Servicing, Inc.*, 2012 WL 1043690 (E.D.N.Y. 2012).  Moreover, *Agard* expressly declined to address MERS' argument that there could be no split because the same entity always held the beneficial interest in each.  444 B.R. at 247 n.5.

The Robinsons cite several cases for the generic proposition that a foreclosure sale is invalid if the foreclosing entity does not own the note at the time of foreclosure.  Motion at 13.  What relevance that has to MERS' right to receive notice, as record beneficiary and nominee for the note owner, or its standing to set aside the quiet title judgment, they do not explain.  The Robinsons also cite several foreign cases for the proposition that MERS cannot sue a borrower.  Motion at 18.

*Sprint* holds exactly the opposite.  The Deed of Trust allows MERS, as nominee, to take any action the Lender or its successors or assigns may take to protect their security interest, which encompasses an action to set aside a judgment purporting to eliminate that interest.  The Robinsons cannot deny those rights.  *See e.g., Siliga,* 219 Cal. App. 4th at 83-84 ("a trustor who agreed under the terms of the deed of trust that MERS, as the lender's nominee, has the authority to exercise all of the rights and interest of the lender, including the right to foreclose, is precluded from maintaining a cause of action based on the allegation that MERS has no authority to exercise those rights.").

Finally, the Robinsons offer a bizarre argument that venue is improper in this Court because MERS could have challenged the quiet title judgment in state court. Motion at 19.  Aside from standing, the Robinsons do not dispute this Court's subject matter jurisdiction and venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), in that the Robinsons are residents of California; the property at issue is within this judicial district; and the events giving rise to this action occurred in this district.[8]

## CONCLUSION

Under California law, a quiet title action is supposed to be an equitable action. Here, through their bad faith refusal to notify MERS and their false and fraudulent allegations, the Robinsons have sought to pervert the equities. By their own admission, they knew they did not provide notice to a party with a current interest in the Deed of Trust because they were angry with their loan servicing agent and wanted to eliminate the security interest. Doc. 13 at 10-11. The Robinsons should not be rewarded for their bad conduct or the unscrupulous acts of their prior lawyer. Their motion to dismiss only seeks to perpetuate the fraud.

---

[8]     The Robinsons' claim for attorneys' fees is self-evidently frivolous.

1

2

3  Respectfully Submitted,

4  DATED:  April 28, 2014          HUSCH BLACKWELL LLP

5

6

7  By:  _____/s/ JoAnn T. Sandifer_____
        JoAnn T. Sandifer (*pro hac vice*)

8

9  Attorneys for Plaintiffs MORTGAGE
   ELECTRONIC REGISTRATION SYSTEMS,
10 INC. and MERSCORP HOLDINGS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SLC-7205125-3

# Exhibit 1

1    PETER K. WOLFF, JR. (SBN 142426)
     100 North Wiget Lane, Suite 150
2    Walnut Creek, CA 94598
     Telephone: (925) 930-9550
3    Facsimile: (925) 930-9588

4

5    Attorney for MORTGAGE ELECTRONIC
     REGISTRATION SYSTEMS, INC.,
     as Nominee for J.P. MORGAN CHASE
6    BANK, as Trustee, and as Nominee for
     LASALLE BANK NATIONAL
7    ASSOCIATION, as Trustee

**F I L E D**

San Francisco County Superior Court

AUG 0 2 2010

CLERK OF THE COURT

BY: _____
                    Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SAN FRANCISCO

10

11   MORTGAGE ELECTRONIC                    )   CASE NO. CGC-08-473479
     REGISTRATION SYSTEMS, INC.,            )
12   as Nominee for J.P. MORGAN CHASE       )
     BANK, as Trustee, and as Nominee for   )   **JUDGMENT IN FAVOR OF MORTGAGE**
13   LASALLE BANK NATIONAL                  )   **ELECTRONIC REGISTRATION**
     ASSOCIATION, as Trustee,               )   **SYSTEMS, INC., AS NOMINEE FOR J.P.**
14                                          )   **MORGAN CHASE BANK, AS TRUSTEE,**
                                            )   **AND AS NOMINEE FOR LASALLE BANK**
15              Plaintiff,                  )   **NATIONAL ASSOCIATION, AS TRUSTEE**
                                            )   **AND AGAINST THERESA LYNNE**
16        vs.                               )   **MURPHY**
                                            )
17   THERESA LYNNE MURPHY; CLYDE            )
     NATHAN SMITH; ERIC MCGUIRE; 11         )
18   HIGH STREET CONDOMINIUM                )
     ASSOCIATION, and all persons unknown,  )
19   claiming any legal or equitable right, title, )
     estate, lien, or interest, in the Property )
20   adverse to Plaintiff's title, or any cloud on )
     Plaintiff's title; and Does 1-100 Inclusive, )
21                                          )
                                            )
22              Defendants.                 )
                                            )
23

24        On May 12, 2010, the Court granted the motion of plaintiff Mortgage Electronic

25   Registration Systems, Inc., as Nominee for J.P. Morgan Chase Bank, as Trustee, and as

26   Nominee for LaSalle Bank National Association, as Trustee for summary adjudication

27   judgment pursuant to Code of Civil Procedure 437c on the grounds that there were no triable

28   issues of material fact to be decided and that the Amended Default Judgment

                                   - 1 -                              Judgment

1  By Court entered on February 11, 2008 in the San Francisco Superior Court Action entitled

2  Theresa Lynne Murphy v. Clyde Nathan Smith, Case No. 07-CGC-07-467109 and recorded

3  in the San Francisco County Recorder's Office on February 11, 2008 as document number

4  2008-I534311-00 is null and void.  In accordance with that order,

5       IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment be and

6  hereby is entered in favor of plaintiff Mortgage Electronic Registration Systems, Inc., as

7  Nominee for J.P. Morgan Chase Bank, as Trustee, and as Nominee for LaSalle Bank National

8  Association, as Trustee on the Second Cause of Action in the Complaint herein and against

9  Theresa Lynne Murphy and that the Amended Default Judgment By Court entered on

10  February 11, 2008 in the San Francisco Superior Court Action entitled Theresa Lynne

11  Murphy v. Clyde Nathan Smith, Case No, 07-CGC-07-467109 and recorded in the San

12  Francisco County Recorder's Office on February 11, 2008 as document number 2008-

13  I534311-00 is null and void as the parties purportedly affected thereby had not been named as

14  defendants or served with the Summons in Action No. 467109 and therefore the Amended

15  Default Judgment by Court shall be and hereby is vacated, *nunc pro tunc*, as of February 11,

16  2008.  Plaintiff Mortgage Electronic Registration Systems, Inc., as Nominee for J.P. Morgan

17  Chase Bank, as Trustee, and as Nominee for LaSalle Bank National Association, as Trustee

18  shall recover from defendant Theresa Lynne Murphy its costs as may be determined by the

19  Court.

20

21

22

23  DATED: July 30 , 2008 2010

       Judge of the Superior Court

24

25

26

27

28  APPROVED AS TO FORM:

- 2 -                                    Judgment

# Exhibit 2

E-FILED  2013 OCT 14 11:23 AM POTTAWATTAMIE - CLERK OF DISTRICT COURT

IN THE DISTRICT COURT OF POTTAWATTAMIE COUNTY, IOWA

| | | |
|---|---|---|
| FLAGSTAR BANK, FSB, | ) | NO. 04781 EQCV <u>109513</u> |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LONE PINE CAPITAL LLC, | ) | ORDER OVERRULING MOTION |
| | ) | FOR SUMMARY JUDGMENT |
| Respondent. | ) | |

THIS MATTER came on for hearing on the Respondent Lone Pine Capital LLC's Motion for Summary Judgment on September 9, 2013 at 9:45 a.m.  Curtis J. Heithoff and Robert J. Becker appeared on behalf of Petitioner Flagstar Bank, FSB, and James E. Nervig appeared on behalf of the Respondent by telephone. The Court having considered the Respondent's Amended and Corrected Statement of Facts, the Petitioner's Resistance to the Motion for Summary Judgment and the Affidavit of Mae Lynn Campbell, finds as follows:

Under Iowa law, a Court examines the facts and the record in the light most favorable to the non-moving party and draw all legitimate inferences from the evidence to establish  the existence of questions of fact. *Kragnes v. City of Des Moines*, 714 N.W.2d 632 Iowa (2006).  Moreover, in order to grant summary judgment, there must be no genuine issue as to any relevant material fact; and the moving party must be entitled to judgment as a matter of law.  *Mueller v. Wellmark, Inc.,* 818 N.W.2d 244 (2012).

The facts presented on this Motion are as follows:  On June 15, 2009, Tax 141 Partnership paid unpaid real estate taxes on the real estate which is the subject matter of this proceeding, being 30333 175th Street, Honey Creek, Pottawattamie County,

Iowa, at a Tax Sale conducted by the County Treasurer of Pottawattamie County and was issued a Tax Sale Certificate No. 2009-1124.

On August 4, 2009, James Yarbrough, as the owner of the subject real estate, borrowed $55,062.00 from Freedom Lending, LLC (Lender) giving to Lender his Promissory Note (Exhibit A to Respondent's Amended and Corrected Statement of Facts in Support of Motion for Summary Judgment). To secure repayment of the debt, James Yarbrough executed and delivered a Mortgage to Mortgage Electronic Registrations Systems, Inc. (MERS) on the subject real estate (Exhibit B to Respondent's Amended and Corrected Statement of Facts), which Mortgage on Page 1 both identifies MERS as the "Mortgagee" and as the "nominee for Lender and Lender's successors and assigns", and states MERS' address and telephone number.  The Mortgage document also states on page 2 thereof as follows:

> "Borrower understands that "MERS" holds only legal title to the interests granted by Borrower in this Security Instrument, but if necessary to comply with law or custom, MERS (as nominee for lender and Lender's successors and assigns) has the right to exercise any or all those interests, including, but not limited to, releasing and cancelling this Security Instrument".

On August 4, 2009, the Promissory Note was assigned by Freedom Lending LLC to the Petitioner, Flagstar Bank, FSB, which then became the lender and MERS remained the record Mortgagee holding the interests granted under the Mortgage on behalf of Flagstar Bank, FSB (Page 2 of Exhibit B to Affidavit of Mae Lynn Campbell)

On May 15, 2012, Tax 141 Partnership, proceeding under Section 447.9 of the Code of Iowa, sent a "Notice to Redeem From Tax Sale" dated May 12, 2012 (Exhibit C to Respondent's Amended and Corrected Statement of Facts) and on May 16, 2012, filed an Affidavit stating to whom the Notice had been sent (Also Exhibit C –

2

Respondent's Amended and Corrected Statement of Facts).  The Notice to Redeem and Affidavit both show that (for purposes of this action) the Notice to Redeem was only sent by Tax 141 Partnership to the original lender, Freedom Lending, LLC and was not sent to MERS as Mortgagee, despite the fact that MERS was at that time the named Mortgagee in the Mortgage, that MERS held "legal title" to the interests under the Mortgage, and that MERS' address is clearly set out in the Mortgage.

Section 447.9, Iowa Code provides in relevant part:

Service of the notice <u>shall</u> be made by both regular mail and certified mail on <u>any mortgagee having a lien upon the parcel</u>, ... <u>and any other person who has an interest of record</u>, at the person's last known address.

At the time this Notice of Right to Redeem was sent to the various parties on May 16, 2012, Petitioner, Flagstar Bank was then the owner and holder of the Promissory Note (Lender) and was the beneficial interest holder under the Mortgage.  As neither MERS nor Flagstar Bank had received a copy of the Notice of Right to Redeem, they were both unaware of the Notice of Right to Redeem until after the 90 day period to redeem had expired according to the language of the Notice.

Under the MERS' agreement with Flagstar (Exhibit A of Affidavit of Mae Lynn Campbell), MERS was required to notify the lender within 2 business days of its receipt of any "Urgent Mail" on behalf of the lender, which would certainly include the Notice of Right to Redeem.  Flagstar relied upon MERS to notify it if any documents such as a Notice of Right to Redeem were received by MERS, and under the express terms of the Mortgage, MERS has the authority to take any and all action required of lender to protect the security interest created by the Mortgage including redeeming the subject real estate from the Tax Sale Certificate.  Had MERS received the Notice of Right to Redeem, it would have paid the taxes or taken action to protect the security interest

3

granted in the Mortgage.  (Affidavit of Mae Lynn Campbell, Paragraph 15)  Under §447.8 of the Code of Iowa a Mortgagee is entitled to redeem property from a tax sale certificate.  However, because no Notice was sent to MERS, neither MERS nor Flagstar had the opportunity to redeem the subject real estate from the Tax Certificate within the 90-day period.

On August 29, 2012, MERS assigned the subject Mortgage to the lender Flagstar Bank, FSB, the Petitioner herein, which Assignment was recorded on October 11, 2012 in Book 2012, Page 15393 of the Records of Pottawattamie County. (Exhibit D to Respondent's Amended and Corrected Statement of Facts).

On October 12, 2012, Tax141 Partnership filed its assignment of the Tax Certificate to Lone Pine Capital, LLC, the Respondent herein.  On the same date, because no party redeemed the Subject Property, a Tax Sale Deed was issued by the Pottawattamie County Treasurer to the Respondent, Lone Pine Capital, LLC, for the subject real estate, which was recorded on the same day in Book 2012, Page 15535 of the Records of Pottawattamie County (Exhibit E to Respondent's Amended and Corrected Statement of Facts).

Under Section 448.15 and 448.16, Iowa Code, a party who receives a Tax Sale Deed can prevent anyone from challenging the deed, if they file an affidavit, giving any person who claims an interest in the property 120 days to file a claim challenging the deed or in the case of a Mortgagee, challenging that the deed is subject to the Mortgage.  One ground on which the Mortgagee can challenge the deed being subject to the Mortgage is a claim of improper or lack of Notice of the Right to Redeem. On November 26, 2012, proceeding under sections 448.15 and 448.16, Respondent filed an Affidavit, which stated the Tax Deed had been issued to Respondent and

4

advising that any party claiming any right title and interest must file a claim within 120 days of the filing of the Affidavit. (Exhibit F to Respondent's Amended and Corrected Statement of Facts).

On March 19, 2013, within 120 days of the filing of the Respondent's Affidavit, Flagstar Bank as assignee of MERS and now Mortgagee filed its claim asserting that the May 12, 2012 Notice of Right to Redeem was not properly sent to all parties in that it was not sent to the then-mortgagee, MERS. (Exhibit G to Respondent's Amended and Corrected Statement of Facts)   §448.15 of the Code of Iowa requires that a lawsuit challenging the deed and the Notice be filed with 60 days of filing the claim.  On May 15, 2013, pursuant to §448.16 of the Code of Iowa (which requires suit be instituted under 447.8 Iowa Code), Flagstar Bank, as assignee of MERS, filed its Petition herein. §447.8 of the Code of Iowa Iowa provides that the action may be maintained by an assignee of the party entitled to notice.   Accordingly, Petitioner, as assignee of MERS, is entitled to bring this action to challenge the Notice of Right to Redeem not being sent to Petitioner's assignor, MERS.

LEGAL ANALYSIS

It is the position of the Respondent in seeking Summary Judgment that it was not required to send the May 12, 2012 Notice of Right to Redeem to the Mortgagee, MERS, and that such notice was only required to be sent to the original lender Freedom Lending, LLC.

It is clear that §447.9 of the Code of Iowa requires that the Notice of the Right to Redeem be sent to "on any mortgagee having a lien upon the parcel and upon any other person who has an interest of record."   Further, Iowa case law is consistent that

redemption rights should not easily be denied.   As set forth long ago in *Ashenfelter v. Seling*, 141 Iowa 512, 517, 119 N.W. 984, 985 (1909) the Iowa Supreme Court stated:

> "The right and authority of the State to seize and sell valuable property for the payment of a relatively small tax, while necessary, is often so oppressive in its results that we are bound to construe the right of redemption with all reasonable liberality, and <u>hold the person who seeks to foreclose it to very substantial compliance with all of the provisions which have been enacted for its protection</u>."

There are numerous cases reciting that the right of redemption is liberally construed in favor of the taxpayer. *Adams v. Thorp Credit, Inc.*, 452 N.W.2d 435, 437 (Iowa 1990); *Kilts v. American Legion Okoboji Lakes Post 654*, App.1998, 581 N.W.2d 189. Moreover, as part of the Iowa Court's liberality in according redemption privileges it has also always required that the statutory requirements regarding service of notice of expiration of right to redeem must be strictly complied with. *Grimes v. Ellison*, 1905, 130 Iowa 286, 105 N.W. 418; *Fidelity Inv. Co. v. White*, 1929, 208 Iowa 519, 223 N.W. 884. It has also established that the statutory requirements toward service of notice of the expiration of the right to redeem from tax sale must be fully met to cut off such right, and that courts will indulge no presumptions with regard thereto, as the requirements are mandatory. *Smith v. Huber*, 1938, 277 N.W. 557, 224 Iowa 817.

Accordingly, it appears to the Court that because MERS was both a "Mortgagee and a person who had an interest of record" under well established Iowa law, the Respondent, and its assignor, were required to send the Notice of the Right to Redeem to MERS in May, 2012 both in its capacity as a named "Mortgagee" and as "a person who had an interest of record."

Nonetheless, Respondent argues that MERS, as a Mortgage, is not required to be served with such notices because it is the "Nominee" of the lender and lender's successors and assigns and not a true Mortgagee.  Respondent cites case law outside

6

the State of Iowa as its authority in this case, as there is no case law in the State of Iowa for its position.  One such case cited by Respondent is *Citimortgage, Inc. v. Barabas, 975 N.E.2d 805* (Indiana 2012).  This case involved a mortgage foreclosure brought by a second mortgagee, who failed to notify the first mortgagee, MERS of the action.   The Second Mortgagee obtained a default judgment and after MERS assigned its mortgage to Citimortgage.  Citimortgage sought to intervene and set aside the default because of a lack of notice to MERS.   The *Citimortgage, Inc. v. Barabas* case actually supports Flagstar's position herein as the Indiana Supreme Court held that Citimortgage was entitled to intervene to seek to set aside the foreclosure undertaken without service on MERS and further held that, due to the lack of service on MERS, the foreclosure did not extinguish the mortgage and the buyer took subject to the mortgage lien.  Similarly, the Missouri and Arizona cases cited by Respondent support MERS' right, as record mortgagee, to notice of proceedings that will impair the security instrument.  See, *Mortgage Electronic Registration Systems, Inc. v Bellestri*, 2010 WL 2720802 (E.D. Mo. July 1, 2010); *Delo v. GMAC Mortgage, L.L.C.*, 302 P.3d 658 (Ariz. Ct. App. May 8, 2013).

The Court is persuaded by the Iowa law, both statutory and case law cited above, and believes MERS was entitled to receive the Notice of Right to Redeem, both as a Mortgagee and as a person having an interest of record.  To limit the notice to simply the original lender, when the recorded mortgage document clearly indicates the lender may assign his interest to another lender, would, as it did here, allow elimination of the security instrument without any notice to the entity holding legal title to the security interest and the current note holder, which would detrimentally affect the note owners' ability to collect the debt from the security.  The Court believes as stated by the

7

E-FILED  2013 OCT 14 11:23 AM POTTAWATTAMIE - CLERK OF DISTRICT COURT

Iowa Supreme Court in *Ashenfelter*, supra, that to deprive a party of their interest in real estate through the tax sale procedures, a purchaser of a tax certificate should be required to strictly adhere to the statues and give all parties of record Notice of the Right to Redeem.

The Respondent also contends that the Mortgage document waives MERS' right to receive the Notice of the Right to Redeem.  There is no such language in the Mortgage, as the Mortgage only refers to notices between or from the borrower to the Lender.  It does not impact notices from third-parties to the Mortgagee or others claiming an interest in the security interest.  MERS was identified in the document as the Mortgagee and the Mortgage provided a separate address for MERS.    Moreover, there is a serious question whether a party can contractually waive a statutory requirement of notice which a State provides for in its Tax Sale statutes.

While not necessary to the Court's decision here, this Court agrees with Petitioner's further argument that due process also required notice of the tax sale and redemption rights to MERS.  The Due Process Clause of the Fourteenth Amendment of the United States Constitution requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950).  Article I, Section 9 of the Iowa Constitution requires the same.  The U.S. Supreme Court has squarely held that due process requires that lien holders be given notice of any legal proceedings that could extinguish their interests.  In Mennonite Board of Missions v. Adams, 462 U.S. 791 (1983), notice of a county tax sale was posted and sent to the property owner, but not to the mortgagee.  Id. at 794.  The Court held that this procedure violated due process,

8

because a "mortgagee" possesses a "substantial property interest" and therefore was entitled to notice reasonably calculated to apprise it of the sale. Id. at 798.

Moreover, as the mortgagee, MERS has the right to file suit to commence foreclosure proceedings.  The right to file a lawsuit is a "constitutionally recognized property interest." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 807 (1985).  So is the right to enforce the lien via a power of sale.  *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 590 (1935)(right to enforce lien constitutes a "substantive right in specific property").

Finally, the Iowa statute created an independent constitutional right to notice of the tax sale.  The source of most property rights is not the U.S. Constitution but "'existing rules or understandings that stem from an independent source such as state law.'" Perry v. Sindermann, 408 U.S. 593, 602 n.7 (1972), quoting Board of Regents of State College v. Roth, 408 U.S. 564, 577 (1972).  Here, the plain terms of §447.9(2) of the Code of Iowa grants MERS the right to notice of tax sales that may deprive MERS of its interest in property.  Having given that statutory right to MERS, the State may not deprive MERS of its benefits.  Vitek v. Jones, 445 U.S. 480, 490 n.6 (1980).  Accord, Hicks v. Oklahoma, 447 U.S. 343, 346 (1980) (defendant has a "substantial and legitimate expectation" that State will honor a State-created procedural right, "and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation").

For this additional reason, the Court finds that the Mortgage could not be extinguished when MERS, the record mortgagee and a party who had an interest of record, did not have notice and an opportunity to be heard prior to any proceedings that purported to eliminate that interest.

9

E-FILED  2013 OCT 14 11:23 AM POTTAWATTAMIE - CLERK OF DISTRICT COURT

JUDGMENT

IT IS THERFORE ORDERED, ADJUDGED AND DECREED that the

Respondent's Motion for Summary Judgment is overruled.

E-FILED  2013 OCT 14 11:23 AM POTTAWATTAMIE - CLERK OF DISTRICT COURT



State of Iowa Courts

**Type:**          OTHER ORDER

**Case Number**    **Case Title**
EQCV109513         FLAGSTAR BANK FSB VS LONE PINE CAPITAL LLC

So Ordered

**James S. Heckerman, District Court Judge,
Fourth Judicial District of Iowa**

Electronically signed on 2013-10-14 11:23:19    page 11 of 11

# Exhibit 3

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**Proceeding Memorandum/Order**

In Re: Lassman v. Quicken Loans, Inc. et al        Case/AP Number 13-01405 -FJB
                                                   Chapter

> #27 Motion filed by Creditor Provident Funding Associates, L.P. to Vacate [24] Default Judgment (S. Gullon)
> #28 Opposition filed by Plaintiff Donald Lassman
> #31 Reply filed by Creditor Provident Funding Associates, L.P to [28] Opposition

**COURT ACTION:**

#27 _____ Hearing held

_____ Granted          _____ Approved          _____ Moot

_____ Denied           _____ Denied without prejudice          _____ Withdrawn in open court

_____ Overruled        _____ Sustained

_____ Continued to _____

_____ Proposed order to be submitted by _____

_____ Stipulation to be submitted by _____

_____ No appearance by _____

Show Cause Order _____ Released _____ Enforced

DECISION SET OUT MORE FULLY BY COURT AS FOLLOWS:

Hearing Held. Donald Lassman, chapter 7 trustee for the estate of Maria Spitzer, filed an adversary proceeding against Quicken Loans, Inc. ("Quicken") and the debtor seeking to avoid a mortgage on certain real property. The basis for the avoidance complaint is not relevant to this motion. The complaint named only the debtor and Quicken as defendants. Neither filed an answer or other timely response. The Court eventually allowed the trustee's motions for entry of default judgment against both defendants, and judgment entered accordingly on March 7, 2014. The judgment includes language avoiding the mortgage. By this motion, Provident Funding Associates, LP ("Provident") seeks to vacate the judgment, arguing that it is and has been the holder of the mortgage, by assignment from MERS, since before the debtor filed her bankruptcy petition. It is undisputed that when the loan was made, the mortgage was delivered to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Quicken. It is also undisputed that the assignment of mortgage from MERS to Provident was recorded only in February 2014, which is after this adversary proceeding was commenced. At the time that the adversary proceeding was filed, the land records reflected that the mortgagee of record was MERS as nominee for Quicken. The trustee did not add Provident as a party defendant in this adversary case because it was not found in the land records to have an interest in the property, but it is undisputed that Provident was named by the debtor as the holder of the mortgage on the property on Schedule D, the schedule of secured creditors she filed in this case. Moreover, the mortgagee of record was not Quicken but MERS, and MERS too was not named as a defendant. As a matter of simple due process, Provident, which purports to be the holder of both the mortgage and the note, should have an opportunity to defend its interest in the property. The trustee contends that he had no obligation to give notice to an assignee whose assignment was not recorded, and that Provident took the risk (by its delay in recording) that its predecessor in interest would not notify Provident of suits concerning the assigned mortgage. This argument cannot prevail where (i) the trustee had at least inquiry notice from the debtor's schedules of Provident's status as current holder and (ii) even the record holder of the mortgage was not named as a defendant. MERS could not have notified Provident where it had no notice itself.

Accordingly, the judgment is hereby vacated. The Trustee may amend the complaint to add Provident as a defendant. If the Trustee does not, on or before May 16, 2014, file an amended complaint adding or substituting Provident as a defendant, default judgment will enter anew, with the addition of language specifying that it shall bind only the named defendants and not Provident. Nothing in this order should be construed to prevent Provident from moving to intervene if it sees fit.

IT IS SO ORDERED:

*Frank J. Bailey*

_____ Dated: 04/25/2014

Frank J. Bailey
United States Bankruptcy Judge

# Exhibit 4



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

CLARENCE J. HAMLIN,

      Plaintiff,

v.                                  Civil Action No. 4:07cv66

KATHLEEN HARPS,

NEW BEGINNINGS GROUP, LLC,

THE IMAK GROUP, LLC,

EQUIFIRST CORPORATION,

TRANSCONTINENTAL TITLE CO.,
individually and as trustee,

SANDRA KAZEBEER, individually and
as trustee,

LISA THOMAS,

EVERYDAY LENDING MORTGAGE
CORPORATION, INC.,

and

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

      Defendants.

**<u>ORDER</u>**

This matter comes before the court on defendant TransContinental Title Company's

("TransContinental") motion to dismiss for failure to join an indispensable party, brought

pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure. In his response brief, the

plaintiff, Clarence J. Hamlin, moves for leave to amend his complaint in order to join an additional party. After examination of the briefs and record, this court determines that oral argument is unnecessary because the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. The court, for the reasons stated fully herein, **GRANTS** the plaintiff's motion for leave to amend his complaint, and **DENIES** TransContinental's motion to dismiss.

I. Background

The plaintiff filed the instant complaint in this court on July 13, 2007, alleging that the defendants had, in varying degrees, participated in a scheme to divest him of ownership in his house under the guise of allowing him to avoid foreclosure. On August 15, 2007, TransContinental filed the instant motion, arguing that the entity that was named as the beneficiary on the deed of trust that was given by defendant Kathleen Harps, Mortgage Electronic Registration Systems, Inc. ("MERS") was a necessary party under Federal Rule of Civil Procedure 19 but had not been joined in the lawsuit. The plaintiff filed a response brief, contained in which was his motion for leave to amend the complaint, on August 24, 2007. TransContinental's rebuttal brief, filed on August 31, 2007, indicated its agreement with the plaintiff's motion to join MERS as a party.

II. Discussion

Rule 12(b)(7) of the Federal Rules of Civil Procedure permits a party to move for dismissal on the basis of the failure to join a party under Rule 19. Rule 19, in turn, provides that a person who is subject to the court's jurisdiction

shall be joined as a party in the action if (1) in the person's absence complete relief

2

cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been joined, the court shall order that the person be made a party.

In the specific context applicable to this case, the Virginia Supreme Court has held that an entity named as a beneficiary under a deed of trust is considered a necessary party where the lien of a deed of trust may be defeated or diminished. E.g., James T. Bush Constr. Co. v. Patel, 243 Va. 84, 97 (1992); Mendenhall v. Cooper, 239 Va. 71, 76 (1990). Further, the absence of the beneficiary to a case in which the deed of trust is subject to defeat or diminution may provide the basis for the voiding of any order in that case. Atkisson v. Wexford Assocs, 254 Va. 449, 455 (1997).

In the instant case, it is unclear from the face of the complaint whether the plaintiff seeks to diminish or defeat the deed of trust. Although the plaintiff argues in his response brief that MERS is a "legal fiction" in that its function is to serve solely as a nominee for a mortgage lender and the lender's assigns, the fact remains that MERS is the named beneficiary on the deed of trust at issue in this case, and the Virginia Supreme Court has repeatedly emphasized that MERS must be joined in a case in which a plaintiff seeks to defeat or diminish the deed of trust. Although the plaintiff notes that he has joined EquiFirst Corporation, which was the original lender, TransContinental indicates that EquiFirst is no longer the lender on the deed of trust, having sold its right to payment to another party. Thus, to the extent that the plaintiff is attempting to defeat or diminish the deed of trust, MERS is a necessary party.

As the plaintiff has moved in the alternative for leave to amend his complaint, and

3

TransContinental has indicated no objection, it appears that the plaintiff and TransContinental
are in agreement on the joinder of MERS as a defendant in this action, and thus the proper
remedy is to **GRANT** the plaintiff's motion for leave to amend the complaint and join MERS to
the lawsuit. Therefore, the court **ORDERS** that the plaintiff file the amended complaint within
five days of the date of this order. In accordance with Rule 15(a) of the Federal Rules of Civil
Procedure, the defendants shall have ten days after receiving service of the amended complaint in
which to respond.

The joinder of MERS as a party to this action destroys the grounds for TransContinental's
motion to dismiss, and therefore that motion is **DENIED** as **MOOT.**

The Clerk is **REQUESTED** to send copies of this Order to counsel for all parties.

**IT IS SO ORDERED.**

_____/s/_____

Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 18, 2007

4

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of St. Louis, Missouri.  My business address is 190 Carondelet Plaza, Suite 600, St. Louis, MO  63105.

On April 28, 2014, I served true copies of the following document(s):

**OPPOSITION TO MOTION TO DISMISS AMENDED PETITION**

on the interested parties in this action as follows:

| | |
|---|---|
| Susan M. Murphy<br>Advocate Legal<br>5455 Wilshire Blvd., Suite 2119<br>Los Angeles, CA  90036 | Attorney for Defendants Daniel W. Robinson and Darla J. Robinson |
| | Telephone:  (323) 692-7499<br>Facsimile:  (800) 878-7336<br>E-mail:  susan@susanmurphylaw.com |

BY CM/ECF NOTICE OF ELECTRONIC FILING:  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 28, 2014, at St. Louis, Missouri.

*Petrina Bailey*
Petrina Bailey

OPPOSITION TO MOTION TO DISMISS AMENDED PETITION

SLC-7205125-3